**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

GEORGE HEDICK JR., Individually and
on Behalf of All Others Similarly Situated,

Plaintiff,

v.

THE KRAFT HEINZ COMPANY,
BERNARDO HEES, PAULO BASILIO, and
DAVID H. KNOPF,

Defendants.

Case No. 1:19-cv-01339

Honorable Robert M. Dow Jr.

[Additional caption on following page.]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN
AND UNION ASSET MANAGEMENT HOLDING AG FOR CONSOLIDATION OF
RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL</u>**

IRON WORKERS DISTRICT COUNCIL
(PHILADELPHIA AND VICINITY)
RETIREMENT AND PENSION PLAN,
Individually and on Behalf of All Others
Similarly Situated,

Plaintiff,

v.

THE KRAFT HEINZ COMPANY,
BERNARDO HEES, PAULO BASILIO,
DAVID H. KNOPF, GEORGE EL-ZOGHBI,
CHRISTOPHER R. SKINGER, VINCE
GARLATI, and 3G CAPITAL INC.,

Defendants.

Case No. 1:19-cv-01845

Honorable Sharon Johnson Coleman

Sjunde AP-Fonden ("AP7") and Union Asset Management Holding AG ("Union") respectfully submit this memorandum of law in support of their motion seeking an Order: (i) consolidating the above-captioned actions and any related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (ii) appointing AP7 and Union as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (iii) approving their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the class; and (iv) granting such other and further relief as the Court may deem just and proper.

## I.     INTRODUCTION

Presently pending in this District are the two above-captioned securities class actions brought under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78(t)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against The Kraft Heinz Company ("Kraft Heinz" or the "Company") and certain of its executive officers and controlling shareholders (collectively, "Defendants") on behalf of investors who purchased Kraft Heinz securities between July 6, 2015, and February 21, 2019 (the "Class Period").[1]

---

[1] AP7 and Union's financial interest is set forth in their PSLRA-required certifications, which are attached as Exhibit A to the Declaration of Avi Josefson ("Josefson Decl."). In addition to the above-captioned actions, another related action is pending in the United States District Court for the Western District of Pennsylvania. *See Walling v. Kraft Heinz Co.*, No. 2:19-cv-00214-MRH (W.D. Pa.). AP7 and Union are concurrently filing a motion for appointment as lead plaintiff in the *Walling* action.

The PSLRA governs the selection of the Lead Plaintiff in class actions asserting claims under the federal securities laws. Specifically, the PSLRA requires courts to appoint as Lead Plaintiff the "person or group of persons" that: (i) made a timely motion under the PSLRA's sixty-day deadline; (ii) assert the largest financial interest in the litigation; and (iii) satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

AP7 and Union respectfully submit that they are the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. AP7 and Union's Motion is timely, and they suffered tens of millions of dollars in losses in connection with their transactions in Kraft Heinz securities during the Class Period. *See* Josefson Decl., Ex. A; *infra* Section III.B.ii; *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL 3141814, at *8 (N.D. Ill. June 26, 2018) (Dow, J.) (appointing group of movants with largest financial interest).

In addition to asserting the largest financial interest, AP7 and Union satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the class and because they will fairly and adequately represent the class. *See infra* Section III.B.iii. AP7 and Union— two sophisticated investors that have a preexisting relationship and are currently prosecuting *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (D.N.J.) together as Lead Plaintiff—fully understand the Lead Plaintiff's obligations to the class under the PSLRA, and are willing and able to undertake those responsibilities to ensure the vigorous prosecution of this action.

Indeed, prior to seeking a role as Lead Plaintiff, representatives of AP7 and Union took numerous steps to coordinate their activities and formalize their oversight of this litigation. For example, AP7 and Union extensively investigated the claims against Kraft, participated in

numerous discussions with counsel and each other, and held multiple joint conference calls with representatives from each fund to discuss the merits of the claims against Defendants, the significant losses the funds incurred, as well as the funds' common goals in maximizing the recovery for all Kraft Heinz investors. *See* Josefson Decl., Ex. B (the "Joint Declaration"). AP7's and Union's ongoing active participation in this action conclusively establishes their ability to act as a cohesive group and satisfies this Court's criteria for appointment. *See generally Sokolow*, 2018 WL 3141814, at *4. Moreover, as sophisticated institutional investors overseeing more than $400 billion in assets, combined, and with substantial experience serving as lead plaintiffs in prior class action litigation under the PSLRA, AP7 and Union are the prototypical Lead Plaintiff envisioned by Congress, and their appointment would therefore fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Sokolow*, 2018 WL 3141814, at *5 (finding that the PSLRA indicates a "presumption that institutional investors be appointed lead plaintiff") (citation omitted).

Finally, AP7 and Union have retained experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, AP7 and Union's selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."); *Sokolow*, 2018 WL 3141814, at *8 (approving lead plaintiff's choice of counsel).

## II.     FACTUAL BACKGROUND

Co-headquartered in Chicago, Kraft Heinz is one of the largest food and beverage companies in the world with sales in approximately 190 countries and territories. The Company manufactures and markets food and beverage products through its numerous iconic brands, including Heinz, Kraft, Oscar Mayer, Philadelphia, Velveeta, Lunchables, Planters, Maxwell House, Capri Sun, Ore-Ida, Kool-Aid, Jell-O, and many others. The Company was formed on July 6, 2015, through the merger of Kraft Foods Inc. and the H.J. Heinz Company.

The action alleges that during the Class Period, Defendants made materially false, and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants: (i) misrepresented that the Company's Zero Based Budgeting strategy and other cost-saving measures would deliver increased profitability while simultaneously maintaining base business momentum; (ii) failed to disclose known trends that were negatively impacting the Company's organic sales growth and profitability; (iii) falsely represented the ability of the Company's pipeline of new products to generate organic growth; (iv) falsely stated that "main-stays like Oscar Mayer [and] Kraft cheese" were "tangible drivers of [a] turnaround in the second half of 2018"; (v) failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (vi) failed to disclose known trends that resulted in the goodwill impairments affecting its U.S. Refrigerated and Canada Retail divisions.

Investors began to learn the truth about the Company's financial condition on November 1, 2018, when the Company announced disappointing third quarter fiscal 2018 financial results, in which the Company's earnings per share ("EPS") of $0.78 fell short of consensus estimates by nearly 4%, and the Company's earnings before interest, tax, depreciation and amortization

4

("EBITDA") missed analysts' consensus estimates by approximately $100 million, or 7%. Despite this news, Defendants continued to assure investors that the Company was "confident our Q3 results show that the turnaround of our top line performance is firmly underway, not just in terms of headline organic growth but also real volume growth." Defendants' attempts to assuage shareholder concerns notwithstanding, the price of Kraft Heinz common stock fell nearly 10% in response to the poor results, from a close of $56.20 per share on November 1, 2018, to close at $50.73 per share on November 2, 2018.

Then, on February 21, 2019, Kraft Heinz announced its financial results for the fourth quarter and full year 2018, which fell well below expectations. Specifically, Kraft Heinz announced that it had been forced to take a $15.4 billion non-cash impairment charge related to the goodwill and intangible assets driven "primarily [by] the Kraft and Oscar Mayer trademarks" and due "primarily [to] U.S. Refrigerated and Canada Retail." Additionally, Kraft Heinz disclosed that it had received a subpoena in October 2018 from the U.S. Securities and Exchange Commission concerning its investigation into the Company's accounting policies, procedures, and internal controls and that, because of an internal investigation, it recorded a $25 million increase to cost of goods sold ("COGS") due to its misstatement of previous COGS figures. Further, Kraft Heinz announced it was lowering its quarterly dividend from $0.625 per share, to $0.40 per share. In response to this news, the price of Kraft Heinz common stock fell over 27%, from a close of $48.18 per share on February 21, 2019, to close at $34.95 per share on February 22, 2019.

III.     ARGUMENT

A.     The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15

U.S.C. § 78u-4(a)(3)(B)(ii). In securities class actions proceeding under the PSLRA, consolidation under Rule 42(a) is appropriate where the related actions involve common questions of law or fact. *See* Fed. R. Civ. P. Rule 42(a); *Baron v. Angie's List, Inc.*, No. 1:13-cv-2032-WTL-TAB, 2014 WL 12755050, at *1 (S.D. Ind. June 16, 2014) (determining that Rule 42(a) "allows actions to be consolidated if they involve a common question of law or fact" (quotation omitted)).

There are at least two related securities class actions pending in this District on behalf of investors who purchased or acquired Kraft Heinz securities during the Class Period:

| Case Caption | Date Filed | Claims/Class Period | Class Period |
|---|---|---|---|
| *Hedick v. The Kraft Heinz Co.*, No. 1:19-cv-01339 | February 24, 2019 | Sections 10(b) and 20(a) of the Exchange Act; | May 4, 2017 through February 21, 2019 |
| *Iron Workers Dist. Council (Philadelphia and Vicinity) Ret. & Pension Plan v. The Kraft Heinz Co.*, No. 1:19-cv-01845 | March 15, 2019 | Sections 10(b), 20(a), and 20A of the Exchange Act; | July 6, 2015, through February 21, 2019 |

Here, the actions present similar factual and legal issues arising out of the same alleged course of misconduct by common defendants and involve the purchase or acquisition of Kraft Heinz securities at artificially inflated prices during overlapping class periods.[2] Accordingly, consolidation is appropriate under Rule 42(a). *See id*.

**B.      AP7 and Union Satisfy the PSLRA's Requirements and Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a Lead Plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

---

[2] The minor variations in the asserted class periods and Defendants named do not render consolidation inappropriate because the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation. *See In re Orion Sec. Litig.*, No. 08 Civ. 1328(RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008) ("slight differences in the facts alleged and legal issues raised do not preclude consolidation").

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of, among other things, the pendency of the action and the right to seek appointment as Lead Plaintiff within 60 days of the notice. *See id*. § 78u-4(a)(3)(A)(i). Within 60 days after publication, any member or group of members of the proposed class may apply to the court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that the court shall appoint as Lead Plaintiff the member or group of members of the class that the court determines to be most capable of adequately representing the interests of class members. *See id*. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the person or persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii).

### i. AP7 and Union Have Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows any member or members of the class to move for appointment as lead plaintiff within 60 days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II). Here, in connection with the filing of the first-filed action, *Hedick v. The Kraft Heinz Co.*, notice was published on February 24, 2019, in *Business Wire*. *See* Josefson Decl., Ex. C. Thus, April 25, 2019, is the deadline for class members to seek appointment as Lead

7

Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B). Accordingly, AP7 and Union have satisfied this requirement through the filing of this motion for appointment as Lead Plaintiff.

### ii. AP7 and Union Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs courts to adopt a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought by the class" that "otherwise satisfies the requirements of Rule 23." *Id.* § 78u-4(a)(3)(B)(iii)(I). Here, AP7 and Union suffered tens of millions of dollars in losses in connection with their Class Period transactions in Kraft Heinz securities. *See* Josefson Decl. Ex. A. To the best of their knowledge, AP7 and Union's financial interest in this matter is the largest of any Lead Plaintiff movant. *See* 15 U.S.C. § 78u-4(a)(3)(B).

### iii. AP7 and Union Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, AP7 and Union otherwise satisfy the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See Sokolow*, 2018 WL 3141814, at *6 (finding burden satisfied upon a preliminary showing of adequacy and typicality).

### 1. Typicality

The typicality requirement is satisfied if the Lead Plaintiff movant's claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* AP7 and Union satisfy this requirement because, like all other proposed class members, AP7 and Union purchased Kraft Heinz securities during the Class Period at prices that were artificially inflated through Defendants'

8

false and misleading statements and suffered damages thereby. *See id.* (finding that claims "based on the same legal theories and aris[ing] from the same events and course of conduct giving rise to the claims of the other class members" meet the typicality requirement). Thus, AP7 and Union's claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other class members. Accordingly, AP7 and Union are typical. *See id.*

### 2. Adequacy

"A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Id.* (citation omitted).

Here, AP7 and Union satisfy the adequacy requirement because their interest in vigorously pursuing claims against Defendants—given their substantial financial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements. There is no potential conflict between AP7 and Union's interests and those of the other members of the class, and AP7 and Union are fully committed to vigorously pursuing the claims on behalf of the class.

Moreover, as set forth in their PSLRA certifications, AP7 and Union have affirmed their understanding of the PSLRA's requirements and their willingness to pursue this action for the benefit of the class. *See* Josefson Decl., Ex. A. Additionally, as discussed in their Joint Declaration, AP7 and Union have demonstrated their commitment to working cohesively in the prosecution of this action. *See* Josefson Decl., Ex. B ¶¶6-17. District courts within the Seventh Circuit, including this Court, have repeatedly recognized the propriety of appointing groups of investors that "can adequately represent the interests of the class." *Sokolow*, 2018 WL 3141814,

9

at *4 (appointing group of investors as lead plaintiff); *see also In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6-7 (N.D. Cal. Aug. 20, 2001) (appointing a group composed of sophisticated investors as lead plaintiff because they "possess[ed] both sophistication and business knowledge, as well as substantial individual losses which adds meaningful incentive for a vigorous prosecution of the action").

AP7 and Union comprise a small, cohesive group of sophisticated institutional investors with a pre-existing relationship that determined that their joint appointment as Lead Plaintiff would advance the class's best interests. *See* Josefson Decl., Ex. B ¶¶6-9; *see also Sokolow*, 2018 WL 3141814, at *4 (appointing group of seven investors based on declaration demonstrating commitment to oversee litigation and prosecute case in the best interests of all class members).

Specifically, given the magnitude of their losses, their prior experience serving as lead plaintiffs, and the importance of the claims asserted against Defendants, AP7 and Union believe that this case should be prosecuted by sophisticated institutional investors with significant resources and a financial interest substantial enough to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the class. *See* Josefson Decl., Ex. B ¶¶8-9. Through the course of their evaluation of this case, and recognizing the benefits that could be realized by working together, AP7 and Union each expressed an interest in cooperating with other like-minded institutional investors in seeking appointment as Lead Plaintiff. *See id.* AP7 and Union agreed that their partnership would benefit the representation of the class in this action. In particular, based on their prior service as members of lead plaintiff groups, including AP7 and Union's ongoing oversight of Kessler Topaz and Bernstein Litowitz in *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (KSH) (CLW) (D.N.J.), AP7 and Union understand that their joint leadership would allow for the benefits of joint decision-making and the

10

sharing of experiences and resources, all of which would benefit the class.[3]  *See* Josefson Decl., Ex. B ¶¶10-11.

Significantly, the Joint Declaration also demonstrates that AP7 and Union have already taken (and will continue to take) numerous measures to ensure the vigorous prosecution of this action and oversee their counsel.  *See* Josefson Decl., Ex. B ¶¶10-17.  Specifically, to formalize their leadership of the action, and before seeking appointment as Lead Plaintiff, representatives of AP7 and Union participated in multiple conference calls and discussed together, among other things: their losses arising from Defendants' misconduct and their strategy for prosecuting this case, the strength of the claims against Defendants, as well as their common goals in ensuring that this action is litigated as efficiently as possible and that the Class receives the best possible result.  *See id.* ¶10.  AP7 and Union also directed their proposed Lead Counsel, Kessler Topaz and Bernstein Litowitz, to enter into a Joint Prosecution Agreement ("JPA") governing counsel's activities in this litigation, their reporting to and oversight by AP7 and Union and the allocation of litigation responsibilities to ensure the zealous and cost-effective prosecution of this action.  *See id.* ¶15.  AP7 and Union authorized counsel to provide the JPA to the Court for *in camera* review upon its request.  *See id.*  Further, AP7 and Union are aware that Kessler Topaz, which filed a complaint against Defendants expanding investors' claims, and Bernstein Litowitz have been investigating investors' claims for several weeks, and that their respective investigations identified several witnesses whose information could be used to bolster investors' claims in the amended complaint that AP7 and Union would file if appointed as Lead Plaintiff.  *See id.* ¶16.  AP7 and

---

[3] *See also In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with AP7 serving as co-lead plaintiff and Kessler Topaz and Bernstein Litowitz serving as co-lead counsel); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-cv-06324 (D. Minn.) ($85 million recovery with Union serving as co-lead plaintiff and Kessler Topaz and Bernstein Litowitz serving as co-lead counsel).

Union have instructed counsel to continue investigating claims while lead plaintiff motions are pending, and that ongoing investigation has already yielded significant evidence corroborating the merits of investors' claims. *See id.*

The evidence submitted by AP7 and Union establishing their commitment to zealously and efficiently represent the interests of the class as members of a Lead Plaintiff group is more than sufficient to satisfy the adequacy and typicality requirements here. *See, e.g.*, *Sokolow*, 2018 WL 3141814, at *4 (appointing group that submitted joint declaration that "explains how and why the [group] made the decision jointly to seek appointment as lead plaintiff in this matter"); *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing group of institutions that "conferred with one another [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation"); *In re Versata*, 2001 WL 34012374, at *6-7 (finding a group composed of sophisticated investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have "exhibited a cooperative spirit").

In addition to satisfying the typicality and adequacy requirements of Rule 23, AP7 and Union—with over $400 billion in assets under management, combined, and prior experience serving as lead plaintiffs under the PSLRA—are also the prototypical investors Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Sokolow*, 2018 WL 3141814, at *3 (finding that the

PSLRA indicates a "presumption that institutional investors be appointed lead plaintiff"). As such, AP7 and Union are sophisticated institutional investors with the experience and resources sufficient to adequately litigate the action and supervise class counsel.

Last, AP7 and Union have further demonstrated their adequacy through their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class. As discussed more fully below, both firms are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated the ability to conduct complex securities class action litigation in an efficient, effective, and professional manner.

### C. AP7 and Union's Selection of Lead Counsel Should be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See Sokolow*, 2018 WL 3141814, at *8 (approving lead plaintiff's choice of counsel). Here, AP7 and Union have selected and retained Kessler Topaz and Bernstein Litowitz to serve as Lead Counsel. AP7 and Union's selection of Lead Counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Josefson Decl., Ex. D (Kessler Topaz's Firm Résumé). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Sec. Litig.*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *Luther v. Countrywide Fin. Corp.*, No. 2:12-CV-05125 MRP (MANx) (C.D. Cal.) ($500 million recovery); and *In re Tenet Healthcare Corporation Sec. Litig.*, No. CV-02-8462-RSWL (Rx) (C.D. Cal.) ($215 million recovery). Kessler Topaz is currently serving as lead or co-lead counsel in several securities class actions in this District and across the country, including: *Washtenaw County Employees'*

13

*Retirement System v. Walgreen Co.*, No. 15-cv-3187 (SJC) (N.D. Ill.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.) (with AP7 serving as Lead Plaintiff).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Sec. Litig.*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Deriv. Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Josefson Decl., Ex. E (Bernstein Litowitz's Firm Résumé). Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. More recently, Bernstein Litowitz served as Lead Counsel—under Union's oversight as lead plaintiff—and obtained a $480 million recovery on behalf of the class in *Hefler v. Wells Fargo & Company*, No. 16-cv-5479 (N.D. Cal.). Significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Stericycle, Inc. Sec. Litig.*, No. 16-cv-7145 (N.D. Ill.) ($45 million recovery) (pending court approval); *Hughes v. Huron Consulting Grp., Inc.*, No. 09-cv-4734 (N.D. Ill.) ($38 million recovery); and *La. Firefighters' Ret. Sys. v. N. Trust Invs., N.A.*, No. 09-cv-7203 (N.D. Ill.) ($28.25 million recovery).

14

Moreover, Kessler Topaz and Bernstein Litowitz have a history of successfully prosecuting securities fraud class actions together. Kessler Topaz and Bernstein Litowitz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel, among others); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Kessler Topaz and Bernstein Litowitz as co-lead counsel). Furthermore, Kessler Topaz and Bernstein Litowitz are currently serving together as co-lead counsel in, among others: *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (KSH) (CLW) (D.N.J.) (with AP7 and Union serving as Lead Plaintiff), and *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.,* No. 4:17-cv-00449-ALM (E.D. Tex.).

Thus, the Court may be assured that, in the event this Motion is granted, the class will receive the highest caliber of legal representation available.

## IV.    CONCLUSION

For the reasons stated herein, AP7 and Union respectfully request that the Court consolidate the related actions, appoint AP7 and Union as Lead Plaintiff, approve their selection of Kessler Topaz and Bernstein Litowitz as Lead Counsel for the class, and grant such other relief as the Court may deem just and proper.

Dated: April 25, 2019

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Gerald H. Silk
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Union and Proposed Co-Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER
   & CHECK LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff AP7 and Proposed Co-Lead Counsel for the Class*

16