## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE A. HEDICK, JR., *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, *et al.*, <br><br> Defendants. | Case No. 19-1339 (RMD) <br><br> CLASS ACTION |
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, *et al.*, <br><br> Defendants. | Case No. 19-1845 (RMD) <br><br> CLASS ACTION |
| TIMBER HILL LLC, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, *et al.* <br><br> Defendants. | Case No. 19-2807 (RMD) <br><br> CLASS ACTION |

## THE NEW YORK CITY FUNDS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS OF ALL OTHER LEAD PLAINTIFF MOVANTS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    A.    THE CASES SHOULD BE CONSOLIDATED. ................................................... 3

    B.    NYC SHOULD BE APPOINTED LEAD PLAINTIFF. ....................................... 6

        1.    NYC has the largest financial interest in the litigation. ............................. 6

        2.    NYC satisfies the requirements of Federal Rule of Civil Procedure 23................................................................................................................... 7

    C.    THE OTHER MOVANTS SHOULD NOT BE APPOINTED. ............................ 8

        1.    The Foreign Funds are not the presumptive lead plaintiff and will not adequately represent the Class. ........................................................... 8

            a.    Funds within the Foreign Funds do not have standing or damages, and thus those funds should be excluded from any loss calculation................................................................................ 9

            b.    The Foreign Funds will not adequately represent the Class and will subject the Class to excess fees...................................... 10

            c.    The PSLRA presumptively bars the Foreign Funds from becoming lead plaintiff. ............................................................... 11

            d.    The Foreign Funds have already failed to adequately exercise appropriate oversight over their counsel........................ 12

        2.    The Arca Krupa Group is not the presumptive lead plaintiff and will not adequately represent the Class. ........................................................... 14

    D.    THE COURT SHOULD APPROVE NYC'S SELECTION OF COHEN MILSTEIN AS LEAD COUNSEL FOR THE CLASS........................................ 15

CONCLUSION...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...................................................................12

*CE Design Ltd. V. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ...............................................................................14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................................7

*Chew v. MoneyGram Int'l, Inc., et al.*,
    Case No. 18-7537 (N.D. Ill.)..................................................................................6

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
    2006 WL 1180267 (N.D. Cal. May 3, 2006) ..........................................................9

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................9

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) ...........................................................................4

*Hom v. Vale, S.A.*,
    2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..........................................................4

*Iron Workers District Council (Philadelphia and Vicinity) Retirement and*
    *Pension Plan v. The Kraft Heinz Company, et al.*,
    Case No. 19-1845 (N.D. Ill.)..........................................................................4, 5, 13

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)...................................................................10

*Knurr v. Orbital ATK, Inc.*,
    220 F. Supp. 3d 653 (E.D. Va. 2016) ..............................................................11, 12

*In re Lucent Techs. Inc. Sec. Litig.*,
    221 F. Supp. 2d 472 (D.N.J. 2001) ........................................................................6

*Ret. Sys. v. Hospira, Inc.*,
    2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ..........................................................7

*Sokolow v. LJM Funds Mgmt., Ltd.*,
    2018 WL 3141814 (N.D. Ill. June 26, 2018) ............................................... *passim*

*In re Surebeam Corp. Sec. Litig.*,
    2004 WL 5159061 (C.D. Cal. Jan. 5, 2004) ........................................................15

*In re Telxon Corp. Securities Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)................................................................12

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................10

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................11, 15

**Other Authorities**

Federal Rule of Civil Procedure 23 ...........................................................................7

Federal Rule of Civil Procedure Rule 42....................................................................3

"Kraft to Restate Financial Results Following Investigation," *The Wall Street
    Journal*, May 6, 2019..........................................................................................5

Manual for Complex Litigation, Fourth (May 2017)....................................................11

## INTRODUCTION

The New York City Funds ("NYC")[1], the paradigmatic lead plaintiff Congress had in mind when it enacted the Private Securities Litigation Reform Act ("PSLRA"), lost over $59 million on its investments in The Kraft Heinz Company ("Kraft Heinz"). NYC is the movant with the greatest financial interest in the relief sought by the Class. Indeed, its losses significantly exceed those of the next largest movant by millions. No movant can rebut NYC's significant and exceptional experience in representing classes of investors in securities cases or its capability to fairly and adequately protect the interests of the putative Class.[2] Further, NYC has selected a single, experienced law firm it has worked with for over a decade, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), to serve as Lead Counsel, after a competitive bidding process designed to effectuate a core purpose of the PSLRA: to "increas[e] the role of institutional investors in class actions . . . [so as to] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at *5 (N.D. Ill. June 26, 2018) (Dow, J.) (quoting H.R. REP. NO. 104-369, at 34 (1995) (Conf. Rep.)). As such, the PSLRA's lead plaintiff appointment framework is easily applied: NYC should be appointed Lead Plaintiff and Cohen Milstein should be appointed Lead Counsel.

---

[1] NYC is composed of the New York City Employees' Retirement System ("NYCERS"), the New York City Police Pension Fund ("Police"), the Board of Education Retirement System of the City of New York ("BERS"), the Teachers' Retirement System of the City of New York ("TRS"), the New York City Fire Department Pension Fund ("Fire"), the New York City Fire Officers' Variable Supplements Fund ("FOVSF"), the New York City Fire Fighters' Variable Supplements Fund ("FFVSF"), the Police Officers' Variable Supplement Fund ("POVSF"), the Police Superior Officers' Variable Supplement Fund ("PSOVSF"), the Fire Department Life Insurance Fund ("FDLIF"), and the Teachers' Retirement System of the City of New York Variable Annuity Program ("TRS Var-A").

[2] The Kraft Heinz Investor Group has since withdrawn their motion. Dkt. 71.

1

Yet, even if the Court went beyond the PSLRA's framework to conduct some sort of comparative analysis – which it should not – the application of the movant with the second largest loss, a multi-fund group comprised of Sjunde AP-Fonden ("AP7") and Union Asset Management Holding AG ("Union") (together, the "Foreign Funds"), can be readily denied. The Foreign Funds' loss is $9.2 million *less* than that of NYC.[3] Moreover, and in stark contrast to a leadership structure with a single plaintiff (NYC) and a single law firm (Cohen Milstein), the Foreign Funds seek to bring together two over-extended and unrelated funds (AP7 and Union) to monitor two law firms as purported co-lead counsel (Kessler and BLBG) – inviting duplicative work, inefficient oversight, and excessive fees charged to the Class.

Significantly, the Foreign Funds have already evinced a considerable lack of judgment and monitoring of their chosen counsel. Knowing that the Foreign Funds would not have the greatest financial interest, they obfuscated their losses in their initial motion. Then, recognizing that NYC was the presumptive lead plaintiff, the Foreign Funds' counsel represented to the Court at the May 1, 2019 presentment hearing that they were joining with two other fund movants – Arca Investments, A.S. ("Arca") and Krupa Global Investments ("Krupa") (together, the "Arca Krupa Group"). This scheming was a blatant attempt to try to supplant NYC as the movant with the largest financial interest in the litigation. But that too proved unavailing. On May 14, 2019, the Foreign Funds changed their minds *again*, writing to the other movants that they would forego teaming up with the Arca Krupa Group. Their reversal of such a hasty partnership comes as no

---

[3] In a series of side letters to the undersigned, the Foreign Funds raised various issues concerning NYC's certifications. Those purported issues are based, in part, on the Foreign Funds' misunderstanding of attorney-client privileged information that their attorneys received as pre-approved outside counsel for NYC prior to the lead plaintiff filing deadline. Each issue raised was investigated and found unavailing. After reviewing which arguments the Foreign Funds advance in their opposition brief, NYC will explain why these challenges lack merit.

surprise in light of Arca and Krupa's history of misconduct. Regardless of the reason, the Foreign Funds elected to disavow the PSLRA's preference and their own declarants' representations calling for a single institutional investor or a small and cohesive group that would oversee counsel and act as fiduciaries to the Class, in favor of a do-anything-to-win strategy. This maneuvering suggests it is counsel and not the investors calling the shots, and that the Foreign Funds "will not fairly and adequately protect the interests of the [C]lass." *LJM*, 2018 WL 3141814, at *6.

The remaining movants either have losses that are incalculable (Timber Hill) or many millions below those of NYC (Chesson), or are inadequate fiduciaries to the Class (the Arca Krupa Group). As explained below, the Arca Krupa Group's current principal and signatory of the certification in this case, Pavol Krúpa, has been deemed "untrustworthy" by the Czech National Bank, which renders the Arca Krupa Group wholly inadequate to serve as a fiduciary for the Class.

For these reasons and those that follow, NYC's motion should be granted.

## ARGUMENT

### A. THE CASES SHOULD BE CONSOLIDATED.

For the reasons stated in NYC's opening motion, the Court should consolidate all three cases under Rule 42(a) of the Federal Rules of Civil Procedure and appoint NYC to represent all Kraft Heinz securities investors in a consolidated action. *See* Dkt. 47, at 5-7. No party disputed consolidation in their motion papers. *See* Chesson Br. at 3; Arca Krupa Group Br. at 4-5; Foreign Funds Br. at 5-6; Timber Hill Br. at 12. However, while both Timber Hill and Chesson support NYC's application for lead plaintiff, they each seek to separately represent derivative securities holders. Specifically, Timber Hill seeks for its case (Case No. 19-2807), which alleges the same underlying facts and conduct as the other actions, to be coordinated – *not* consolidated – with the other actions, and Chesson seeks to serve as a separate class representative for derivative securities holders in a consolidated action. In the event that the Court does not consolidate *Timber Hill* with

*Hedick* and *Iron Workers*, or appoints either Timber Hill or Chesson to separately represent derivative securities holders in a consolidated action – which it should not – NYC has discussed with both Timber Hill and Chesson how they can work together cooperatively to ensure that their representation of Kraft Heinz investors does not result in needless duplication of work.

Once consolidated, the Court should use the July 6, 2015 to February 21, 2019 class period alleged in the *Iron Workers* and *Timber Hill* complaints – *see* Case No. 19-1845, Dkt. 1, at 1 (*Iron Workers*), and Case No. 19-2807, Dkt. 1, at 1 (*Timber Hill*) – to analyze the lead plaintiff motions, and not the May 4, 2017 to February 21, 2019 class period alleged in the *Hedick* complaint. Dkt. 1, at ¶ 1. When faced with multiple class periods, courts use the longest, most inclusive class period to analyze movants' losses because it provides the greatest protection for investors from the outset of the litigation and prevents splintering by niche plaintiffs who merely hope to secure a role for themselves in the litigation. *See Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012). Indeed, four of the six original movants agree that July 6, 2015 is the proper class period start date. *See* Dkt. 59, at 3 (Foreign Funds); Dkt. 41, at 7 (Kraft Heinz Investor Group); Dkt. 63, at 6 (Timber Hill); Dkt. 47, at 7 (NYC). Counsel for the Foreign Funds (Kessler) also filed the *Iron Workers* complaint "expanding investors' claims" to include the period starting on July 6, 2015, after they "extensively investigated the claims." Dkt. 59, at 2, 11.[4]

That all the movants sought consolidation of the actions and referenced the July 2015 time period in their motion, complaint, or other pleadings is no surprise given that a core part of the

---

[4] While Chesson used the May 4, 2017 class period start date in its motion, the litigation hold letter sent by Chesson's counsel to Kraft Heinz demonstrates that they too believe that the underlying misconduct began at least as early as July 6, 2015. Dkt. 50-7, at 2 (requesting documents from at least January 1, 2014).

fraud begins with the merger of Kraft Foods Inc. and The H.J. Heinz Company in July 2015. That merger was sold to investors on the purported ability of the newly combined Company, spearheaded by 3G Capital, to generate "an estimated $1.5 billion in annual cost savings from the increased scale of the new organization, the sharing of best practices and cost reductions [anticipated] by the end of 2017," and by implementation of "Zero Based Budgeting," an aggressive cost cutting and containment mechanism. *Iron Workers* Compl. ¶¶ 3, 9.[5] Then, following the merger, Defendants continued to mislead investors by touting the success of their cost cutting strategy, stating on November 5, 2015, for example, that the newly-formed Kraft Heinz was "[e]ffectively managing pricing and input costs" and would "[c]ontinue to deliver productivity and restructuring savings," *id.* ¶ 45, and stating on February 25, 2016 that Kraft Heinz had "realized roughly $125 million in savings in 2015," had been "growing quite stable" during that period, and that the savings from its cost-cutting initiative was "coming faster than we were expecting roughly $225 million in Q1." *Id.* ¶¶ 47, 48. Importantly, 3G and Kraft Heinz executives engaged in contemporaneous insider trading. *See* Dkt. 47, at 9.

Further, after the lead plaintiff motions were filed, Kraft Heinz announced that it was restating "a host of financial statements dating as far back as 2016" due to "misstatements,"[6] and explained that the restatement was due to "the qualitative nature of the matters identified in the

---

[5] "*Iron Workers* Compl." refers to the complaint filed on March 15, 2019 in *Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan v. The Kraft Heinz Company, et al.*, Case No. 19-1845 (N.D. Ill.), Dkt. 1.

[6] "Kraft to Restate Financial Results Following Investigation," *The Wall Street Journal*, May 6, 2019 (quotations omitted) (emphasis added).

investigation, including *the number of years over which the misconduct occurred* and the number of transactions, suppliers, and procurement employees involved."[7]

Since the Company has confirmed internal misconduct dating back to at least 2016, it is critical to protect investors in the longest, most inclusive class period of July 6, 2015 to February 21, 2019. By contrast, there is no sound basis for using the *Hedick* class period in determining the movant with the greatest financial interest.[8]

### B.     NYC SHOULD BE APPOINTED LEAD PLAINTIFF.

#### 1.     NYC has the largest financial interest in the litigation.[9]

In assessing which movant has the largest financial interest in the relief sought by the Class, courts consider four factors – the total number of shares purchased during the class period, the net number of shares purchased during the class period, the net funds expended during the class period, and the approximate losses suffered due to the defendants' misconduct – but the most important factor is the approximate losses suffered. *LJM*, 2018 WL 3141814, at *2. Courts across the country and in this District use the last-in-first-out ("LIFO") method for calculating the

---

[7] The Kraft Heinz Company, Current Report (Form 8-K), at 1 (May 6, 2019) (emphasis added).

[8] The Arca Krupa Group suggests that the Court "may" want to create a temporal subclass with a representative plaintiff. *See* Dkt. 53, at 4. There is no need for subclasses here. Subclasses are appropriate only when plaintiffs "have a substantial antagonism toward the positions of other[s] in the class." *In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483 (D.N.J. 2001) (citation and quotation omitted). There is no antagonism here. Securities class actions with four-year class periods are litigated often without any subclasses. *E.g.*, *Chew v. MoneyGram Int'l, Inc., et al.*, Case No. 18-7537 (N.D. Ill.), Dkt. 55 (class period of February 11, 2014 through November 8, 2018). It is particularly unnecessary given that NYC has transactions throughout the entire July 6, 2015 to February 21, 2019 class period, and thus will capably serve as an adequate plaintiff for investors for that entire period. *See* Dkt. 47-3 and Dkt. 47-4. Appointing a class representative for a subset of the class period would result in duplicative work product and increased cost to the Class.

[9] As set forth in its opening motion, NYC complied with the PSLRA by filing its motion for appointment as lead plaintiff within 60 days after the notice announcing the filing of the first case was published on February 24, 2019. Dkt. 47, at 7-8.

approximate loss suffered. *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *5 (N.D. Ill. Apr. 18, 2012). Under each of these factors, NYC has the largest financial interest, including a total LIFO loss of ***$59,257,708***.

### 2. NYC satisfies the requirements of Federal Rule of Civil Procedure 23.

Under the PSLRA, "[t]he typicality and adequacy elements are the relevant factors to the appointment of a lead plaintiff." *LJM*, 2018 WL 3141814, at *6. Here, for the reasons stated in its opening brief, NYC satisfies both elements. Dkt. 47, at 13-17. Indeed, NYC is regularly certified by courts throughout the country as a lead plaintiff or class representative. Dkt. 47-5, at ¶¶ 7-9. It has never been found to be inadequate, atypical, or subject to unique defenses in a securities class action. That Timber Hill and Chesson support NYC as lead plaintiff and that the other movants' counsel (BLBG and Kessler) have represented NYC in securities class actions and/or previously served as outside counsel to NYC all underscore NYC's adequacy. *E.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 216 (3d Cir. 2001) (BLBG representing NYC).

NYC's adequacy is further demonstrated by the process used to select Cohen Milstein as lead counsel. NYC's counsel selection process is designed specifically to – and, in fact, does – maximize savings for the Class. These savings are economically significant, as demonstrated by a comparison of the fees lead counsel received in a recent case where NYC was the lead plaintiff (*Countrywide*) with the fees lead counsel (including BLBG and Kessler) received in cases where AP7 and/or Union were the lead plaintiffs (*JPMorgan*, *Medtronic*, *Wells Fargo*). *See* Declaration of Carol V. Gilden ("Gilden Decl."), Ex. A. Had NYC been the lead plaintiff in these three cases instead of AP7 and Union, the classes in those respective cases would have been able to distribute to investors (rather than their lawyers) an additional *$19 million and $58 million*. Accordingly,

NYC is submitting *in camera* its fee agreement with Cohen Milstein in this case to demonstrate its adequacy.[10]

### C. THE OTHER MOVANTS SHOULD NOT BE APPOINTED.

Because NYC has the largest loss, it is the presumptive "most adequate" plaintiff. *LJM*, 2018 WL 3141814, at *2. And because NYC will fairly and adequately protect the interests of the Class and is not subject to any unique defenses that render it incapable of adequately representing the Class, it should be appointed lead plaintiff. *Id.* at *6. The following chart demonstrates how much larger NYC's financial interest is in this litigation than that of the other movants:

| Movant(s) | Common Stock Shares Purchased | Common Stock Net Shares Purchased | Common Stock Net Funds Expended | Common Stock LIFO Losses | Overall LIFO Losses |
|---|---|---|---|---|---|
| **NYC** | 2,590,254 | *1,395,838* | *$101,689,036* | *$56,013,019* | *$59,257,708* |
| **Foreign Funds** | 1,371,897 | 1,206,307 | $88,425,204 | $48,951,192 | $50,005,508 |
| *AP7* | *681,614* | *647,024* | *$47,742,549* | *$26,569,967* | *$26,569,967* |
| *Union* | *690,283* | *559,283* | *$40,682,655* | *$22,381,225* | *$23,435,541* |
| **Arca-Krupa** | 837,689 | 785,889 | $48,556,151 | $22,839,506 | $22,839,506 |
| **Timber Hill** | 4,671,404 | 35,051 | $4,931,917 | $8,249,068 | *Unknown* |
| **Chesson** | 240,000 | 235,000 | $17,108,830 | $9,124,276 | $8,514,127 |

### 1. The Foreign Funds are not the presumptive lead plaintiff and will not adequately represent the Class.

The Court should not appoint the Foreign Funds. Their losses are approximately $9.2 million *less* than that of NYC, and their composition of two unrelated and over-extended foreign funds – served by two law firms for no identifiable reason – renders them inadequate fiduciaries.

---

[10] As set forth above, the PSLRA does not allow for a comparative process among movants. So long as the movant with the greatest financial interest is otherwise adequate, that movant should be appointed. Nevertheless, in anticipation of the challenges the other movants intend to raise, and to demonstrate the strong oversight NYC has already exercised over its counsel in protection of the Class, NYC respectfully requests that the Court consider the other movants' fee agreements with their respective counsel *in camera* as well.

### a. Funds within the Foreign Funds do not have standing or damages, and thus those funds should be excluded from any loss calculation.

Union and AP7 are each made up of numerous separate funds. As set forth in their certifications, a number of Union's funds sold their Kraft Heinz positions *prior* to the disclosures alleged in all of the complaints: Demografiefonds; DEVIF-Fonds Nr. 91; DEVIF-Fonds Nr. 92; GenoAS: 1; LIGA Multi Asset Income; LIGA Portfolio Concept; LIGA-Pax-Cattolico-Union; SUDWESTBANK-Interrent-UNION; UIN-Fonds Nr. 581; UIN-Fonds Nr. 682; UIN-Fonds Nr. 727; UIN-Fonds Nr. 759; UIN-Fonds Nr. 760; UIN-Fonds Nr. 762; UIN-Fonds Nr. 915; UniFavorit: Aktien; UniNorclarnerika. Those funds accordingly do not have standing or damages in this litigation under Supreme Court law holding that if "the purchaser sells the shares . . . before the relevant truth begins to leak out, *the misrepresentation will not have led to any loss*." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (emphasis added). Here, the identified funds sold their shares and thus suffered their respective losses *before* the fraud was allegedly revealed on November 1, 2018 and February 21, 2019.

Courts have repeatedly emphasized that money lost before the fraud was revealed may not be included in calculating financial interest because under *Dura*, such "losses" have nothing to do with the alleged fraud, and are not legally recoverable. *See, e.g., In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 2006 WL 1180267, at *8-*9 (N.D. Cal. May 3, 2006) ("[S]ince corrective disclosure is alleged to have occurred only from July 2001 onwards, under *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and thus these plaintiffs may not recover at all."). Thus, the purported losses of those funds should be excluded from the Foreign Funds' loss calculation.

b.     **The Foreign Funds will not adequately represent the Class and will subject the Class to excess fees.**

In their Joint Declaration, the Foreign Funds purport to recognize the importance of efficient representation that would maximize the recovery for the Class. *See, e.g.*, Dkt. 60-2, at ¶ 15 (claiming to want to "ensure that the class will receive zealous yet efficient representation in this case"); *id.* at ¶ 6 (stating that the case should be prosecuted "efficiently" and "in the best interests of the class"). Yet, given the number of law firms litigating on behalf of the Foreign Funds, duplication of work is inevitable. As this Court has recognized, "a group may become too large for its members to operate effectively." *LJM*, 2018 WL 3141814, at *3 (citations and quotations omitted). The Foreign Funds are just such a group. They consist of two funds, eight declarants/signatories,[11] and two law firms (BLBG and Kessler),[12] across five cities and three countries (New York, Chicago, Radnor (Pennsylvania), Frankfurt, and Stockholm). *See* Dkt. 60. Given the number of individuals and entities involved and the far-flung locations of the group's members and their lawyers, this is a group where "the PSLRA's purpose of having active and engaged plaintiffs supervise the conduct of the litigation" cannot be met. *LJM*, 2018 WL 3141814, at *3. Indeed, courts have refused to appoint two or more law firms as co-lead counsel in securities class actions where – like here – "the mushrooming presence of ever-more attorneys in a case more often serves to delay than to expedite the just and efficient administration of justice" and "tends to increase costs." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015). In contrast, NYC, served by one firm, presents the optimal lead plaintiff, and "the PSLRA would be better served by the appointment of one law firm to manage the case." *Weltz v. Lee*, 199 F.R.D.

---

[11] Fischer, Riechwald, Grottheim, Gay, Lowenbruck, Sillem, Ebhardt, and an illegible name that appears to be "Riefe."

[12] With at least six attorneys at those firms (Josefson, Silk, Blatchley, Amjed, Check, Degnan).

129, 134 (S.D.N.Y. 2001)). *See also* Manual for Complex Litigation, Fourth § 10.21 Author's Comments (May 2017) ("[I]f one firm can fulfill the lead counsel role, adding more firms adds nothing to the process, and may only make it more cumbersome or expensive.").

In their Joint Declaration, the Foreign Funds similarly claim that their "primary goal in this litigation is to maximize the class's recovery." Dkt. 60-2, at ¶ 6. But given their history of approving sizeable attorney fee awards to BLBG and Kessler in other securities fraud class actions, this assertion is false. *Supra* at 10; Gilden Decl., Ex. A.

### c. The PSLRA presumptively bars the Foreign Funds from becoming lead plaintiff.

The Foreign Funds' current involvement in at least eight securities class actions renders the group less capable of being proper fiduciaries to the Class than NYC. Indeed, Union alone is currently a lead plaintiff in at least five active cases. The PSLRA's "Restrictions on professional plaintiffs" provision prohibits any person from serving as lead plaintiff in more than five securities class actions during any three-year period: "[e]xcept as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi) (the "5-in-3 provision").

The Foreign Funds violate this provision. Their members have been appointed lead plaintiff in *eight* securities class actions in the last three years. Indeed, Union alone has been appointed lead plaintiff in seven class actions in the last three years. Dkt. 60-1, at ¶ 6. This violation of the PSLRA precludes the group's consideration as lead plaintiff now. In *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 658-62 (E.D. Va. 2016), the court applied the 5-in-3 provision to hold that an institutional investor (ATRS) could not serve as lead plaintiff in a

11

securities class action. The court rejected ATRS's argument that the provision does not apply to institutional investors, holding that it had no textual basis: "[b]ecause Congress did not include any such language, an exemption for institutional investors cannot be judicially grafted onto the statute[.]" *Id.* at 660.

ATRS pointed to legislative history suggesting that the PSLRA favors the appointment of institutional investors as lead plaintiffs, but the court forcefully rejected this argument too, holding that the legislative history does not reflect that Congress intended to grant an institutional investor exemption to the 5-in-3 provision (which Congress could easily have done), and that in any event, "Congress enacts, and the President signs, statutes – not conference reports." *Id.* at 661. The court stated that the need to revert to legislative history was inappropriate where, as here, the PSLRA "plainly contains no exemption for institutional investors." *Id. See also, e.g.*, *In re Telxon Corp. Securities Litig.*, 67 F. Supp. 2d 803, 819-22 (N.D. Ohio 1999) (refusing to appoint as lead plaintiff an institutional investor who violated the 5-in-3 rule); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157 (N.D. Cal. 1999) (same). This Court should similarly hold that the 5-in-3 restriction presumptively bars the Foreign Funds from being lead plaintiff under the facts of this case. There is no reason to overcome this presumption because NYC, the institutional investor with the largest loss, stands ready to assume the lead plaintiff position.

### d. The Foreign Funds have already failed to adequately exercise appropriate oversight over their counsel.

The Foreign Funds' behavior in this litigation has been so disjointed that it appears to be a lawyer-driven group. As this Court has stated, "there must be some evidence that the members of the group will act collectively and separately from their lawyers." *LJM*, 2018 WL 3141814, at *3 (citations and quotations omitted). There is no such evidence here. Indeed, the evidence shows

the opposite: despite having no prior relationship with the Arca Krupa Group or its two law firms,[13] the Foreign Funds announced to the Court that the four funds would be entering into a newly formed partnership *after* their initial motion papers were submitted. The only plausible inference of this shotgun marriage is that the law firms are running the clients – not vice versa. The inference is further strengthened by the brief procedural history of this case. Kessler initially filed the *Iron Workers* complaint on behalf of the Iron Workers Plan, together with co-counsel from Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"). Case No. 19-1845, Dkt. 1, at 38. About a month later, Kessler – now with BLBG – filed a lead plaintiff motion on behalf of the Foreign Funds, and dropped their client, the Iron Workers Plan, and then-co-counsel Quinn from the litigation. Then, five days *after* NYC filed its motion demonstrating that it had the largest financial interest in the case, the lawyers representing the Foreign Funds represented to the Court that they would be adding Arca and Krupa and the Wolf Popper and Robinson Curley law firms to their group. Then, on May 14, 2019 – the day before the briefing deadline for responses – the lawyers for the Foreign Funds sent an email to all counsel changing course and announcing that they would *not* be combining with Arca and Krupa, likely because they discovered after the announcement of their purported combination that Arca and Krupa have extremely concerning adequacy issues, discussed below. *See* Gilden Decl., Ex. B.

In the aggregate, the following factors render the Foreign Funds inadequate to serve as lead plaintiff: (i) they have a substantially smaller financial loss in this litigation than NYC, (ii) they are professional plaintiffs involved in ten securities class actions in the last three years, (iii) they have demonstrated a willingness to retain four law firms when only one is necessary, (iv) they are

---

[13] Indeed, the Foreign Funds' counsel is adverse to the Arca Krupa Group, arguing in a separate action just one month ago that the Arca Krupa Group was an inadequate fiduciary. Gilden Decl., Ex. C, at ¶ 11.

ineffective at containing excess fees to the Class, and (v) they have been playing a win-at-all-costs shell game indicating that the lawyers rather than the clients are driving the litigation.

### 2. The Arca Krupa Group is not the presumptive lead plaintiff and will not adequately represent the Class.

The Court should reject the Arca Krupa Group's motion both because its losses are dwarfed by NYC and because its members have engaged in "unrelated misconduct which implicates [their] ability to serve as a fiduciary" and subjects them to unique defenses. *LJM Funds*, 2018 WL 3141814, at * n.6 (quoting *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (C.D. Cal. Jan. 5, 2004)); *see also CE Design Ltd. V. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems . . . may not be an adequate class representative").

*First,* Mr. Krúpa was recently barred by the Czech National Bank ("CNB") from managing the ARCA Capital CEE investment fund in the Czech Republic, finding him "*untrustworthy*." Gilden Decl., Ex. D; *see also* Gilden Decl., Ex. E. The CNB cited the following factors: (1) Mr. Krúpa and his entities were fined by regulators for serious infractions in 2013, 2014, and 2015, resulting in fines totaling over 3.1 million Czech Koruna, Gilden Decl., Ex. E, at ¶¶ 17, 26, 29, 30, 34, and 36; and (2) in his application to the CNB to manage the ARCA Capital CEE investment fund, Mr. Krúpa *deliberately concealed* these previous fines. *Id.* at ¶ 36.

*Second*, Arca recently ousted Mr. Krúpa from its management as a "direct consequence" of the CNB's finding that Mr. Krúpa is "untrustworthy." Gilden Decl., Ex. F, at 3. Ratislav Velic, Arca's current principal and declarant here, further stated that Arca's goal of being "a strategic and financial investor . . . is *not compatible* with an opportunistic investor like Pavol Krúpa." *Id.* at 1. It is unclear how Velic and Krúpa, who appear to be at loggerheads, can jointly oversee this case.

14

*Third,* Krúpa is engaging in a public relations campaign involving the publication of multiple open letters to Kraft Heinz and its shareholders and paying fake protesters to pressure Warren Buffet and Berkshire Hathaway to take Kraft Heinz private. Dkt. 54-7.

Each of the foregoing calls into question the Arca Krupa Group's typicality and subjects them to unique defenses that will consume this litigation, rendering them wholly inadequate class representatives. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *Surebeam*, 2004 WL 5159061, at *7.

### D.    THE COURT SHOULD APPROVE NYC'S SELECTION OF COHEN MILSTEIN AS LEAD COUNSEL FOR THE CLASS.

NYC chose Cohen Milstein as Lead Counsel after a competitive bidding process and negotiations regarding a fee structure. *See* Dkt. 47-5, at ¶ 15. Cohen Milstein's record of success handling complex, large securities class actions is reflected in its recent success in *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, et al.*, in which the firm in March 2019 secured preliminary approval of a $165 million settlement after litigating a case that began in 2008 in the heat of the financial crisis. Case No. 08-5310, Dkt. 320 (S.D.N.Y. March 8, 2019). If appointed, Cohen Milstein would be the sole law firm representing the plaintiff class, avoiding the inevitable duplication that results from having a multi-law firm co-lead structure. Finally, Cohen Milstein's recent appointment as lead counsel in the *General Electric* securities litigation, Case No. 19-1013, Dkt. 32 (S.D.N.Y. April 25, 2019), will enable it to leverage its expertise and work with accounting experts in that litigation – which similarly involves a massive goodwill write-down – in this litigation, resulting in more savings to the Class.

### CONCLUSION

For the foregoing reasons, NYC's motion should be granted, and the competing motions should be denied.

Date:   May 15, 2019                                    Respectfully submitted,

**COHEN MILSTEIN SELLERS
& TOLL PLLC**

*/ s / Carol V. Gilden*
Carol V. Gilden (Bar No. 06185530)
190 South LaSalle Street / Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Julie Goldsmith Reiser
Adam H. Farra
1100 New York Avenue, N.W. / Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
jreiser@cohenmilstein.com
afarra@cohenmilstein.com

Laura H. Posner
88 Pine Street / 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
lposner@cohenmilstein.com

*Counsel for Proposed Lead Plaintiff NYC and
Proposed Lead Counsel for the Class*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed on May 15, 2019 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

*/ s / Carol V. Gilden*
Carol V. Gilden
