# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE A. HEDICK, JR., *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 19-cv-1339 (RMD) |
| v. | CLASS ACTION |
| THE KRAFT HEINZ COMPANY, *et al.*, | |
| Defendants. | |
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 19-cv-1845 (SJC) |
| v. | CLASS ACTION |
| THE KRAFT HEINZ COMPANY, *et al.*, | |
| Defendants. | |
| TIMBER HILL LLC, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 19-2807 (RMD) |
| v. | CLASS ACTION |
| THE KRAFT HEINZ COMPANY, *et al.* | |
| Defendants. | |

## SUPPLEMENTAL DECLARATION OF ALAN H. KLEINMAN

Alan H. Kleinman hereby declares, pursuant to 28 U.S.C. § 1746:

2518834 v1

1.     I am Senior Counsel at the New York City Law Department ("Law Department"). I submit this declaration in further support of the application made by certain New York City Funds described below (the "NYC Funds") for consolidation, appointment as lead plaintiff, and approval of their selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as lead counsel. I previously submitted a Declaration on April 25, 2019 in support of the NYC Funds' motion for lead plaintiff.

2.     As explained in my prior Declaration, the Law Department is the legal arm of the City of New York. Pursuant to the powers and duties granted to it under Section 394 of the New York City Charter, the Law Department represents all City agencies, the Comptroller and the NYC Funds.

3.     Each NYC fund plaintiff is a legal entity that has been established by statute to hold funds that will be paid out pursuant to statutory formulas to qualifying pensioners. Each fund plaintiff invests pension assets to maximize the funds available for its members and participants.

4.     The governance of each fund plaintiff is also set out by statute. Each fund plaintiff has a Board, with prescribed Board members. The Boards, as the governing entities for each fund plaintiff, are empowered to make decisions about those funds, including the decision to assert legal claims to recover losses to those funds.

5.     Pursuant to New York City Charter § 394(a), the Corporation Counsel is the "attorney and counsel for the city and every agency thereof and shall have charge and conduct all the law business of the city and its agencies." As set forth in the New York City Charter § 391, the Corporation Counsel is the head of the Law Department, which creates authority for attorneys in the Law Department to act as counsel for each plaintiff fund.

6.      The New York City Charter assigns the Law Department "the right to institute actions in law or equity and any proceedings by law in any court . . . to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city or of any part or portion thereof[.]" *Id.* § 394(c).  In other words, the Law Department has the responsibility to develop a unified litigation strategy on their behalf.  In all instances of securities litigation, the participating funds pursue the unified litigation strategy carried out by the attorneys in the Affirmative Litigation Division in the Law Department, who oversee all the City's securities litigation.

7.      The Affirmative Litigation Division attorneys take a very active role in securities litigation, ensuring that the interests of the City and the class it seeks to represent as a fiduciary are advanced.  I have reviewed closely – and edited – everything that our outside counsel, Cohen Milstein, has presented to the Court on behalf of the NYC Funds in the *Kraft Heinz* litigation.

8.      In sum, while each fund plaintiff has a Board that must authorize the Law Department to assert legal claims and approve any settlement brought under the securities laws, the legal representation of each NYC fund asserting claims in *Kraft Heinz* is overseen and conducted by the Law Department.

9.      Accordingly, in this litigation, the Law Department recommended that each injured NYC retirement fund pursue claims with respect to losses in Kraft Heinz securities.  Each Board reviewed the recommendation, and voted in favor of authorizing the Law Department to pursue lead plaintiff status.

10.     The Law Department, through established protocols, then selected outside counsel which it would oversee.  After a competitive bidding process, the Law Department selected Cohen Milstein to represent all injured NYC Funds.  We have done all we can to position the

- 3 -

NYC Funds as the best lead plaintiff: we have one excellent law firm to represent the Class with a very competitive fee structure to ensure that the maximum recovery goes to Kraft Heinz investors.

11.     Another way to consider the unity of interests reflected by the NYC Funds is to look at how they engage in regular business activities.  The New York City Comptroller issues Consolidated Annual Financial Reports ("CAFR").  *See, e.g.*, The City of New York, New York, *Comprehensive Annual Financial Report of the Comptroller for the Fiscal Year Ended June 30, 2018*, available at https://comptroller.nyc.gov/wp-content/uploads/documents/CAFR2018.pdf. As detailed therein, the Comptroller is the custodian of the assets of the NYC Funds, and serves as Trustee on four of the five funds and as an investment advisor for all five funds.  As custodian, the Comptroller contracts with a custodial bank which holds assets of all the funds except the Teachers' Variable Fund.  As permitted by NYC Admin. Code §§ 13-235 and 13-702, the Boards have delegated their funds' investment authority to the Comptroller.  Under New York City Charter § 94 and NYC Admin. Code § 13-536, the Comptroller in turn delegates these functions to the head of the Bureau of Asset Management ("BAM"), which exercises all investment management and advisory powers delegated to the Comptroller collectively by the Boards.  BAM implements the Boards' decisions, reports on investment performance, and advises the Boards on a range of investment-related topics.  Each system's portfolios are managed predominantly by external investment managers, hired by BAM with the Boards' approval, who have specific mandates about how they may invest, including in: publicly traded securities, private equity, real estate, infrastructure, hedge funds, and fixed income investments. These investment assets totaled nearly $196 billion in June 2018, making the NYC Funds the fourth largest public pension fund in the country.  The fact that the NYC Funds provide

consolidated financial reporting reflects their unity and central oversight, just as the separate financial reporting reflects the legal independence of the five pension plans. As stated in the CAFR: "The financial reporting entity consists of the City government and its component units, which are legally separate organizations *for which the City is financially accountable.*" *Id.* at 10 (emphasis added).

12.     Although each NYC fund is legally distinct, their cohesiveness is further demonstrated by the fact that New York City sponsors or participates in providing benefits to its employees, the majority of whom are members of one of these pension funds (which are collectively referred to as "NYCRS"). Each fund administers a qualified pension plan ("QPP") and one or more variable supplements funds ("VSFs") or tax-deferred annuity programs ("TDA Programs") that supplement the pension benefits. Likewise, these funds function under existing State statutes and City laws, which are the basis by which benefit terms and employer and member contribution requirements are established. *Id.* at 127, 130.

13.     In paragraph 7 of the Declaration I submitted on April 25, 2019, I noted the seven cases in which the NYC Funds have previously been appointed a lead plaintiff or class representative. Neither in those cases nor in cases where the NYC Funds sought to be appointed lead plaintiff but did not have the greatest financial interest has a court ever treated the NYC Funds as an unrelated group of funds. To the contrary, U.S. courts always understood that where the NYC Funds operate under the same statutory framework, with the same financial guarantor, using the same investment adviser and same legal counsel, they are a proper single movant for purposes of the PSLRA.

14. In their opposition brief filed in *Kraft Heinz*, the Foreign Funds question the veracity of the NYC Funds' certifications concerning what they claim are "commingled" funds. *See* Dkt. 90, at 2.

15. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

16. The NYC Funds have identified all the transactions in Kraft Heinz securities during the relevant period and assigned the gain or loss to the proper fund; there is no double counting of any investment. Accordingly, the certifications that I submitted on April 25, 2019 (*see* Dkt. 47-3), reflect the separate transactions for each of the NYC Funds and are accurate as submitted. The Private Securities Litigation Reform Act ("PSLRA") does not require movants to provide account-level detail concerning their investments in the securities at issue, and it would make no difference here where the certifications accurately presented the transactions and the gains and losses of each NYC fund.

17. While the certifications I submitted in support of the NYC Funds' motion for lead plaintiff are fully compliant with the PSLRA, ████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████

18.     In their opposition brief filed in *Kraft Heinz*, the Foreign Funds also questioned whether certain transactions on June 24, 2016 and June 23, 2017 listed on my certifications were open market purchases and sales. *See* Dkt. 90, at 8-9. These transactions were open market purchases and sales and are appropriately and correctly accounted for in my certifications. I confirmed this after reviewing the Foreign Funds' argument. Moreover, certain characteristics of the June 24, 2016 and June 23, 2017 transactions establish that they are open market transactions: the quantity of Kraft Heinz shares purchased and sold on that day differ (they are not identical amounts); the transactions on those days were executed by an independent, third-party broker (Barclays); the NYC Funds paid commission fees on those transactions; and the transaction amount on those days was less than the daily volume traded by the NYC Funds. Moreover, all of NYC's transactions, including for TRS Var-A, were within the publicly-traded price range, and the dates used for those transactions were settlement dates.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:   May 22, 2019

Alan H. Kleinman