**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE A. HEDICK, JR., *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 19-1339 (RMD) |
| v. | CLASS ACTION |
| THE KRAFT HEINZ COMPANY, *et al.*, | |
| Defendants. | |
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 19-1845 (RMD) |
| v. | CLASS ACTION |
| THE KRAFT HEINZ COMPANY, *et al.*, | |
| Defendants. | |
| TIMBER HILL LLC, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Case No. 19-2807 (RMD) |
| v. | CLASS ACTION |
| THE KRAFT HEINZ COMPANY, *et al.* | |
| Defendants. | |

**THE NEW YORK CITY FUNDS' BRIEF IN OPPOSITION TO THE MOTION OF SJUNDE AP-FONDEN AND UNION ASSET MANAGEMENT HOLDING AG TO CONDUCT LIMITED DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ......................................................................................................... 3

ANALYSIS .......................................................................................................................... 4

    A.     THE FOREIGN FUNDS CANNOT MEET THE EXCEEDINGLY HIGH STANDARD TO ENGAGE IN THE UNNECESSARY AND WASTEFUL DISCOVERY THEY SEEK. ......................................................... 4

    B.     THE FOREIGN FUNDS' CONTENTIONS REGARDING NYC'S TRADING IN KRAFT HEINZ SECURITIES ARE WRONG AND CONTRADICTED BY SWORN DECLARATIONS. ...................................... 6

    C.     THE FOREIGN FUNDS' REQUEST THAT THE COURT ALLOW THEM TO REVEAL PRIVILEGED COMUNICATIONS AND CONFIDENTIAL DATA SHOULD BE DENIED. ........................................ 12

CONCLUSION ................................................................................................................... 15

CERTIFICATE OF SERVICE .......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baxter Int'l, Inc. v. Abbott Labs.*,
  297 F.3d 544 (7th Cir. 2002) ...............................................15

*Beltran v. Terraform Global, Inc.*,
  Case No. 15-04981 (N.D. Cal. Apr. 11, 2016) ........................11

*Blaich v. Emp. Sols., Inc.*,
  1997 WL 842417 (D. Ariz. Nov. 21, 1997)...............................4

*Brown v. Biogen IDEC, Inc.*,
  Case No. 05-10400 (D. Mass. July 26, 2005) ..........................11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)....................................................3

*Chatman v. Greenlee Textron, Inc.*,
  2001 WL 1183296 (N.D. Ill. Oct. 4, 2001)...............................2

*Matter of Continental Illinois Sec. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) ..................................13, 14, 15

*Eastwood Enters. v. Farha*,
  2008 WL 687351 (M.D. Fla. Mar. 11, 2008) .........................3, 4

*Fischler v. AMSouth Bancorp.*,
  1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .............................11

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)....................................4, 7

*Latuga v. Hooters, Inc.*,
  1994 WL 329910 (N.D. Ill. July 8, 1994)................................13

*London v. Johnson & Bell, Ltd.*,
  2012 WL 4892852 (N.D. Ill. Oct. 10, 2012).............................13

*In re Michaels Stores, Inc. Sec. Litig.*,
  Case No. 03-0246-M (N.D. Tex. Oct. 24, 2003) ......................11

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
  2018 WL 1804350 (N.D. Ill. Apr. 17, 2018) ...........................14

*Mullins v. AZZ, Inc.*,
    2018 WL 7504312 (N.D. Tex. Aug. 9, 2018) ........................................................3

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................................11

*Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*,
    176 F.R.D. 269 (N.D. Ill. 1997)....................................................................13, 14

*Rieckborn v. Velti PLC*,
    2013 WL 6354597 (N.D. Cal. Dec. 3, 2013) .......................................................4

*Sakhrani v. Brightpoint, Inc.*,
    78 F. Supp. 2d 845 (S.D. Ind. 1999) .............................................................10, 11

*Sokolow v. LJM Funds Mgmt., Ltd.*,
    2018 WL 3141814 (N.D. Ill. June 26, 2018) .......................................................3

*In re The Reserve Fund Sec. & Derivative Litig.*,
    Case No. 09-2011 (S.D.N.Y. Aug. 5, 2009) .....................................................11

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ..............................................................4, 10, 11

*United States v. Moscony*,
    927 F.2d 742 (3d Cir. 1991).............................................................................14

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)............................................................................4, 9

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*,
    580 F.2d 1311 (7th Cir. 1978) ..........................................................................13

*Zhu v. UCBH Holdings, Inc.*,
    682 F. Supp. 2d 1049 (N.D. Cal. 2010) ..............................................................3

**Statutes and Rules**

15 U.S.C. § 78u-4 ...............................................................................................3, 4, 8

18 U.S.C. § 1839 .......................................................................................................15

Ill. Comp. Stat. 1065/2(d) .........................................................................................15

Federal Rule of Civil Procedure 11 ...........................................................................7

Federal Rule of Civil Procedure 23 ...........................................................................5

## INTRODUCTION

Discovery at the lead plaintiff stage is warranted in only the most extreme situations.  It is not warranted where the presumptive lead plaintiff being challenged is an audited public pension fund with a loss more than $9 million larger than the next movant.  It is particularly unjustified where the presumptive lead plaintiff has repeatedly been appointed as a lead plaintiff and certified as a class representative in securities class actions around the country.  Discovery in these circumstances would trample a key purpose of the Private Securities Litigation Reform Act ("PSLRA"): to expeditiously identify the movant with the largest financial interest to lead the litigation and capably serve the interests of the class, so that the case may proceed without pointless delay.  The Court should recognize the Foreign Funds' motion for limited discovery for what it is: a "Hail Mary" to displace the New York City Funds ("NYC") as the proper lead plaintiff.  The Foreign Funds' motion should be denied.

Instead of proving that there is a reasonable basis for discovery as the PSLRA requires, the Foreign Funds make a series of baseless and speculative arguments and cast aspersions on the character of NYC's legal counsel, hoping that the Court will authorize a fishing expedition that offers no conceivable benefit to class members or the Court.  In its briefing in support of its motion for lead plaintiff, NYC demonstrated that the Foreign Funds' challenges wholly lack merit: they misconstrue the partial trading data they received as counsel to NYC and make incorrect assumptions about certain trades that NYC has since clarified.

Even more troubling than their flimsy arguments is the scorched earth campaign waged by the Foreign Funds' counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLBG") and Kessler Topaz Meltzer & Check LLP ("Kessler Topaz"), in a misguided attempt to unseat NYC as the presumptive lead plaintiff.  What these two firms fail to disclose to the Court is that they both sat on the panel of six law firms that serve as outside counsel to NYC for securities

1

litigation. In that capacity, they received certain of NYC's trading data *to provide legal advice to NYC* regarding the Kraft Heinz securities litigation. They then improperly used that confidential trading data to engage in a side-letter campaign and to make mistaken arguments in the lead plaintiff contest against NYC. They ask the Court to reward this misuse by ordering the trading data's production (along with their correspondence discussing that trading data), even though NYC candidly responded to every challenge lodged and demonstrated that the arguments were wrong. As the Court is aware, lead counsel appointments can be lucrative for the law firms seeking them. *See*, *e.g.*, Dkt. 88-2 (showing that, in three securities class actions in which AP7 and Union served as lead plaintiff, BLBG and/or Kessler Topaz received attorneys' fee awards of $20 million, $31 million, and $95 million). The Court should not permit this lead plaintiff contest to metastasize from BLBG and Kessler Topaz's misuse of attorney-client privileged information into a fishing expedition for the ultimate purpose of securing fees for these firms.

There is a statutory mandate that the lead counsel appointment should follow from the selection of the movant with the greatest financial interest. For these reasons and those that follow, the Court should deny the motion and honor that mandate by appointing NYC, the movant with the greatest financial interest in this action, as the Lead Plaintiff.[1]

---

[1] The Arca Krupa Group's brief, Dkt. 119, is styled as a "Memorandum in Support of the Motion of Sjunde AP-Fonden and Union Asset Management Holding AG to Conduct Limited Discovery," but it says nothing about discovery. It rehashes all the same, stale arguments about whether shares of Kraft Heinz acquired in the merger of Kraft and Heinz are properly part of this action. They are. These arguments have previously been thoroughly addressed. *See* Dkt. 101, at 11-15. NYC will not burden the Court with additional briefing on this issue. The Court should strike the Arca Krupa Group's brief as an improper sur-reply. *Chatman v. Greenlee Textron, Inc.*, 2001 WL 1183296, at *1 (N.D. Ill. Oct. 4, 2001) ("No leave was ever requested or given to file such a surreply and the court accordingly strikes it *sua sponte*.").

## LEGAL STANDARD

"[D]iscovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv) (emphasis added). That standard is modified by the PSLRA's requirement that the most adequate plaintiff presumption "may be rebutted *only upon proof* . . . that the presumptively most adequate plaintiff . . . (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). *See also Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at *6 (N.D. Ill. June 26, 2018) (Dow, J.) (holding that competing movant's limited information challenging presumptive lead plaintiff's adequacy was insufficient).

Such discovery is rarely granted and "only allow[ed] . . . in limited circumstances." *Eastwood Enters. v. Farha*, 2008 WL 687351, at *3 (M.D. Fla. Mar. 11, 2008). Courts must "take care to prevent the use of discovery to harass presumptive lead plaintiffs, something that the [PSLRA] was meant to guard against." *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 n.49 (3d Cir. 2001). Because the standard is high, and because of the risk of harassment, it is rare for such motions to be brought and, when they are, courts regularly reject them. *E.g.*, *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1055 n.1 (N.D. Cal. 2010); *Mullins v. AZZ, Inc.*, 2018 WL 7504312, at *3 (N.D. Tex. Aug. 9, 2018).

## ANALYSIS

A.    **THE FOREIGN FUNDS CANNOT MEET THE EXCEEDINGLY HIGH STANDARD TO ENGAGE IN THE UNNECESSARY AND WASTEFUL DISCOVERY THEY SEEK.**

In the face of multiple briefs, declarations, letters, and meet-and-confers demonstrating their speculative concerns to be baseless, the Foreign Funds continue to misconstrue NYC's certifications and confidential trading data, and now seek unnecessary and wasteful discovery based on their misapprehensions.  Courts consistently reject discovery during the lead plaintiff appointment process under similar facts.  *See, e.g.*, *Eastwood*, 2008 WL 687351, at *3; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 539 (S.D.N.Y. 2015) (where counsel "submitted sworn statements" attesting to ownership and control of funds, the court held: "I see no reason to grant [] discovery" into lead plaintiff movant's "standing as a class member to pursue these claims"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347-48 (S.D.N.Y. 2009) (rejecting discovery regarding movant's standing under *Huff* and into movant's "trading patterns and corporate structure," finding any discovery would "only cause unnecessary delay and expense"); *Rieckborn v. Velti PLC*, 2013 WL 6354597, at *3, *5 (N.D. Cal. Dec. 3, 2013) (rejecting discovery regarding lead plaintiff movant's standing); *Blaich v. Emp. Sols., Inc.*, 1997 WL 842417, at *3 (D. Ariz. Nov. 21, 1997) (rejecting discovery into whether a lead plaintiff movant miscalculated its losses).

Moreover, the Foreign Funds' basis for seeking discovery is not even cognizable under the PSLRA because it does not challenge NYC's *adequacy*.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  At most, the Foreign Funds speculate about the size of NYC's loss in Kraft Heinz securities – and they are wrong about that – but they do not argue that NYC's loss is made up, that NYC lacks any standing to sue at all (as was the case in *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110 (2d Cir. 2008)), or that

NYC has an insubstantial economic incentive to lead this class action. In fact, the Foreign Funds' own purported expert confirmed the calculation of NYC's last-in-first-out ("LIFO") loss at $59.3 million. *See* Dkt. 91-2, at Table 3.

Nor do the Foreign Funds argue that NYC is an inadequate fiduciary to the Class or is conflicted from prosecuting this case. Fundamentally, the Foreign Funds do not explain how their incorrect quibbling about the size of NYC's loss renders NYC incapable of zealously litigating this case on behalf of the putative Class. Nor can they: NYC's adequacy has never been challenged in over 20 years of securities litigation. Ex. A, at ¶ 27.[2] At least four courts have appointed NYC to act as a lead plaintiff or class representative in securities fraud litigation. Dkt. 47-5, at ¶¶ 7-10. NYC is the fourth largest public pension fund in the country and is regularly audited by a major public accounting firm. Ex. B, at ¶ 14. And NYC has gone above and beyond in this litigation to carefully address the Foreign Funds' manufactured attempts to sow doubt about NYC's financial interest. Ex. A, at ¶ 29.

The Foreign Funds assert that the details of how NYC conducted certain trades in Kraft Heinz securities could become "a focus of discovery" if NYC is appointed lead plaintiff, and that the trading data they seek will be "among the core information sought by Defendants when discovery begins[.]" Dkt. 108, at 3-4. None of that is true. Because the trades in question represent a relatively tiny percentage of NYC's purchases and sales in Kraft Heinz securities, they are not relevant to the question of Article III standing, which is established if NYC suffered *any* loss due to Defendants' fraud, regardless of whether that loss is $1 or, as is the case here, $59.3 million. Moreover, the size of the lead plaintiff's loss is not an element of class certification under Federal Rule of Civil Procedure 23, and it certainly does not go to the merits

---

[2] "Ex." references those exhibits appended to the Declaration of Carol V. Gilden.

of whether the Defendants misled Kraft Heinz investors. Therefore, the issue raised by the Foreign Funds is irrelevant to the litigation between the Class and Defendants.

Much less is it a reason for calling into question NYC's *adequacy*, which is the only question before the Court at this stage. Even if the Foreign Funds' assertion was correct – it decidedly is not – the most it would show is that NYC's financial interest ████████ ████████████████████████ more than the next largest movant. Under the PSLRA, none of these arguments form a cognizable – much less reasonable – basis for a finding that NYC is inadequate. The Foreign Funds' unsupported desire to nitpick NYC's transactions account-by-account thus cannot be the basis for discovery.

If discovery were permitted under such circumstances, certainly the private and unaudited Foreign Funds' trading in Kraft Heinz securities would also be subject to considerable questions, including why AP7 regularly engaged in large, block trades at the closing price of the day, or why Union's 34 different funds appear to have engaged in different trading strategies, with certain of the funds selling prior to any of the alleged disclosures and others continuing to hold through them. *See* Dkt. 60-1. Indeed, given the structure of both AP7 and Union, it is likely that one or both of them bought or sold Kraft Heinz shares off-market, in-kind, and/or as consideration for an interest in a commingled fund.

### B. THE FOREIGN FUNDS' CONTENTIONS REGARDING NYC'S TRADING IN KRAFT HEINZ SECURITIES ARE WRONG AND CONTRADICTED BY SWORN DECLARATIONS.

The Foreign Funds' discovery motion is premised solely on baseless speculation, refuted repeatedly by NYC's submission of evidence. As detailed in the Declaration of Alan Kleinman submitted herewith, Ex. A, and in Mr. Kleinman's prior declaration, Dkt. 99-2,[3] at ¶¶ 14-18 –

---

[3] Mr. Kleinman's prior declarations are referenced by docket number.

both of which Mr. Kleinman signed under penalty of perjury and well-aware of the requirements under Rule 11 – NYC's certifications submitted on April 25, 2019 accurately described the ownership interest that each NYC fund has in the underlying securities and identified all purchases and sales by NYC during the relevant period. Ex. A, at ¶¶ 17-28. NYC also repeatedly demonstrated that its overall LIFO loss is $59.3 million, and that each NYC fund has standing to pursue the claims set forth in its certifications. *Id.*, at ¶¶ 3, 4; Dkt. 99-2, at ¶¶ 15, 16.

In response to the Foreign Funds' speculation that NYC may trade in commingled accounts, NYC went well beyond the requirements of the PSLRA by explaining that, while two of the funds in which Kraft Heinz common stock transactions occurred are commingled accounts, those accounts are held *exclusively* by the NYC funds themselves, who commingle solely to achieve economies of scale to keep investment costs down. Dkt. 99-1, at ¶¶ 14-17. The sworn declaration from NYC's Assistant Comptroller, David Jeter, corroborates Mr. Kleinman's declarations that the losses to each NYC fund are treated identically whether the securities are held in unique accounts or in the commingled funds; that is the consistent, uniform treatment of these funds that has repeatedly been validated by NYC's outside auditors. *See* Ex. B, at ¶¶ 11-14; Dkt. 99-2, at ¶¶ 16-17. Moreover, NYC explained and submitted a declaration attesting that even if it was to improperly exclude transactions from those commingled accounts, the LIFO calculation results in a difference of only ███████ – a difference immaterial to whether NYC has the largest loss amongst the movants. Dkt. 99-2, at ¶¶ 15-17; Ex. B, at ¶¶ 15, 21.

The Foreign Funds make a series of unpersuasive arguments in response. First, they claim that "[t]he only factual support provided for [NYC]'s Reply Brief is a short declaration by Mr. Kleinman." Dkt. 108, at 5. But nothing more is required. *See Khunt*, 102 F. Supp. 3d at 539 (denying discovery request into standing where counsel "submitted sworn statements"

attesting to ownership and control of funds).  The Foreign Funds next claim that Mr. Kleinman "fails to provide any support for his statement that, even if shares traded in commingled funds were excluded from its financial interest, [NYC] would still have a larger interest than [the Foreign Funds]." Dkt. 108, at 7.  They are wrong.  First, NYC provides support for his statement by calculating an exact number for the LIFO damages attributable to the commingled accounts if they were improperly excluded from NYC's damage calculation: ▮▮▮▮.  Dkt. 99-2, at ¶ 17.  Moreover, nothing in the PSLRA or case law requires NYC to provide the account-level detail the Foreign Funds are insisting upon.  *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv) (requiring only that movants "set[] forth all of the transactions of the plaintiff in the security").

Lest there be any doubt, NYC is submitting an *additional* declaration explaining, in detail, that the amount of the loss attributable to the commingled accounts was independently calculated internally by NYC's Bureau of Asset Management staff and externally by Cohen Milstein.  *See* Ex. A, at ¶¶ 15-21.  Both agreed that if transactions into the commingled funds were improperly excluded, the difference would be immaterial for purposes of determining which lead plaintiff movant had the greatest financial interest in this litigation.  *Id.*, at ¶¶ 15-21; Ex. 99-2, at ¶ 17; Ex. B, at ¶¶ 12-15.  Calculated properly (by including the transactions in the commingled funds), NYC's interest exceeds the next largest movant's by approximately ***$9 million***; calculated improperly (by excluding commingled fund transactions, as the Foreign Funds suggest), NYC's interest exceeds the next largest movant's by approximately ▮▮▮▮.  Ex. A, at ¶¶ 18-19; Ex. B, at ¶¶ 11, 15, 21.  In the absence of any *proof* to undermine the foregoing, the Foreign Funds' hired gun, Kenneth Kotz, has no need or basis for seeking the underlying data.  *See* Dkt. 109, at 7. Rather, the Foreign Funds hope to obtain the data to dredge up yet another baseless argument that would distract the Court and prevent the case from expeditiously moving forward.

The Foreign Funds next assert that "nothing in the Kleinman Declaration attempts to address the requirements outlined in *Huff*," an out-of-circuit and inapplicable case. *See* Dkt. 109, at 6. They are wrong. Indeed, as counsel for the Foreign Funds successfully argued in a different case in which they sought to block discovery into the presumptive lead plaintiff by a competing movant, the Foreign Funds' *Huff* argument is a "red herring":

> In *Huff*, the Second Circuit held that an investment advisor 'lacks constitutional standing to bring suit for violations of the federal securities laws in its own name but on behalf of its clients, the beneficial owners of the relevant securities.' . . . Here, [NYC]'s motion is not brought in the name of an investment advisor. Rather, as [NYC]'s [c]ertification and other papers make abundantly clear, [NYC]'s motion is brought in the name of the [New York City Funds], which actually purchased [Kraft Heinz] securities and have a direct financial interest in this action. [The Foreign Funds'] standing argument is a red herring.

Ex. C, at 2 (internal citation omitted).

NYC also went beyond the requirements of the PSLRA to confirm that its transactions on June 24, 2016 and June 23, 2017 were (1) open market transactions properly recorded and accounted for on NYC's certifications and in its LIFO loss calculation, (2) executed by third party broker-dealers, including Barclays, (3) paid for via commissions to the broker-dealers, and (4) less than the daily volume on those days. Dkt. 99-2, at ¶ 18. *See also* Ex. A, at ¶¶ 21-22; Ex. B, at ¶¶ 12-16. No other movant in this litigation – including the Foreign Funds – has provided anything close to this level of detail and transparency concerning their losses. *See* Ex. A, at ¶ 23.

Yet even that did not satisfy the Foreign Funds, who now insist that "a broker can be paid a commission for an off-market transaction" and that "there remains no apparent reason for an investor to simultaneously buy and sell such large quantities of shares at the exact same price," Dkt. 109, at 7-8. While it is perfectly proper to include off-market transactions on PSLRA certifications, NYC nevertheless confirmed that these trades were open market transactions conducted by NYC's outside asset manager, BlackRock. *See* Ex. B, at ¶¶ 16-20; Ex. A, at ¶¶ 21,

22.  NYC also confirmed that, contrary to the Foreign Funds' unsupported conjecture, there was an appropriate reason for the transactions: ████████████████████████████████████████ ███████████████████████████████████████████████████████████████.  *See* Ex. B, at ¶¶ 16-20; Ex. A, at ¶¶ 21, 22.

In support of their motion, the Foreign Funds cite a slew of inapplicable cases involving the formation of an unrelated group of movants, which is not at issue here.[4]  The only case that even remotely approaches the facts of this one is *Tronox*, a case familiar to counsel for the Foreign Funds, since there – with the shoe on the other foot – they argued strenuously (and successfully) *against* allowing "a discovery fishing expedition" on the basis of a competing movant's "baseless and speculative arguments."  Ex. C, at 3 (brief of Gerald Silk of BLBG).  There, the court held that the concerns raised regarding a movant's "trading patterns and corporate structure" and standing were insufficient "to give rise to a reasonable basis on which to authorize discovery" and would rather "only cause unnecessary delay and expense[.]"  *Tronox*, 262 F.R.D. at 347–48.

The *Tronox* decision also explains how each case cited by the Foreign Funds is inapt.  In *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 847-48, 854 (S.D. Ind. 1999), for instance, the court directed groups of lead plaintiffs to provide information regarding "their sophistication," "experience overseeing or working with counsel," and the group members' pre-existing

---

[4] Not at issue *for NYC*, that is.  But there are serious questions regarding (1) the failed formal combination of the Foreign Funds and the Arca Krupa Group *after* they represented to the Court that they were pairing up, (2) the Arca Krupa Group's history of serious misconduct, and (3) whether there is an informal arrangement between the Foreign Funds and the Arca Krupa Group given the Arca Krupa Group's consistent statements seeking to be appointed with, and supporting the motion of, the Foreign Funds.  *See, e.g.,* Dkt. 95, at 2 ("Arca Krupa proposes that it be appointed a co-lead plaintiff alongside UAM/AP7."); Dkt. 119 (supporting the Foreign Funds' discovery motion).  Those are the types of questions that raise far stronger issues for discovery than the inconsequential and incorrect accounting claims pressed here.

"relationships," and ultimately concluded that disaggregation of the proposed groups was appropriate. As the *Tronox* court noted, the court in *Sakhrani* concluded that "***the result has been a debacle***." *Tronox,* 262 F.R.D. at 348 n.70 (emphasis added) (quoting *Sakhrani*, 78 F. Supp. 2d at 854)*.* Likewise, in *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), the court allowed limited discovery only after several movants unsuccessfully attempted to aggregate their losses and it became necessary to determine which individual movant had the largest financial loss. *See also Tronox*, 262 F.R.D. at 348, n.70 (distinguishing *Network Associates*). *In re The Reserve Fund Sec. & Derivative Litig.*, Case No. 09-2011, Dkt. 73 (S.D.N.Y. Aug. 5, 2009), involved discovery into whether a lead plaintiff group was formed "in bad faith, was lawyer-instigated, or is likely to be lawyer-dominated." *See also Tronox*, 262 F.R.D. at 348 n.70 (distinguishing *The Reserve Fund*). Of course, unlike the Foreign Funds, NYC is not a contrived group. These cases are thus irrelevant. The remainder of the cases the Foreign Funds cite concern alleged conflicts of interest, which is not alleged here.[5]

NYC personnel have spent over *70 hours* reviewing and rejecting each new purported concern the Foreign Funds have raised, and have repeatedly reached the same conclusion: the Foreign Funds' arguments are meritless. The discovery that the Foreign Funds seek, including their document requests regarding NYC's trading data, "three interrogatories concerning the

---

[5] In *Fischler v. AMSouth Bancorp.*, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997), for instance, the court noted there was "uncertainty" regarding a lead plaintiff movant's "claims and defenses," which raised a potential conflict between the movant and the class. Similarly, in *Beltran v. Terraform Global, Inc.*, Case No. 15-04981, Dkt. 95 (N.D. Cal. Apr. 11, 2016), a lead plaintiff movant had a "conflict of interest" due to a "longstanding relationship" with an entity closely related to one of the defendants in the action. *See also In re Michaels Stores, Inc. Sec. Litig.*, Case No. 03-0246-M, Dkt. 69 (N.D. Tex. Oct. 24, 2003) (movant had conflict where she was "an assistant manager of a Michael's [store]"); *Brown v. Biogen IDEC, Inc.*, Case No. 05-10400, Dkts. 47 and 34 (D. Mass. July 26, 2005) (allowing discovery where movant had "undisclosed conflict of interest"); *Tronox*, 262 F.R.D. at 348 n.70 (distinguishing *Michaels Stores*).

New York Group's standing and their trading in Kraft securities," and a requested deposition of NYC would reveal the exact same information that NYC has already submitted to this Court through sworn declarations and from the same individuals who would be deposed if so called. Dkt. 109, at 9. There is nothing relevant to the lead plaintiff application left to "discover."

### C. THE FOREIGN FUNDS' REQUEST THAT THE COURT ALLOW THEM TO REVEAL PRIVILEGED COMUNICATIONS AND CONFIDENTIAL DATA SHOULD BE DENIED.

In addition to their discovery request, the Foreign Funds' seek permission to file "unredacted correspondence" they sent to NYC discussing NYC's confidential data. *See* Dkt. 108, at 5. They claim it is not "subject to any privilege claims," Dkt. 108, at 1, n.2, and that, in any event, NYC waived the privilege by sharing its trading data "with opposing counsel." Dkt. 108, at 8-10. They further assert that the privilege over the correspondence "serves to frustrate the public's interest in transparency." Dkt. 108, at 4. The Court should deny this request.

What the Foreign Funds fail to disclose to the Court is that their counsel – BLBG and Kessler Topaz – obtained the confidential trading data that is the subject of the letters *because they were counsel to NYC.* Ex. A, at ¶¶ 30-40. After accepting their respective appointments, both firms executed a Master Agreement that set forth their duties and obligations as pre-approved Securities Litigation Counsel. Ex. A, at ¶¶ 35-40. As detailed in his declaration, Mr. Kleinman provided those firms with confidential trading data pursuant to the Master Agreement in order to seek legal advice *for* NYC. *Id.*, at ¶¶ 30, 38. Rather than abiding by their ethical and contractual duties to NYC, BLBG and Kessler Topaz not only reviewed and analyzed NYC's confidential trading data, but turned around and used it *against* NYC in this lead plaintiff contest without seeking a waiver of their conflict. *Id.*, at ¶ 39. NYC believes that BLBG and Kessler Topaz have engaged in continuous violations of their contractual and ethical obligations to NYC.

12

Ex. A, at ¶¶ 30-40. Permitting discovery based on improper reliance on confidential communications would reward this unprecedented breach.

The Foreign Funds make two arguments in support of their attempt to reveal privileged communications and confidential data. First, they state that Mr. Kleinman's communications were made to "nonprivileged person[s]." Dkt. 108, at 10. That is false. The only recipients of the communications were the six law firms retained to serve as NYC's Securities Litigation Counsel. Ex. A, at ¶¶ 31, 35, 38. These were attorneys receiving a request for legal advice in the context of an attorney-client relationship evidenced by a contract (the Master Agreement). *Id.*, at ¶ 38. That BLBG and Kessler Topaz were not ultimately retained as counsel for NYC in this case does not change that the communications were privileged. *See Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) (even preliminary consultations give rise to an attorney-client fiduciary relationship).

Second, citing cases not even remotely on point,[6] the Foreign Funds argue that NYC waived the privilege when it stated in a footnote in a prior brief that it would respond to the Foreign Funds' forthcoming attacks on its certifications in its reply brief, *see* Dkt. 88, at 2, n.3, and placed the subject of the confidential communications at issue when it defended itself against the Foreign Funds' speculation about its trading by submitting declarations rooted in fact, *see*

---

[6] *See Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 273-74 (N.D. Ill. 1997) (limited discovery of attorney-client meeting only ordered after plaintiff alleged in complaint that statute of limitations was tolled until meeting with attorney); *Matter of Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1315 (7th Cir. 1984) (company investigative report had to be released to *The Wall Street Journal* after company submitted report as evidence in open court as part of its defense against liability); *London v. Johnson & Bell, Ltd.*, 2012 WL 4892852, at *2 (N.D. Ill. Oct. 10, 2012) (plaintiff sued law firm for legal malpractice and, unremarkably, required attorney-client communications from the replacement law firm to prove the malpractice); *Latuga v. Hooters, Inc.*, 1994 WL 329910, at *2 (N.D. Ill. July 8, 1994) (plaintiffs must answer two questions regarding whether they consulted an attorney in preparing an EEOC complaint after they alleged not consulting one).

Dkt. 99. This waiver argument is frivolous. "[T]o impliedly waive the privilege, a party must do more than . . . merely deny the opposing party's accusations. . . . It must affirmatively inject a new factual or legal issue into the case." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350, at *5 (N.D. Ill. Apr. 17, 2018) (internal citation omitted). All NYC did was alert the Court to the Foreign Funds' unsanctioned private letter campaign. NYC did nothing to reveal the contents of any communications. NYC did not introduce the correspondence or its transactional data, but rather sought to protect its confidentiality at every opportunity. To now argue that the Foreign Funds are entitled to use this confidential information gets the analysis precisely backwards: the Foreign Funds cannot "inject an issue into the case and then claim that [they are] entitled to any confidential communications on that issue." *Pyramid*, 176 F.R.D. at 275.[7]

Finally, and for similar reasons, the Court should permit certain portions of NYC's reply brief and accompanying exhibits, *see* Dkt. 101, and certain portions of this brief and its accompanying exhibits, to remain under seal. Sealing requires balancing various factors, including the public's interest in "understanding disputes that are presented in a public forum for resolution," "in assuring that the courts are fairly run and judges are honest," in its "right of access, guaranteed by the first amendment, to information before the court relating to matters of public interest," and in the attorney-client privilege. *Cont'l Illinois*, 732 F.2d at 1314 (citations and quotations omitted). Trade secrets and information protected by the attorney-client privilege

---

[7] The Foreign Funds' request for a deposition will create a conflict of interest: "[c]onflicts of interest arise whenever an attorney's loyalties are divided . . . and an attorney who cross-examines former clients inherently encounters divided loyalties[.]" *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) (internal citation omitted).

is entitled to protection from disclosure.  *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002).

The sections redacted in NYC's briefing and exhibits discuss particular financial and business information that NYC and its asset managers treat as confidential, *i.e.*, NYC's trading strategy and the structuring of its accounts for various sensitive legal, tax, and economic reasons. This type of information is routinely protected from disclosure in litigation.  This District's Local Rule 26.2 Model Confidentiality Order Form deems "commercial or financial information that the party has maintained as confidential" as protected "Confidential Information" by default. Further, federal and Illinois trade secret law both provide that certain "financial," "business," and "economic" information of the type at issue here can be trade secrets.  *See* 18 U.S.C. § 1839(3) (defining "trade secret" to mean "all forms and types of financial, business, . . . [or] economic . . . information, . . . if . . . (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known . . . ."); 765 Ill. Comp. Stat. 1065/2(d) (similar).  NYC has sought to protect this information, as reflected in its Master Agreement with its outside counsel.  *See* Ex. A, at ¶¶ 35, 36.  That NYC is filing any of this information with the Court is necessary only to refute the incorrect arguments BLBG and Kessler Topaz made against NYC using attorney-client privileged information; a decision forcing the disclosure of this information would "pose[] a significant threat to the free flow of communications between clients and their attorneys and inhibit[] the ability of lawyers to adequately prepare their clients' cases," a factor that weighs in favor of sealing/redaction.  *Cont'l Illinois*, 732 F.2d at 1314 (citations and quotations omitted).

## CONCLUSION

For the foregoing reasons, the Foreign Funds' motion for discovery should be denied.

Date:   June 7, 2019                    Respectfully submitted,

**COHEN MILSTEIN SELLERS
& TOLL PLLC**

*/ s / Carol V. Gilden*
Carol V. Gilden (Bar No. 06185530)
190 South LaSalle Street / Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Julie Goldsmith Reiser
Adam H. Farra
1100 New York Avenue, N.W. / Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
jreiser@cohenmilstein.com
afarra@cohenmilstein.com

Laura H. Posner
88 Pine Street / 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
lposner@cohenmilstein.com

*Counsel for Proposed Lead Plaintiff NYC and
Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed on June 7, 2019 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

_/ s / Carol V. Gilden_
Carol V. Gilden
