# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE HEDICK JR., Individually and on Behalf of All Others Similarly Situated, | Case No. 1:19-cv-01339 |
| Plaintiff, | Honorable Robert M. Dow Jr. |
| v. | |
| THE KRAFT HEINZ COMPANY, BERNARDO HEES, PAULO BASILIO, and DAVID H. KNOPF, | |
| Defendants. | |

[Additional captions on following page.]

## SJUNDE AP-FONDEN AND UNION ASSET MANAGEMENT HOLDING AG'S RESPONSE TO THE COURT'S AUGUST 29, 2019 ORDER

|  |  |
|---|---|
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, BERNARDO HEES, PAULO BASILIO, DAVID H. KNOPF, GEORGE EL-ZOGHBI, CHRISTOPHER R. SKINGER, VINCE GARLATI, and 3G CAPITAL INC.,<br><br>Defendants. | Case No. 1:19-cv-01845<br><br>Honorable Robert M. Dow Jr. |
| TIMBER HILL LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, BERNARDO HEES, PAULO BASILIO, DAVID H. KNOPF, GEORGE EL-ZOGHBI, CHRISTOPHER R. SKINGER, VINCE GARLATI, ALEX BEHRING, and 3G CAPITAL INC.,<br><br>Defendants. | Case No. 1:19-cv-02807<br><br>Honorable Robert M. Dow Jr. |

Sjunde AP-Fonden ("AP7") and Union Asset Management Holding AG ("Union") respectfully submit this response to the Court's Order, dated August 29, 2019, concerning the pending motions seeking appointment as Lead Plaintiff. *See* ECF No. 140 (the "Order").[1] The Order arises in the context of the Private Securities Litigation Reform Act of 1995 (the "PSLRA")'s Lead Plaintiff process, which directs the Court to appoint as Lead Plaintiff the movant with the "largest financial interest" in the relief being sought. The Order highlights two issues with the application of the financial interest test here: a substantive question about when the "purchase" of shares occurred in connection with the Kraft-Heinz merger; and a procedural question as to whether, for the purpose of calculating movants' financial interests, the Court can alter or look beyond the filed Class Period.[2]

On the substantive question, the Court's Order correctly identified case law suggesting that a "purchase" in connection with a merger occurs when irrevocable liability attaches. *See* Order at 2 (citing *Realmonte v. Reeves*, 169 F.3d 1280, 1287 (10th Cir. 1999)). In that regard, the "purchase" of shares received in connection with the Kraft-Heinz merger arguably occurred on several possible dates: May 13, 2015 (the record date for Kraft investors to be entitled to vote on the merger); July 1, 2015 (the date of the shareholder vote); July 2, 2015 (the date the merger closed); or July 6, 2015 (when the merger shares were received). Here, the operative complaint asserts claims on behalf of investors who "purchased" Kraft securities beginning on July 6, 2015—necessarily requiring the Court to conclude that merger shares were "purchased" on or after that date in order for merger shares to be included in the financial interest analysis. However, as the Order notes, there is substantial authority suggesting merger shares could be deemed to have been purchased when the

---

[1]    Unless otherwise indicated, all emphases are added, internal citations are omitted, and all references to "ECF No. __" refer to the *Hedick v. The Kraft Heinz Company*, No. 1:19-cv-01339 (N.D. Ill.), docket.

[2]    *See Iron Workers Dist. Council (Philadelphia & Vicinity) Ret. & Pension Plan v. The Kraft Heinz Co.*, No. 1:19-cv-01845 (N.D. Ill.), ECF No. 1 (asserting operative Class Period as July 6, 2015, to February 21, 2019).

merger closed—*i.e.*, *before* the beginning of the operative Class Period. *See Realmonte*, 169 F.3d at 1287.

As to the procedural question, it is clear that, at the Lead Plaintiff stage, the Court cannot look beyond the Class Period in the filed complaints to determine the movants' financial interests. *See In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *6 (E.D.N.Y. Mar. 2, 2007) ("In selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it."). Courts have repeatedly held that any modification of the allegations or class period after the expiration of the statutory deadline for filing Lead Plaintiff motions—even for corrections—is prohibited by the PSLRA's express language. *See, e.g.*, *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 618-20 (S.D.N.Y. 2015).

Importantly, the Court is not, at this stage, making a final determination on the merits regarding the appropriateness of the operative Class Period or whether claims may be asserted in connection with the merger shares. Rather, under the PSLRA's Lead Plaintiff provisions, the Court is determining which movant has demonstrated that it has the greatest financial interest in the relief being sought based on the allegations currently before the Court. Here, it is clear that the New York Group—which derives ***more than 85%*** of its claimed loss from merger shares—cannot make that showing given the disabling unique defenses raised by its disproportionately weighted and extraordinarily problematic trading pattern. Among other things, competing movants have already identified, and Defendants will undoubtedly raise, numerous challenges to recovering any losses arising out of the receipt of merger shares. The class should not be saddled with the New York Group's unique issues when, in contrast, AP7 and Union—which suffered the greatest losses when excluding merger shares—are eminently qualified and incentivized to pursue all viable claims on

2

behalf of the class. Accordingly, AP7 and Union respectfully reiterate that they are entitled to appointment as Lead Plaintiff under the PSLRA's statutory requirements.

I. **ARGUMENT**

    A. **The Order Raises Legitimate Concerns as to Whether Merger Shares Are in the Pled Class**

The Order properly highlights serious questions concerning whether Kraft-Heinz merger shares were "purchased" during the operative Class Period, and thus properly considered in the financial interest analysis. *See* Order at 2 ("the answer to this question is not entirely clear"). Here, the operative complaint alleges claims on behalf of a class consisting of investors who "purchased or otherwise acquired the publicly traded securities of Kraft Heinz Company . . . during the period from July 6, 2015 through February 21, 2019." *Iron Workers*, ECF No. 1 at 1.[3]

As noted in the Order, courts have held that investors "purchase" a security under the federal securities laws at the time they "acquire or become finally obligated to acquire" it, which in the case of a merger is arguably "the date of closing." *Realmonte*, 169 F.3d at 1287; *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d. 60, 67-68 (2d Cir. 2012) (suggesting that a "'purchase' and 'sale' take place when the parties become bound to effectuate the transaction"); *SEC v. Berbel*, No. 17-23572-CIV-MORENO, 2018 WL 1135659, at *3 (S.D. Fla. Feb. 27, 2018) (same); Arnold S. Jacobs, *5B Disclosure and Remedies Under the Sec. Laws* § 9:30 (2019) ("a merger might be a purchase or a sale prior to its consummation").[4]

---

[3]    For purposes of determining "financial interest," the longest filed Class Period, which is alleged in the *Iron Workers* complaint, controls. *See, e.g., Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) (courts use the "most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period"); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (same).

[4]    In the context of a merger, courts have held that "irrevocable liability" can be incurred not "when the shares are actually transferred" but when a binding contract is signed, and have suggested the purchase

3

Here, the Kraft-Heinz merger was effectuated through several steps. First, as alleged in the *Iron Workers* complaint, details about the merger were set forth in a preliminary registration statement and prospectus that were filed with the U.S. Securities and Exchange Commission ("SEC") on Form S-4 on April 10, 2015 (*see Iron Workers*, ECF No. 1 at ¶ 43), and a subsequent prospectus and proxy statement was filed on June 2, 2015, which set a record date of May 13, 2015, for Kraft Foods Group, Inc. ("Kraft") investors to be entitled to vote on the transaction and announced a special meeting on July 1, 2015, for that vote. *See* Declaration of Avi Josefson in Support of Sjunde AP-Fonden and Union Asset Management Holding AG's Response to the Court's August 29, 2019 Order ("Josefson Decl."), Exhibit A. Following the July 1, 2015 vote:

> On July 2, 2015, Kraft Foods Group, Inc., a Virginia corporation ("Kraft"), became a wholly owned subsidiary of The Kraft Heinz Company[.]
>
> * * *
>
> Pursuant to the terms of the Merger Agreement, ***upon the completion of the Merger***, each issued and outstanding share of common stock, without par value, of Kraft ("Kraft Common Stock") . . . ***was converted*** into the right to receive one fully paid nonassessable share of Company Common Stock.

Josefson Decl., Exhibit B. Thus, in light of the relevant precedent and Kraft's own disclosures, it is reasonable to conclude that the merger shares were "purchased" at least as early as July 2, 2015 (*i.e.*, four days before the start of the Class Period), when the merger closed and Defendants' obligation to deliver the merger shares to investors was triggered. *See id.*; *see also Realmonte*, 169 F.3d at 1287.[5]

AP7's and Union's trading records do not reflect receiving any merger shares until July 6, 2015. *See* ECF No. 60-1. Given that the PSLRA requires movants to "set[] forth all of the

---

may occur even earlier, such as on the date the merger was ratified. *See In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 152 & 152 n.29 (S.D.N.Y. 2012).

[5]    Consistent with "purchases" occurring on July 2, 2015, several Kraft insiders filed Form 4s with the SEC reporting that they received merger shares on July 2, 2015. *See, e.g.*, Josefson Decl., Exhibit C.

transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint," 15 U.S.C. § 78u-4(a)(2)(A)(iv), movants, like AP7 and Union, were required to include the receipt of these merger shares in their PSLRA certifications.[6] Of course, that the PSLRA's certification obligations required inclusion of shares delivered at the start of the Class Period does not address the legal question of when those shares were "purchased" as a matter of law.

Should the Court conclude that the merger shares were "purchased" prior to their delivery on July 6, 2015, and thus are not included within the operative Class Period, those transactions must be excluded from the calculation of the movants' financial interests. *See Sokolow v. LJM Funds Mgmt., Ltd.*, Nos. 18-cv-01039, *et al.*, 2018 WL 3141814, at *2 (N.D. Ill. June 26, 2018) ("The PSLRA presumes that the most adequate plaintiff is the plaintiff who—in addition to satisfying other requirements—has the largest financial interest ***in the relief sought by the class***"); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 500 n.6 (D. Conn. 2017) ("If it is apparent that a particular movant seeks to include losses that it lacks a plausible basis for seeking recovery, those losses should not be included in the determination of that movant's financial interest in the case."). If the merger shares are excluded, the New York Group's claimed loss declines from $59.2 million (taking the New York Group's trading at face value) to just $8.5 million, and AP7 and Union would unquestionably have the largest financial interest in this litigation:

| Movant | Loss Without Merger Shares |
|---|---|
| *AP7 and Union* | *$28,616,587* |
| Arca Krupa | $22,843,121 |
| Chesson | $8,512,599 |
| New York Group[7] | $8,465,710 |
| Timber Hill | $2,222,180 |

---

[6]    AP7 and Union provided their financial interest under calculations that both included and excluded merger shares. *See* ECF No. 90 at 5-6.

[7]    The exclusion of the New York Group's commingled funds would likely further reduce its non-merger share losses.

*See* ECF No. 90 at 5-6 (setting forth movants' financial interests with and without merger shares).

### B.     The Class Period Cannot Be Altered for Purposes of Assessing Movants' Financial Interests After the PSLRA Deadline

To the extent the Court concludes that merger shares were purchased before the start of the operative Class Period, losses arising from those shares must be excluded from the financial interest analysis because the Class Period cannot be altered or corrected after the expiration of the statutory deadline under the PSLRA (here, April 25, 2019).  *See Topping*, 95 F. Supp. 3d at 618-20 (refusing to consider allegations introduced after the PSLRA's deadline).[8]

The PSLRA provides that lead plaintiff motions must be filed "not later than 60 days after the date on which the notice is published."  15 U.S.C. § 78u–4(a)(3)(A)(i).  The sixty-day deadline is "unequivocal and allows for no exceptions."  *Gutman v. Sillerman*, Nos. 15 CIV. 7192 (CM), *et al.*, 2015 WL 13791788, at *1 (S.D.N.Y. Dec. 8, 2015).  The unambiguous nature of the PSLRA's time limit precludes consideration of allegations "asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed."  *Topping*, 95 F. Supp. 3d at 619 (emphasis in original); *see also Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc*., No. 4:17-CV-00449, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) ("Any supplement or augmentation of the motion must also take place within the sixty-day deadline.").  Once the sixty-day deadline expires, the parameters for assessing movants' financial interests are set and cannot

---

[8]     While the Class Period cannot be altered to assess movants' financial interests, the Lead Plaintiff ultimately appointed by the Court is empowered by the PSLRA to assert what it determines to be the appropriate class period.  *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig*., No. 10 Civ. 275(PKC), 2011 WL 4538428, at *1-2 (S.D.N.Y. Sept. 29, 2011) (describing authority of the lead plaintiff to determine what claims and class period to assert as part of the prerogative to "exercise control over the litigation as a whole"); *In re Synovis Life Techs., Inc. Sec. Litig*., No. Civ. 04–3008ADMAJB, 2005 WL 2063870, at *1 n.3 (D. Minn. Aug. 25, 2005) (noting the PSLRA empowers a lead plaintiff to expand the class period in amended complaint); *In re Int'l Rectifier Corp. Sec. Litig*., No. CV 07–02544–JFW (VBKx), 2008 WL 4555794, at *23 (C.D. Cal. May 23, 2008) (concluding that a lead plaintiff can expand the original class period).

be changed. *See Topping*, 95 F. Supp. 3d at 618-20.

The analysis from *Topping* is instructive. In *Topping*, a movant attempted to file a "corrected" complaint changing the allegations used to assess movants' financial interests after the PSLRA's sixty-day deadline expired. *Id.* at 619-20. The *Topping* court refused to consider the post-deadline alterations because doing so "would 'effectively render the strict timeliness set forth in the PSLRA meaningless," "would nullify Congress's attempt to expedite the lead plaintiff appointment process," and prejudice other investors because all movants "who filed their motions to serve as lead plaintiff" did so "in reliance on the Complaint as it was filed." *Id.* (acknowledging that "other class members could conceivably be prejudiced by consideration of" allegations in a post-deadline filing). Indeed, here, every remaining movant specifically acknowledged or relied upon the Class Period pled in *Iron Workers* as the basis for their claimed financial interest. *See* ECF No. 47 at 1 (New York Group); ECF No. 59 at 1 (AP7 and Union); ECF No. 54-3 (Arca Krupa); ECF No. 63 at 1 (Timber Hill); ECF No. 50 at 1 n.1 (Chesson). To the extent investors believed a class period other than the one before the Court on the sixty-day deadline was appropriate, they could have filed a complaint explaining the claims and provided notice to all investors of the expanded allegations. No such filing was made here. Accordingly, the Class Period pled in *Iron Workers* must be used to assess each movant's financial interest and cannot be altered at this stage. *See Topping*, 95 F. Supp. 3d at 618-20.[9]

### C. The Order Highlights the Risks of Appointing the New York Group Given that 85% of the New York Group's Loss Is Based on Merger Shares

More than 85% of the New York Group's claimed losses—assuming that it even has standing

---

[9] While courts have declined to adopt a longer filed class period (and instead relied on a shorter filed class period) or refused to consider certain pleaded corrective disclosures, those cases do not address the question here—and AP7 and Union are not aware of any court adopting a class period for financial interest purposes that had not been asserted in any pleading. *See, e.g.*, *Maliarov v. Eros Int'l PLC*, Nos. 15-CV-8956 (AJN), *et al.*, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016); *Comverse*, 2007 WL 680779, at *6.

to assert claims on behalf of its commingled funds—are predicated on the receipt of merger shares. *See* ECF No. 90 at 5-6 (demonstrating that only $8.5 million of the New York Group's claimed financial interest is predicated on non-merger share losses); ECF No. 91-2 at 12 (same). The magnitude of the New York Group's losses from merger shares—combined with the existence of several open issues bearing on the viability of claims premised on the acquisition of merger shares— subjects the New York Group to unique defenses and renders it atypical and inadequate. *See In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC, *et al.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial."). Indeed, irrespective of whether the Court determines that merger shares are appropriately included for purposes of calculating financial interest, Defendants will undoubtedly argue that plaintiffs ultimately cannot recover any losses in connection with the acquisition of the merger shares. The New York Group cannot meet the PSLRA's standard for appointment under these circumstances. *See id.*

First, although the receipt of shares in a merger "can constitute a 'purchase' under securities law," Order at 1, Defendants will argue investors cannot assert claims in connection with the merger shares here. In fact, competing movants have already previewed Defendants' arguments that investors receiving merger shares here have not suffered any harm or recoverable damages under the facts of this case. *See* ECF No. 86 at 9 (suggesting that any claim in connection with the merger shares "would be highly suspect" because the recipients of the merger shares were "paid a substantial premium" and received a "windfall"); *id.* at 10 (suggesting that any losses suffered in connection with the receipt of merger shares would need to be offset by the $16.50 per share special cash dividend paid pursuant to the merger); *see also Netflix*, 2012 WL 1496171, at *5.

In the event that Defendants prevail and the merger shares are ultimately excluded, the New

York Group would be left with the second smallest financial interest of any movant before the Court. *See supra* at 5. The New York Group's outsized exposure to these potential defenses subject it to "unique defenses which may threaten to become the focus of the litigation" regardless of how those defenses are ultimately resolved in the litigation. *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010); *see also Netflix*, 2012 WL 1496171, at *5. Moreover, given that the New York Group's interest in this case is almost entirely dependent on successfully asserting claims arising out of the merger shares, the New York Group has little incentive to zealously represent the interests of class members who purchased shares on the open market during the four-year portion of the Class Period following the merger. *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) ("courts should not appoint a lead plaintiff whose appointment would pose a 'danger that absent class members will suffer if [the lead plaintiff] is preoccupied with defenses unique to it'") (alteration in original); *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *5 (N.D. Ill. July 30, 2013) (rejecting movant—even if it had the largest financial interest—because the movant had a limited interest in seeking to prove alleged corrective disclosures that did not impact movant but caused other class members' losses).

In contrast, AP7 and Union possess a financial interest that is based on purchases of Kraft shares throughout the Class Period and is far larger than any competing movant, and AP7 and Union are not subject to the unique defenses facing the New York Group. AP7 and Union's trading appropriately incentivizes AP7 and Union to pursue all potential claims on behalf of the entire class, and their substantial financial interest in this case does not turn on the legal question of when merger shares are "purchased" or whether they are properly included in the Class Period.[10] Indeed, AP7 and

---

[10] In addition to AP7 and Union having the largest non-merger share loss, Union asserts a larger non-merger share loss than any individual movant constituent. *See* ECF No. 91-2. Thus, to the extent the Arca

Union are the prototypical Lead Plaintiff and have a proven ability to represent investors in securities class actions, including most recently by defeating a motion to dismiss in another securities class action they are currently prosecuting together as Lead Plaintiff. *See In re Allergan Generic Pricing Sec. Litig.*, No. 16-9449 (KSH) (CLW), 2019 WL 3562134, at *1 (D.N.J. Aug. 6, 2019). Given AP7 and Union's ability and incentive to vigorously represent the entire class, there is "no reason to subject the class to [the New York Group's] potential defense." *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011).

## II. CONCLUSION

For these reasons, AP7 and Union respectfully submit that they are entitled to appointment as Lead Plaintiff pursuant to the PSLRA.

Dated: September 13, 2019

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Avi Josefson*
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Gerald H. Silk
Michael D. Blatchley
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

---

Krupa group claim that AP7 and Union are not a proper group, that argument is not only completely contrary to the actual evidence, but irrelevant. *See, e.g.*, ECF No. 97 at 2, 6-13. Indeed, the Arca Krupa group cannot be appointed because it lacks the largest financial interest, has effectively conceded it will not pursue merger share claims, and faces numerous unique adequacy and typicality defenses. *See* ECF No. 88 at 14-15.

jerry@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Union and Proposed Co-Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff AP7 and Proposed Co-Lead Counsel for the Class*

11