# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | Case No. 1:19-cv-01339 |
| | Honorable Robert M. Dow Jr. |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LIMITED RELIEF FROM THE PSLRA DISCOVERY STAY

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

    A. Plaintiffs' Claims ................................................................................................... 2

    B. The Derivative Cases ............................................................................................. 4

    C. Consolidation of the Derivative Cases Before the Court ....................................... 7

III. ARGUMENT .................................................................................................................... 8

    A. Legal Standard ....................................................................................................... 8

    B. Granting Limited Relief from the Discovery Stay Would Be In Accordance with the Purpose of the PSLRA ........................................................ 9

    C. Plaintiffs' Discovery Request Is Highly Particularized ....................................... 11

    D. Modification of the PSLRA Stay Is Necessary to Prevent Undue Prejudice ............................................................................................................. 12

IV. CONCLUSION ............................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*In re Akorn, Inc. Sec. Litig.*,
 240 F. Supp. 3d 802 (N.D. Ill. 2017) ....................................................................................... 11

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) .................................................................... 12, 13

*In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*,
 2007 WL 518626 (E.D. Mich. Feb. 15, 2007) .................................................................... 10, 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ........................................................ 10-11, 12, 14

*In re FirstEnergy Corp. Sec. Litig.*,
 229 F.R.D. 541 (N.D. Ohio 2004) ....................................................................................... 10, 12

*In re Kraft Heinz Co. Derivative Litig.*,
 C.A. No. 2019-0587-AGB (Del. Ch. 2019) ................................................................................1

*In re Kraft Heinz S'holder Derivative Litig.*,
 No. 20-cv-02259 (N.D. Ill. 2020) ........................................................................................... 1, 7

*In re Massey Energy Co. Sec. Litig.*,
 2011 WL 4528509 (S.D. W. Va. Sept. 28, 2011) ............................................................ 11, 12, 13

*In re Mut. Funds Inv. Litig.*,
 2005 WL 549534 (D. Md. Mar. 7, 2005) ................................................................................. 14

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 2015 WL 1565462 (E.D. Mich. Apr. 8, 2015) .......................................................................... 13

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
 943 F. Supp. 2d 913 (E.D. Wis. 2013) ................................................................................ passim

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
 220 F.R.D. 246 (D. Md. 2004) ........................................................................................... 10, 14

*Shah v. Zimmer Biomet Holdings, Inc.*,
 2019 WL 762510 (Feb. 20, 2019) ............................................................................................. 8

*Singer v. Nicor*,
 2003 WL 22013905 (N.D. Ill. Aug. 23, 2003) .......................................................................... 13

*In re Spiegel, Inc. Sec. Litig.*,
 382 F. Supp. 2d 989 (N.D. Ill. 2004) ......................................................................................... 8

*Turocy v. El Pollo Loco*,
  2017 WL 2495172 (C.D. Cal. May 10, 2017) ........................................................................13

*Waters v. Behring, et al.*,
  C.A. No. 20-cv-00346-RGA (D. Del. 2020).............................................................................7

*Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*,
  2009 WL 1285845 (S.D.N.Y. May 8, 2009) .........................................................................10

*In re Williams Sec. Litig.*,
  2003 WL 22013464 (N.D. Okla. May 22, 2003)...................................................................12

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002).............................................................................. 11-12

**Statutes**

8 Del. C. § 220 .................................................................................................................................1

15 U.S.C. § 78u–4(b)(3)(B) .......................................................................................................8, 12

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...................................2

**I.     INTRODUCTION**

Lead Plaintiffs Sjunde AP-Fonden and Union Asset Management Holding AG, together with additional named Plaintiff Booker Enterprises Pty Ltd. (collectively, "Plaintiffs"), respectfully submit this memorandum in support of their motion for limited relief from the mandatory discovery stay currently imposed in this action by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] Plaintiffs seek only limited relief from the PSLRA discovery stay to obtain copies of documents already gathered, reviewed, and produced by The Kraft Heinz Company ("KHC" or the "Company")—including documents described in publicly filed pleadings or in open court—in connection with the recently-filed consolidated derivative actions pending before this Court, *In re The Kraft Heinz Shareholder Derivative Litigation*, Case No. 20-cv-02259 ("Consolidated Derivative Action"), and in the Court of Chancery of the State of Delaware, *In re Kraft Heinz Co. Derivative Litigation*, C.A. No. 2019-0587-AGB (the "Delaware Derivative Action") (collectively, the "Derivative Cases"). Specifically, Plaintiffs seek: (i) copies of the "books and records produced by" KHC pursuant to "demands made under 8 Del. C. § 220," *see* Declaration of Sharan Nirmul in Support of Plaintiff's Motion for Limited Relief from the PSLRA Discovery Stay ("Nirmul Decl.") Ex. 1, Proposed Amended Redacted Version of the Verified Stockholder Derivative Complaint, filed in the Delaware Derivative Action on May 15, 2020 (the "Delaware Derivative Complaint") at 2; and (ii) unredacted copies of all documents filed under seal in this Court and in the Chancery Court that reference such documents.

The requested discovery is particularized and necessary to prevent undue prejudice to Plaintiffs. No fewer than eight other plaintiffs and their lawyers presently have access to these

---

[1] Unless otherwise noted: (i) all capitalized terms shall have the meaning in Plaintiffs' Consolidated Class Action Complaint ("CAC") (ECF No. 179); (ii) "¶ __" refers to the CAC; and (iii) all emphasis is added and internal quotations and citations omitted.

documents, and are using them to prosecute claims based on ***the same underlying facts*** that form the basis for Plaintiffs' claims against ***many of the same defendants*** named in the instant action. Absent limited relief from the discovery stay, Plaintiffs risk being left behind while these other cases proceed unhampered. Moreover, as this Court is aware, Plaintiffs intend to file an amended complaint addressing the newly-unredacted information derived from these same documents alleged in the numerous derivative complaints before this Court. In the interests of justice, the putative Class should have access to the full documents underlying those complaints.

Granting Plaintiffs' limited discovery request would not frustrate the purpose of the PSLRA discovery stay, which is to prevent plaintiffs from leveraging significant discovery costs to extract a settlement of dubious claims. *See, e.g.*, H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736. Here, production of the requested documents imposes virtually no cost on Defendants. Instead, it would simply grant Plaintiffs access to documents that have already been compiled and produced by Defendants to numerous litigants in other related actions, some of which are proceeding before this Court. For each of these reasons, Plaintiffs' motion should be granted.

## II.  FACTUAL BACKGROUND

### A.  Plaintiffs' Claims

On January 6, 2020, Plaintiffs filed the CAC, which set forth in great detail the factual basis for Plaintiffs' claims. In short, the CAC alleges that Defendants[2] misled investors as to the purportedly "sustainable" cost-saving measures and "synergies" Defendants had implemented

---

[2] Defendants are KHC, 3G Capital Partners and its affiliated funds and business, 3G Capital, Inc., 3G Global Food Holdings, L.P., 3G Global Food Holdings GP LP, 3G Capital Partners LP, 3G Capital Partners II LP, and 3G Capital Partners Ltd. (collectively "3G"), Bernardo Hees, Paulo Basilio, David Knopf, Alexandre Behring, George Zoghbi, and Rafael Oliveira.

following the 2015 merger between Kraft Foods Group, Inc. and The H.J. Heinz Company, and vastly overstated the post-merger value of KHC's brands and business units. *See generally* ¶¶ 58-171. In reality, and as recounted by twenty-six former employees cited in the CAC, Defendants engaged in an indiscriminate cost-cutting program that caused major disruptions to the Company's operations, and led to the loss of major customer contracts and a severe diminution in the value of KHC's iconic brands. *Id.* The CAC further alleges that Defendants engaged in widespread accounting fraud, including the massive overstatement of the value of KHC's intangible assets, in an effort to maximize short-term gains and to conceal the negative impacts of their destructive cost-cutting strategies. ¶¶ 172-85. Moreover, Plaintiffs allege that while KHC's stock was inflated by Defendants' false and misleading statements, Defendant 3G Capital illicitly sold 20 million shares of KHC stock, for proceeds of more than $1.2 billion. ¶¶ 201-03.

As set forth in the CAC, investors learned the relevant truth through a series of corrective disclosures, including KHC's shocking announcement in February 2019 of a record-breaking $15.4 billion intangible asset impairment charge. ¶¶ 204-23. The Company also announced investigations by the SEC and Department of Justice ("DOJ") into KHC's accounting and procurement practices, restated years of financial statements due to widespread, admitted misconduct in its procurement division, and fired its senior-most executives—including its CEO and CFO, who were also 3G partners. ¶¶ 224-35. Finally, at the end of the Class Period, the Company disclosed significant sales and earnings misses for the first half of 2019, and KHC's new CEO, Miguel Patricio, made a series of stunning admissions directly contradicting Defendants' Class Period assurances to investors. ¶¶ 236-37. Indeed, while Defendants had touted $1.7 billion in "sustainable" "synergies" achieved during the Class Period, Patricio told analysts that virtually

3

all of those savings would need to be *reinvested* back into the Company to revive its ravaged infrastructure. ¶¶ 70, 236.

      **B.**     **The Derivative Cases**

The Derivative Cases echo Plaintiffs' theory of liability. Indeed, some of the complaints filed in the Derivative Cases specifically reference and rely on Plaintiffs' investigation described in the CAC. *See, e.g.*, Ex. 1 at ¶ 122 ("As detailed in a securities class action complaint filed by experienced and highly regarded counsel, numerous former employees related that Kraft Canada was committed to cutting its work force by two-thirds by 2018."). Thus, like the CAC, the Delaware Derivative Complaint alleges that "3G slashed costs, including firing thousands of employees, closing plants, using cheaper and lower quality ingredients, and trying to bully long-term customers for concessions" and that by 2017, "3G's cost cutting had decimated KHC's product quality, customer service, and supply chain." *Id.* at ¶¶ 8-9. The Delaware Derivative Complaint further alleges that KHC "significantly cut resources for the unit overseeing its internal controls over financial reporting, the very internal controls over financial reporting the Company would later admit were deficient." *Id.* at ¶ 8. Moreover, like the CAC, the Delaware Derivative Complaint alleges that "3G possessed highly material, inside information in real-time that it failed to disclose before selling its stock" in August 2018. *Id.* at ¶ 5.

The Delaware Derivative Complaint additionally refers to numerous *internal KHC documents* that strongly corroborate the CAC's core allegations—internal documents that KHC compiled and produced to the state and federal derivative plaintiffs as part of "seventeen Section 220 productions." *Id*. For example, based on internal KHC documents, the Delaware Derivative Complaint alleges that:

> "Based solely on the limited Section 220 documents produced thus far, *3G knew, prior to its $1.2 billion stock sale, that at a minimum*:

4

- KHC had missed 3G's internal projections by enormous margins for well over a year;

- KHC would not achieve 3G's aggressive and unrealistic cost-cutting projections going forward;

- the SEC had threatened regulatory action and was investigating KHC's accounting practices;

- KHC's largest customer, Walmart, Inc., had been (and would continue to) 'accelerate' its own private label offerings, erode KHC's market share, and exert 'unprecedented' pricing pressure; and

- KHC's annual impairment testing, which was completed just before 3G's sale, relied upon 3G's unreliable projections and other faulty information to mask the massive, looming impairment charge." *Id.* at ¶ 30.

Specifically, the Delaware Derivative Complaint describes and quotes underlying internal KHC documents showing that:

- "At the [January 31, 2018 KHC Board] meeting, **Hees explained that 3G had failed to achieve projected 2017 EBITDA by a wide margin.** The 2017 AOP [Annual Operating Plan] had projected $8.5 billion in EBITDA, but 3G had fallen short by at least $500 million. . . . **Hees acknowledged that a primary failure was that 3G could not achieve its projected 'Savings Curve**,' which would need to keep increasing over time despite the massive cuts that had already occurred after the 2015 merger. 3G's inability to achieve cost-cutting targets in 2017 for its US operations accounted for a $252 million shortfall in the projected 2017 EBITDA." *Id.* at ¶¶ 127-28.

- "In February 2018 KHC's CEO, Bernardo Hees, a 3G partner, warned the Board about the 'accelerating' private label issue in the U.S., which was driven 'mainly' by Walmart." *Id.* at ¶15.

- "In Q1 2018, which was projected to have to [sic] lowest EBITDA of any quarter, 3G missed its targets by nearly $85 million," yet 3G told investors on the Q1 2018 earnings call that "Q1 performance was slightly better than expected." *Id.* at ¶¶ 15, 17.

- "3G projected it could realize $735.9 million in gross savings for FY 2018. **By April 2018, however, 3G already knew that its cost-cutting projections were wildly off**. 3G told the Board that it would now need cost cuts of $974 million to meet its mark. 3G admitted internally that it could not achieve this level of cuts. 3G then lowered its FY 2018 projections by over $400 million from $8.4 billion to $7.92 billion." *Id.* at ¶ 16.

5

- "To delay the massive, looming [goodwill and intangible asset] impairment, *3G inflated KHC's fair value by using its stale projections in the face of real-time information* that KHC's business was hurtling towards an impairment." *Id.* at ¶ 19.

- "In June 2018, KHC's financial situation had deteriorated further and its future prospects cratered once again. In response, 3G convened an 'EVP Offsite' meeting to redo its projections for the third time in six months. Again, 3G lowered its FY 2018 targets, dropping its FY EBITDA projections by another several hundred million dollars. . . . [N]either management nor the Audit Committee discussed whether the Company should do any further analysis or run any sensitivities on the U.S. or Canadian reporting units, which were by far the Company's biggest and most important units and which accounted for the vast majority of the eventual $15.4 billion impairment. *The Company's Controller and Chief Accounting Officer resigned and left the Company a few hours after the Audit Committee met on June 18. The Company's Chief Ethics and Compliance Officer also announced he would leave the Company*." *Id.* at ¶¶ 20-21.

- "On July 13, 2018, the SEC served the Company with a notice that threatened regulatory action and demanded that KHC preserve documents related to its accounting practices. KHC's General Counsel, Rashida La Lande, who was selected and installed by 3G, inexplicably delayed informing the Audit Committee of the threatened regulatory action and document preservation directive for over two weeks, until the Audit Committee's August 1, 2018 meeting." *Id.* at ¶ 22.

- "At that [August 1] meeting, management informed the committee that . . . it had identified four other units with a 'fair value' cushion of less than 10%, including Canada, Latin America, Northeast Asia, and Southeast Asia. *Unbelievably, no one updated the projections for the U.S., even though everyone knew the projections were faulty and unreliable*." *Id.* at ¶ 23.

- "Instead, management backed into a modest company-specific risk premium for the North American units that was designed to avoid a warning or an impairment for KHC's largest business unit and two of the most valuable trademarks. *That decision all-too conveniently left the units and trademarks that would eventually be impaired by $15.4 billion with 'fair value' cushions that just barely scraped over the 10% threshold that KHC used to trigger warnings to investors*: U.S Refrigerated (12%), Kraft Master Brand (13%), and Oscar Mayer (13%)." *Id.* at ¶ 24.

- "*Internally, Hees made concessions that contradicted management's statements to analysts* that Walmart's private label market share grab, KHC's cost inflation, and the Canadian retail re-negotiations presented 'transitory headwinds' or 'one-off' occurrences that would 'fade.' Hees told the Board that cost inflation generally was '[a]ccelerating,'" that "'pressures from retailers particularly in assortment and private label' would continue" and "that there were now '[u]nprecedented commercial headwinds in the U.S., pushed by Private Label / deflation from Wal-Mart.'" *Id.* at ¶¶ 161-62.

6

Plaintiffs are the only parties to these parallel actions that do not have direct access to the internal KHC documents that support the foregoing allegations.

### C. Consolidation of the Derivative Cases Before the Court

There can be no question that the Consolidated Derivative Action and this Action arise out of the same alleged misconduct by Defendants. Indeed, the Defendants in the Consolidated Derivative Action—which include all of the Individual Defendants named in the CAC—previously sought transfer of the individual derivative actions filed in the Western District of Pennsylvania because "[a]ll of these cases concern the *same events*, and there will be *substantial overlap in the documents, witnesses and legal issues relevant to these cases*." *In re Kraft Heinz S'holder Derivative Litig.*, No. 20-cv-02259, ECF No. 31 at 1; *see id.* at 6 (arguing for transfer because "all of the cases at issue arise out of *substantially the same facts*"). In granting Defendants' motion to transfer, the court in the Western District of Pennsylvania reached the same conclusion. *See id.*, ECF No. 44 at 20 ("[T]he cases currently pending before the transferee forum are substantially similar to the actions currently before this Court. Both the Pittsburgh [derivative actions] and Chicago securities claims *concern the same alleged material misstatements and omissions*, as does the ERISA action. *The same key issues are at the heart of each case*: Who said or did what? When? And why?").[3]

Further, following transfer to the Northern District of Illinois, the parties to the derivative actions sought consolidation and reassignment before this Court because they agreed that the actions were related to this Action. *See* ECF No. 239 at 1 n.1 ("Plaintiff Silverman conferred with defendants' counsel and has been authorized to represent that defendants consent to the

---

[3] The parties in *Waters v. Behring, et al.*, C.A. No. 20-cv-00346-RGA, a derivative action initially filed in the District of Delaware, stipulated to transfer to this Court.

7

reassignment and consolidation of the Derivative Actions" with *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-01339); *id.* at 6 (describing numerous common allegations between the actions).

Thus, two consolidated suits arising from the same underlying misconduct are now pending before this Court. Plaintiffs seek to recover losses suffered by KHC's investors that arise from the Defendants' misconduct during the Class Period. On the other hand, the Derivative lawsuits seek to compensate KHC for harm it suffered as a result of the very same misconduct. But while KHC benefits from its own internal corporate documents being used in the Consolidated Derivative Action, Plaintiffs and the Class of investors they represent have so far been denied access to the information possessed by all other parties. And while Plaintiffs are entitled to and will rely upon the well-pled, highly relevant and incriminating facts that have been revealed by the now partially-unredacted Derivative Complaint,[4] they should be able to access the underlying documents upon which these allegations are based.

## III. ARGUMENT

### A. Legal Standard

The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B).

---

[4] *See, e.g.*, *Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510, at *8 (Feb. 20, 2019) ("[I]t is hard to say how facts taken from the allegations of another case's complaint are materially different from alleging facts from any other third-party source, such as a leaked internal document, a news article, an academic journal, a witness interview, or even an SEC filing, so long as counsel is within the confines of Federal Rule of Civil Procedure 11(b)."); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1013 (N.D. Ill. 2004) (permitting reliance on findings of independent examiner).

8

"The purpose of this stay is to allow the Court to evaluate plaintiffs' claims in securit[ies] actions before the defendant is required to engage in extensive and expensive discovery." *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 914 (E.D. Wis. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). The PSLRA discovery stay "operates as a check against abusive litigation: it prevents plaintiffs from asserting meritless securities claims against defendants in the hopes of extracting an unmerited settlement, paid by the defendants to avoid the costs of discovery." *Id.*

However, Congress also expressly granted courts discretion to modify the discovery stay prior to the court's ruling on a motion to dismiss in appropriate circumstances. In particular, a court may lift the PSLRA discovery stay where: (i) "exceptional circumstances exist, such that allowing discovery would not violate the ethos of the PSLRA discovery stay"; (ii) the requested discovery is "particularized"; and (iii) discovery is necessary to either "preserve evidence" or "prevent undue prejudice to a party." *Pension Tr. Fund*, 943 F. Supp. 2d at 915.

As discussed below, Plaintiffs' limited discovery request satisfies all three of these requirements. Accordingly, the Court should grant Plaintiffs limited relief from the PSLRA discovery stay pending resolution of Defendants' forthcoming motions to dismiss.

### B.  Granting Limited Relief from the Discovery Stay Would Be In Accordance with the Purpose of the PSLRA

As Courts in this Circuit have held, the limited production of "documents already produced in other actions" sought here does not "violate the ethos of the PSLRA discovery stay" because it imposes virtually no burden on Defendants that could be opportunistically leveraged to extract a "strike" settlement. *Pension Tr. Fund*, 943 F. Supp. 2d at 915. In *Pension Trust Fund*, for example, the plaintiffs sought the limited production of documents already produced to the SEC and other litigants in related actions prior to the court's resolution of the defendants' motion to

9

dismiss. *Id.* In granting plaintiffs' discovery request, the court held that the PSLRA discovery stay provisions "apply with less force" in such circumstances "because, where documents have already been collated and produced to other entities, the burdens of discovery are far less substantial." *Id.* Thus, where "the defendants ha[d] already gathered the discovery materials sought by" plaintiffs, the court found that the plaintiffs' limited discovery requests fell "outside the intended ambit of the PSLRA discovery stay." *Id.*; *see also In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*, 2007 WL 518626, at *8 (E.D. Mich. Feb. 15, 2007) ("[M]aintaining the discovery stay as to materials already provided to the federal authorities and to the Unsecured Creditors Committee does not further the policies behind the PSLRA."); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (same).

Here, as in *Pension Trust Fund*, Plaintiffs seek a limited and discrete set of documents ***that have already been gathered and produced by Defendants*** to the plaintiffs in the Derivative Cases. There is no additional burden associated with Defendants' production of these documents to Plaintiffs, and, as a result, Congress' concern about "extensive and expensive discovery" being conducted prior to a ruling on a motion to dismiss is not implicated by the instant motion. *Pension Trust Fund*, 943 F. Supp. 2d at 914; *see, e.g.*, *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009) ("One of the principal purposes of the PSLRA discovery stay is to eliminate the cost of discovery before the potential merit of a case is assessed at the motion to dismiss phase. However, that burden is slight when a defendant has already found, reviewed and organized the documents."); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) ("[T]he motion at issue here describes a 'clearly defined universe of documents,' and the burden of producing the materials should be slight, considering that the defendants have previously produced them to other

entities."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2002 WL 31845114, at *2 (S.D. Tex. Aug. 16, 2002) ("[T]his discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse.").

Furthermore, there is no danger that granting Plaintiffs' limited request will lead to a "fishing expedition" for sustainable claims. Plaintiffs have already filed the highly-detailed CAC, which asserts meritorious claims against Defendants based, in part, on the eyewitness accounts of *twenty-six* former KHC employees. Indeed, as noted above, the limited discovery sought by Plaintiffs is *consistent* with—and appears to *corroborate*—the CAC's allegations. *See supra* at 4-6.[5]

### C. Plaintiffs' Discovery Request Is Highly Particularized

Courts routinely hold that a request to lift the PSLRA stay is sufficiently particularized where it is limited to a discrete set of materials that either has been produced, or will be produced, to government investigators or other parties in related matters. *See, e.g., Pension Tr. Fund*, 943 F. Supp. 2d at 915 (finding request sufficiently particularized where "[o]n the whole, Pension Trust is requesting a relatively-limited amount of materials, all of which have been produced elsewhere and are accordingly subject to readily definable constraints"); *In re Massey Energy Co. Sec. Litig.*, 2011 WL 4528509, at *5 (S.D. W. Va. Sept. 28, 2011) (request was sufficiently particularized where it sought "the production of documents . . . which have been provided to the referenced government agencies and other parties are specific and fully consistent with the allegations and claims set forth in their [amended complaint]"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d

---

[5] That both the SEC and DOJ have launched investigations into the misconduct alleged in the CAC, *see* ¶¶ 212-35, further dispels any notion that Plaintiffs' claims are "frivolous." *See In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) ("That the SEC and DOJ initiated investigations provides additional support for finding that scienter has been adequately pleaded.").

301, 305-06 (S.D.N.Y. 2002) (lifting stay as to materials produced to public agencies in related proceedings); *FirstEnergy*, 229 F.R.D. at 545 (lifting stay as to documents produced to governmental entities); *Enron*, 2002 WL 31845114, at *1-2 (lifting stay as to materials already made available to numerous governmental entities and others); *In re Williams Sec. Litig.*, 2003 WL 22013464, at *3 (N.D. Okla. May 22, 2003) (same); *Delphi*, 2007 WL 518626, at *8 (lifting stay as to materials produced during the course of investigations).

Plaintiffs' limited request for the documents gathered and produced by KHC as part of its "seventeen Section 220 productions" to the plaintiffs in the Derivative Cases, *see* Ex. 1 at ¶ 5, easily satisfies this requirement.

### D. Modification of the PSLRA Stay Is Necessary to Prevent Undue Prejudice

A limited modification of the PSLRA discovery stay is also necessary to prevent undue prejudice to Plaintiffs, who, without access to materials available to ***every other*** litigant in parallel proceedings, will be at an informational disadvantage when forming litigation strategies and face a real risk of falling behind cases with which this Action may be coordinated. *See, e.g.*, *Pension Tr. Fund*, 943 F. Supp. 2d at 916 (collecting cases) (finding undue prejudice where securities plaintiffs' lack of access to documents produced to other litigations would hinder their "abilit[y] to adequately pursue settlement and other options when at an informational disadvantage compared to other parties"); *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) ("Courts have found undue prejudice where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings."); *Massey*, 2011 WL 4528509, at *6 ("Courts have lifted the 15 U.S.C. § 78u–4(b)(3)(B) discovery stay to prevent undue prejudice when a defendant in a securities action, which is stayed because the defendant filed a motion to dismiss, is also involved

in criminal, civil and administrative investigations and actions which are proceeding unabated with the possibility that settlements might occur and/or fines and penalties might be imposed.").

In *Pension Trust Fund*, the court found that modification of the PSLRA discovery stay was necessary in part because the plaintiffs in the securities class action were denied access to documents that were available to litigants in other parallel proceedings, which put the plaintiffs in the securities action "at an informational disadvantage when compared to the many other interested parties" in the midst of a "a rapidly shifting landscape." 943 F. Supp. 2d at 916. Similarly, in *Singer v. Nicor*, 2003 WL 22013905, at *1-2 (N.D. Ill. Aug. 23, 2003), the court found that since the defendant had already produced documents to multiple government agencies concerning "the same conduct that is at issue" in the securities fraud action, "[p]laintiffs here may well be unfairly disadvantaged" because "they risk being left behind while governmental and other investigations rapidly proceed."

Many other courts have adopted this rationale in granting limited modifications to the PSLRA discovery stay. *See, e.g., Turocy v. El Pollo Loco*, 2017 WL 2495172, at *2 (C.D. Cal. May 10, 2017) (granting modification of PSLRA discovery and ordering production of Section 220 materials because plaintiffs would "be unduly disadvantaged in pursuing litigation and settlement without discovery of the documents already made available to the derivative plaintiffs"); *Bank of Am.*, 2009 WL 4796169, at *3 (modifying PSLRA discovery stay where discovery was "moving apace in parallel litigation," finding that plaintiffs "will be unduly prejudiced and will be less able to make informed decisions about litigation strategy"); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *5 (E.D. Mich. Apr. 8, 2015) (granting limited modification of the discovery stay in light of ongoing discovery in related multi-district litigation); *Massey*, 2011 WL 4528509, at *6 (granting relief from discovery stay because

13

the fact that "criminal, civil and administrative investigations and actions [including derivative actions] which are proceeding . . . constitute extraordinary circumstances which present a substantial risk of undue prejudice"); *Royal Ahold*, 220 F.R.D. at 252 n.15 (lifting stay where, among other factors, defendants and other litigants in other proceedings were engaging in discovery); *In re Mut. Funds Inv. Litig.*, 2005 WL 549534, at *1 (D. Md. Mar. 7, 2005) (finding that securities "[p]laintiffs' access to the documents may assist in evaluating the worth of any potential settlements and in bringing to an efficient and economic resolution all claims arising from the allegations" in related proceedings).

Accordingly, Plaintiffs respectfully submit that this Court should grant a limited modification of the discovery stay "in order to prevent different groups of plaintiffs from having varying amounts of information" and so that "all plaintiffs [] stand on equal footing as to preliminary discovery." *Mut. Funds*, 2005 WL 549534, at *2; *see Enron*, 2002 WL 31845114, at *1 (PSLRA "not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to partially modify the PSLRA discovery stay.

Dated: June 19, 2020    Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul (#90751)
Richard A. Russo, Jr. (*pro hac vice*)
Joshua A. Materese (#314844)
Nathan A. Hasiuk (*pro hac vice*)
Lauren McGinley (*pro hac vice*)
280 King of Prussia Road
Radnor, Pennsylvania 19087

14

Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
rrusso@ktmc.com
jmaterese@ktmc.com
nhasiuk@ktmc.com
lmcginley@ktmc.com

*Counsel for Co-Lead Plaintiff Sjunde AP-Fonden and additional named Plaintiff Booker Enterprises Pty Ltd. and Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Salvatore Graziano (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
Abe Alexander (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
katiem@blbglaw.com
abe.alexander@blbglaw.com

*Counsel for Co-Lead Plaintiff Union Asset Management Holding AG and Co-Lead Counsel for the Class*

15