**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNION ASSET MANAGEMENT HOLDING AG and SJUNDE AP-FONDEN, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) | |
| Plaintiffs, ) ) ) | Case No. 19-cv-1339 |
| v. ) ) | Judge Robert M. Dow, Jr. |
| THE KRAFT HEINZ COMPANY, et al., ) ) | |
| Defendants. ) ) ) | |
| In re KRAFT HEINZ SHAREHOLDER DERIVATIVE LITIGATION ) ) ) | Case No. 20-cv-2259 Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This shareholder derivative litigation stems from the 2015 merger of Kraft Foods Group, Inc. with The H.J. Heinz Company to form the Kraft Heinz Company ("Kraft Heinz" or the "Company"). Before the Court are opposing motions for appointment of lead plaintiff and counsel.[1] For the reasons below, the Court grants Plaintiff Stephen Silverman's motion to appoint lead plaintiff and lead counsel [237] and Plaintiff Dale Waters' motion to join Silverman as co-lead plaintiff and appoint co-lead counsel [246] and denies Plaintiff Richard Merritts' motion to appoint lead plaintiff and counsel [232]. Lead Plaintiffs and counsel are given leave to file a consolidated amended complaint by November 22, 2021. A joint status report including a proposed case management plan is due by December 6, 2021.

---

[1] The parties also filed motions to consolidate the individual derivative actions [229, 232, 237] which the Court has already granted [244].

In addition, as discussed on the record at the most recent status hearing, this derivative litigation will be maintained as a separate docket from the related putative class action litigation also included in the caption above. Going forward, the Clerk shall administratively separate the six derivative actions (20-cv-2280, 20-cv-2259, 20-cv-2258, 20-cv-2071, 20-cv-2257, 20-cv-2072) from the direct shareholder class action (19-cv-1339). The derivative actions will be linked as related, with Case No. 20-cv-2259 as the lead case number for the consolidated derivative litigation. All filings in the derivative litigation should be made on the docket for Case No. 20-cv-2259 with the caption set out above. All filings in the putative class action litigation will continue to be made on the docket for Case No. 19-cv-1339.

## I. Background[2]

Kraft Heinz is one of the world's largest food and beverage companies, selling its products under several familiar brands, including Heinz, Kraft, Oscar Mayer, Philadelphia, Planters, Velveeta, and Lunchables. [See 229-2 at ¶ 1.]. The Company formed in July 2015 when Kraft Food Groups, Inc. merged with The H.J. Heinz Company. [*Id.*]. Before the merger, 3G Capital controlled the Heinz Company through one of its affiliates, Berkshire Hathaway, while after the merger, 3G Capital installed its founders to key management roles at Kraft Heinz. [*Id.*]

Derivative Plaintiffs allege, in short, that Kraft Heinz management touted new strategies to cut costs while also achieving growth trajectories, ultimately pledging to make the Company more efficient and generate increased profit. [See *id.* at ¶ 2.] According to the derivative complaints, despite reporting positive financial results between 2016 and 2018, the new budgeting strategies at Kraft Heinz were not actually working. As one example, rather than cutting costs the Company revealed in February 2019 that their production costs had increased by $25 million. [*Id.*

---

[2] The Court assumes general familiarity with the facts of this case, which are discussed in greater detail in at least two previous opinions, [150] and [310].

at ¶ 5–6.]. According to the complaints, once the Company made its negative financial performance public, the value of the Company's stock quickly spiraled downward. [*Id.* at ¶ 7.] Suspecting wrongdoing at the company, at least three Plaintiffs, Steven Hill, Richard Merritts, and Dale Waters, served books and records demands on the Company pursuant to 8 Del. C. § 220. [See 229-1 at 1; 229-2 at ¶ 12.] Several derivative actions followed.

As it exists now, this litigation consists of four different actions filed by a total of seven plaintiffs across three districts. Stephen Silverman has held Kraft Heinz stock since November 2016. He filed the first derivative complaint on May 15, 2019 in the United States District Court for the Western District of Pennsylvania alleging breach of fiduciary duty, corporate waste, unjust enrichment and contributions for violations of the federal securities laws on behalf of Nominal Defendant Kraft Heinz. See *Silverman et al. v. Behring et al.*, No. 19-cv-00574 (W.D. Pa. May 15, 2019) [Dkt. 1]. That case was consolidated with related derivative actions in the same district. See *id.* [Dkt. 40]. Silverman, along with three other plaintiffs, Charlotte Hays, Ian Green, and Vladimir Gusinsky Revocable Trust, filed an amended derivative complaint and the action was eventually transferred to this district. See In re Kraft Heinz Shareholder Derivative Litigation, No. 20-cv-2559 (N.D. Ill.).

Dale Waters acted next by filing a derivative complaint in the District of Delaware on March 30, 2020, which was transferred to this district shortly thereafter. See *Waters v. Behring et al.*, No. 20-cv-2072 (N.D. Ill.). Richard Merritts and Steven Hill then initiated their own separate actions by filing derivative complaints in the Northern District of Illinois on March 31, 2020, and April 13, 2020, respectively. *Merritts v. 3G Capital, Inc., et al.*, 1:20-cv-02071 (N.D. Ill.); *Hill v. Abel*, et al., 1:20-cv-02280 (N.D. Ill.). All four derivative actions were reassigned to this Court pursuant to Local Rule 40.4 and consolidated with the related Securities Class Action also pending

before this Court. [244.]

Plaintiffs have filed multiple competing motions for leadership. Initially, Plaintiffs Waters and Merritts moved together to appoint themselves as co-lead plaintiffs in the consolidated derivative action, and to appoint the law firms of Glancy Prongay & Murray LLP ("GPM") and Hung G. Ta, Esq. PLLC ("HGT") as co-lead counsel, and the law firm of Zimmerman Law Offices, P.C. ("Zimmerman") as liaison counsel. [232.] Plaintiff Silverman, joined by Hays, Green, Vladimir Gusinsky Revocable Trust, and Hill, then moved to appoint Silverman as lead plaintiff, and for his choice of lead counsel. [237.] After the Court reassigned and consolidated the four derivative cases [see 244], Plaintiff Waters withdrew from Merritts' motion for appointment of lead plaintiff and lead counsel [see 246], and joined Silverman's motion for appointment of lead plaintiff and lead counsel [see *id.*; see also 251].

Remaining before the Court are two competing motions. Silverman and Waters (with the support of Hays, Green, Vladimir Gusinsky Revocable Trust, and Hill) seek to appoint Silverman and Waters as co-lead plaintiffs, and their counsel, GPM and Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as co-lead counsel. [237; 251.] Merritts opposes that motion [see 247] and instead seeks to appoint Merritts as lead plaintiff, and HGT as lead counsel [see 232; see also 247]. Both groups filed replies in further support of their respective motions [see 254; 256].

## II. Analysis

Federal Rule of Civil Procedure 23.1 states that a shareholder who brings a derivative action to enforce the rights of the corporation must "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1. If all competing plaintiffs are deemed "adequate" to represent shareholders' interests, the Court must determine "which lead plaintiff (and lead counsel) will best

4

represent those interests." *N. Miami Beach Gen. Emps. Ret. Fund v. Parkinson*, 2011 WL 12465137, at *1 (N.D. Ill. July 5, 2011).

The parties agree that the Court should apply the criteria set out in *Dollens v. Ziontz*, 2001 WL 1543524 (N.D. Ill. Dec. 4, 2001), to determine which plaintiff would best represent shareholders' interests. See [239 at 9; 247 at 3 n.6]. Those factors are (1) whether the plaintiff is an institutional investor; (2) the plaintiff's financial stake; (3) whether plaintiff is represented by counsel; (4) vigorousness of plaintiff's prosecution; and (5) quality of the pleadings. See *Dollens*, 2001 WL 1543524, at *5–6; see also *Chester Cnty. Emps. Ret. Fund v. White*, 2012 WL 1245724, at *3 (N.D. Ill. Apr. 13, 2012); *N. Miami Beach Gen. Emps. Ret. Fund*, 2011 WL 12465137, at *1. Neither candidate for lead status argues that the other is *in*adequate for the general purposes of Rule 23.1.[3] Instead, they disagree as to who is *most* adequate.

Considering the *Dollens* factors, leadership in this case turns on which team of counsel is best situated to advance the interests of the shareholders in this derivative action, as the other factors essentially are in equipoise. Silverman, Waters, and Merritts are all individual investors; thus none has the advantage of an institutional investor. Similarly, all proposed lead plaintiffs have owned shares for significant periods of time—Silverman since November 2016 [239 at 10], Waters since 2009 [251 at 6], and Merritts since 2014 [247 at 12]—and none of the plaintiffs discloses his precise stake in the company, which makes it impossible for the Court to draw any distinctions on that basis.

Vigorousness of prosecution is not dispositive here either, despite Merritts' contentions otherwise. Merritts places great weight on his Section 220 inquiry to argue that he has prosecuted

---

[3] Merritts argued initially that Silverman is inadequate because he did not make a books and records demand pursuant to 8 Del. C. § 220 before filing his complaint. See [247 at 10.] Merritts abandoned that precise argument, however, and rightly so, when Waters joined Silverman and moved for co-lead plaintiff status, as Waters did make a Section 220 demand before filing his complaint.

this action more vigorously than the other Plaintiffs. It is worth noting at the outset that Section 220 does not function as a prerequisite or a "passport" to leadership. See *Pyott v. Louisiana Mun. Police Employees' Ret. Sys.*, 74 A.3d 612, 618 (Del. 2013). The Court notes, however, that Section 220 demands are strongly enough encouraged under Delaware law to be a "plus-factor" for those leadership applicants who avail themselves of it. (Robbins Geller touts its own efforts under Section 220 when it undertakes them, although it did not do so here.) But, how much weight to give to a Section 220 inquiry as a "plus-factor" depends on context. Here, it seems that the information gathered from the Section 220 demand proved useful and is incorporated in some of the complaints. If Merritts had been the only plaintiff to have undertaken the Section 220 inquiry, that might be a significant factor in favor of appointing him (and his counsel) as leads. But multiple plaintiffs (Merritts, Waters, and Hill) made inspection demands here. While Silverman did not make a Section 220 document demand (which demonstrates, according to Merritts, "Silverman's haste to file" [247 at 9]), that potential disadvantage is not as important given that Silverman's proposed co-lead plaintiff, Waters, did follow Section 220 procedures before filing his complaint. The fact that Merritts engaged in pre-suit discovery therefore does not give the Court reason to find that he has pursued this action with materially more vigor than Silverman and especially Waters.

      Nor does the quality of the pleadings advantage one party over the other. Each plaintiff has filed a lengthy verified complaint with the assistance of diligent counsel. Although each candidate spends a considerable amount of time doing Defendants' work—that is, picking apart the quality of the pleadings, pointing out potential weaknesses that may make the pleading susceptible to a motion to dismiss—the Court's review shows that the pleadings allege the same core claims based on the same core concepts, despite some differences at the margins.

Merritts relies again on his Section 220 inquiry in suggesting that his pleadings are superior to the others. He contends that although Waters obtained the documents, his lawyers did not draw out the "smoking gun" as clearly as they should have. Specifically, Merritts argues that the Silverman/Waters pleadings "do not contain any critical analysis of the Garlati Memorandum and accompanying presentation." [254 at 2.] But the Court does not view the differences in approach to the Garlati Memorandum as substantial. Both the Waters and Merritts complaints identify the nature of the problem and the significance of the Memorandum. Although Merritts analyzes that particular memorandum in greater detail, he does not name the author of the memorandum, Garlati, as a Defendant, though Waters does. In short, it is not evident that the Section 220 work led the Merritts lawyers to deep insights that were missed by all of the other lawyers, regardless of whether they obtained the corporate books and records.

The foregoing analysis leads the Court to conclude that application of the *Dollens* factors does not lead to a clear winner in the competition for lead Plaintiff and lead counsel in this litgation. With those factors indeterminate, the Court turns back to first principles: "which lead plaintiff (and lead counsel) will best represent [the shareholders'] interests[?]" *N. Miami Beach Gen. Emps. Ret. Fund*, 2011 WL 12465137, at *1. The Court starts with the premise, supported by the parties' submissions, that each proposed team would be capable of prosecuting this action. All of the lawyer candidates have substantial experience with these types of cases, and even if there is a better choice here, there is no bad choice. The question for the Court, then, is whether one group of lawyers is better suited to handle this particular shareholder derivative litigation. Although shareholder derivative cases are almost never small, they do come in all shapes, sizes, and complexities. Even in its early stages, this litigation bears the indicia of a larger and more complex undertaking with a sizable amount of money claimed as damages. These high stakes counsel in

favor of selecting lead lawyers with vast resources and experience in cases of this magnitude, as the ultimate responsibility of the Court is to the shareholders who will be the clients in this matter. For this reason, the Court selects the Silverman and Waters team, as its lawyers have been lead counsel in many of these types of cases. [See 239-12.]

With that selection having been made, the Court recognizes the quality of the work done by Merritts and his lawyers. The Court also notes the concern expressed by Merritts' proposed team of counsel over potentially being excluded from work on the case. The Silverman/Waters team says "[n]ot so" [256 at 8] and goes on to tout the inclusiveness of their team. In appointing the Silverman/Waters team, the Court trusts that lead counsel will consider the Merritts lawyers for appropriate work in this complex litigation on the basis of the thorough pre-suit investigation they conducted and the sound factual and legal points in their briefs on this motion.

### III. Conclusion

For the reasons stated above, the Court appoints Silverman and Waters as co-lead plaintiffs, and Robbins Geller and GPM as co-lead counsel for plaintiffs in the consolidated Kraft Heinz shareholder derivative actions. the Clerk shall administratively separate the six derivative actions (20-cv-2280, 20-cv-2259, 20-cv-2258, 20-cv-2071, 20-cv-2257, 20-cv-2072) from the direct shareholder class action (19-cv-1339). The derivative actions will be linked as related, with Case No. 20-cv-2259 as the lead case number for the consolidated derivative litigation. All filings in the derivative litigation should be made on the docket for Case No. 20-cv-2259 with the caption set out above. All filings in the putative class action litigation will continue to be made on the docket for Case No. 19-cv-1339.

Dated: October 21, 2021

_____
Robert M. Dow, Jr.
United States District Judge