**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | Case No. 1:19-cv-01339 |
| | Honorable Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. ARGUMENT ...........................................................................................................3

  A. The Court Should Approve Lead Counsel's Fee Application .................................3

    1. Counsel Are Entitled to Attorneys' Fees from the Common Fund ............3

    2. The Requested Fee Is Fair and Reasonable as a Percentage of the Fund ..............................................................................................................4

    3. The Requested Fee Award Is Reasonable Under the Lodestar Method ...........................................................................................................7

    4. The Contingent Nature of the Litigation and the Risk of Nonpayment Supports the Fee Request .......................................................9

    5. The Quality of Legal Services Rendered Supports the Fee Request .........11

    6. The Reaction of Plaintiffs and the Settlement Class to Date ....................12

  B. The Request for Payment of Litigation Expenses Should Be Approved...............13

III. CONCLUSION.........................................................................................................15

## TABLE OF AUTHORITIES

CASES                        PAGE(S)

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ...........................................................14

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir.
2008) .......................................................................................................................6, 7

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ................................................................................4, 7

*Arenson v. Bd. of Trade*,
372 F. Supp. 1349 (N.D. Ill. 1974) .........................................................................11

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ....................................................................10

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014)....................................................................................15

*In re Bank One Sec. Litig. First Chicago S'holder Claims*,
No. 00-cv-0767 (N.D. Ill. Aug. 26, 2005) ................................................................6

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .......................................................7, 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................4

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
No. 20-cv-10041 (S.D.N.Y. July 19, 2023) ............................................................13

*In re DaimlerChrysler AG Sec. Litig.*,
No. 00-cv-0993, slip op. (D. Del. Feb. 5, 2004) .......................................................7

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................4, 9

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..............................................................4

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ......................................................................................4

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ....................................................................................4

*Gastineau v. Wright*,
  592 F.3d 747 (7th Cir. 2010) ...................................................................7

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................................15

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,*
  *L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002) ...........................................11

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) .................................................................8

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) ...........................................................6

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) .....................................................6

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  No. 02-cv-5893, slip op. (N.D. Ill. Nov. 11, 2016)..............................6, 8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................12

*In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*,
  No. 05-cv-02367, slip op. (D.N.J. June 28, 2016) ................................6

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)................................................................................8

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
  332 F.R.D. 202 (N.D. Ill. 2019), *aff'd*, 2019 WL 8058082 (7th Cir. Oct. 25,
  2019) ......................................................................................................5

*New Jersey Carpenters Health Fund v. Residential Cap. LLC*,
  No. 08-cv-08781 (S.D.N.Y. July 31, 2015) ...........................................6

*In re Nielsen Holdings PLC Sec. Litig.*,
  No. 18-cv-7143, (S.D.N.Y. July 20, 2022) ..........................................13

*Ohio Pub. Emps. Ret. Sys. v. Freddie Mac*,
  2006 U.S. Dist. LEXIS 98380 (S.D.N.Y. Oct. 26, 2006) .......................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12, 2003)........................7

*Pension Tr. Fund for Operating Engineers v. DeVry Educ. Grp., Inc.*,
   No. 16-cv-5198, slip op. (N.D. Ill. Dec. 6, 2019) ....................................................8

*In re Pfizer Sec. Litig.*,
   No. 04-cv-09866, slip op. (S.D.N.Y. Dec. 21, 2016) ............................................6

*Pub. Emps.' Ret. Sys. of Miss. v. Treehouse Foods, Inc.*,
   No. 16-cv-10632, slip op. (N.D. Ill. Nov. 18, 2021)............................................15

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
   No. 15-cv-3187, slip op. (N.D. Ill. Oct. 11, 2022)..........................................6, 15

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)........................................................5

*Reynolds v. FCA US LLC*,
   No. 19-cv-11745, slip op. (E.D. Mich. June 27, 2023) ......................................13

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................5

*Silverman v. Motorola, Inc.*,
   2012 WL 1597388 (N.D. Ill. May 7, 2012), *aff'd*, 739 F.3d 956 (7th Cir.
   2013) ......................................................................................................................6

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) .................................................................................9

*Smith v. Vill. of Maywood*,
   17 F.3d 219 (7th Cir. 1994) ...................................................................................8

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) .........................................................................5, 9, 11

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ..........................................................................5, 11

*In re Twitter, Inc. Sec. Litig.*,
   2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ....................................................6

*In re Waste Mgmt., Inc. Sec. Litig.*,
   1999 WL 967012 (N.D. Ill. Oct. 18, 1999)............................................................6

*In re Williams Sec. Litig.*,
   No. 02-cv-00072, slip op. (N.D. Okla. Feb. 12, 2007) ..........................................7

*Williams v. Rohm & Haas Pension Plan*,
    2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir.
    2011) ............................................................................................................8

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ......................................................................7

*Wong v. Accretive Health, Inc.*,
    2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ..............................................8

**STATUTES**

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4(a)(4) ............................................................................14

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Kessler Topaz Meltzer & Check, LLP ("KTMC"), Lead Counsel for the Court-appointed Lead Plaintiffs Union Asset Management Holding AG ("Union") and Sjunde AP-Fonden ("AP7"), and additional named plaintiff Booker Enterprises Pty Ltd. ("Booker" and, together with Union and AP7, "Plaintiffs"), and the Settlement Class, respectfully submit this memorandum in support of their motion for (i) an award of attorneys' fees for Plaintiffs' Counsel in the amount of 20% of the Settlement Fund; (ii) payment of $2,656,091.93 for Litigation Expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (iii) reimbursement of a total of $114,430 to Plaintiffs for their costs directly related to representing the Settlement Class, as authorized by the PSLRA.[1]

## I.     PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a payment of $450 million in cash. The Settlement, if approved, will be the largest pre-trial securities class action settlement *ever* in the Seventh Circuit. It represents an excellent result for the Settlement Class because it provides substantial, near-term compensation to Settlement Class Members while avoiding the significant risks and delay that Plaintiffs would face in obtaining a larger recovery through continued litigation.

In order to achieve this substantial recovery, Lead Counsel vigorously pursued this Action for four years, overcoming Defendants' motions to dismiss, building the case through substantial discovery, and negotiating aggressively against several widely respected defense firms on a fully

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated May 2, 2023 (ECF No. 475-3) ("Stipulation") or the Joint Declaration of Sharan Nirmul and Salvatore J. Graziano ("Joint Declaration" or "Joint Decl.") submitted herewith. Citations to "¶ __" in this memorandum refer to paragraphs of the Joint Declaration and citations to "Ex. __" refer to exhibits to the Joint Declaration. Plaintiffs' Counsel are Lead Counsel KTMC and BLB&G and additional Plaintiffs' Counsel, Wolf Popper LLP.

contingent basis. As detailed in the Joint Declaration, Plaintiffs' Counsel devoted more than 112,000 hours to the litigation. Counsel's efforts included: (i) conducting a wide-ranging investigation concerning Defendants' allegedly fraudulent misrepresentations, including interviews with over 320 former Kraft Heinz employees; (ii) researching and preparing a consolidated complaint and then—after receiving additional information—submitting the detailed, 224-page Amended Complaint; (iii) successfully defeating Defendants' motions to dismiss the Amended Complaint in their entirety; (iv) conducting extensive fact discovery, including serving document requests, requests for admission, and interrogatories on Defendants, serving subpoenas on third parties, successfully moving to compel documents from Kraft Heinz's auditor, obtaining more than 15 million pages of documents from Defendants and third parties, and engaging in significant preparations for numerous fact depositions; (v) moving for class certification, including assisting in the preparation of two supporting expert reports, defending depositions of Plaintiffs' representatives and expert, and taking the deposition of Defendants' experts; and (vi) engaging in extended settlement negotiations with Defendants, including two formal mediation sessions facilitated by former U.S. District Judge Layn Phillips and mediation briefing. ¶¶ 8, 23-125.

As discussed further below, and in the accompanying Joint Declaration and Settlement Memorandum, Plaintiffs undertook this tremendous investment of time and resources in the face of significant obstacles in proving several elements of their claims, which involved a large number of alleged misstatements related to many aspects of Kraft Heinz's global business over a four-year period. Plaintiffs faced significant challenges from the outset to proving the falsity of these statements, establishing Defendants' scienter, and in proving loss causation and damages. ¶¶ 126-53. To succeed in the Action, Plaintiffs' Counsel deployed a large, dedicated group of professionals to develop, support, and aggressively pursue the Action, including not only litigators

skilled in securities litigation, but also highly experienced investigators, paralegals, and administrative staff.

As compensation for Plaintiffs' Counsel's efforts on behalf of the Settlement Class and the risks of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel seek attorneys' fees in the amount of 20% of the Settlement Fund, or $90,000,000 (plus interest). As discussed below, the requested fee is well within the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries. The requested fee also represents a multiplier of 1.7 on Plaintiffs' Counsel's lodestar, which is also well within the range of multipliers typically awarded in class actions with significant contingency risks like this case.

Moreover, the requested fee has the full support of Plaintiffs—sophisticated investors that actively supervised Lead Counsel's prosecution and resolution of the Action. Plaintiffs have endorsed the requested fee as fair and reasonable in light of the result achieved, the quality of the work counsel performed, and the risks of the litigation. *See* Ex. 1, ¶ 9; Ex. 2, ¶ 9; Ex. 3, ¶ 9.

In light of the favorable recovery obtained, the time and effort devoted by Plaintiffs' Counsel to the Action, the skill and expertise required, the quality of the work performed, the wholly contingent nature of the representation, and the considerable risks that counsel undertook, Lead Counsel respectfully submit that the requested fee is reasonable and should be approved by the Court. In addition, the costs and expenses incurred by Plaintiffs' Counsel (in the total amount of $2,626,091.93) and Plaintiffs (in the total amount of $114,430) are reasonable in amount and were necessarily incurred in the successful prosecution of the Action, and should be approved.

## II. ARGUMENT

### A. The Court Should Approve Lead Counsel's Fee Application

#### 1. Counsel Are Entitled to Attorneys' Fees from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common

fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Seventh Circuit has held that "[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). Courts recognize that awarding attorneys' fees from a common fund serves to "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*23 (S.D.N.Y. Nov. 8, 2010).

### 2. The Requested Fee Is Fair and Reasonable as a Percentage of the Fund

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. Although courts in this Circuit have discretion to choose either the lodestar or percentage method of calculating fees in common fund cases,[2] the Seventh Circuit has strongly endorsed the percentage method, pursuant to which fees are awarded as a percentage of the common fund, because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in

---

[2]     *See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("in our circuit, it is legally correct for a district court to choose either" the percentage method or the lodestar method in determining fee awards).

4

common-fund cases in this district").

The Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). The Seventh Circuit considers, among other things: (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005); *see also Synthroid*, 264 F.3d at 721 (the reasonableness determination "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case"). Each of these factors strongly support the fee requested here.

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record . . . and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. In complex class actions, courts within the Seventh Circuit have held that percentages in the range of 33% to 40% of the recovery are appropriate.[3] Here, Lead Counsel are applying for an award of 20% of the Settlement Fund, which is well within the contours of fees approved within the Seventh Circuit in analogous cases.

The requested fee (whether analyzed as 20% of the full Settlement Fund or 20.2% of the Settlement Fund net of expenses),[4] is well within the range of fee awards that courts in this District

---

[3]       *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("an award of 33.3% of the settlement fund is within the reasonable range"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered.").

[4]       Some courts in this District have found that a percentage fee award should be analyzed as a percentage of the common fund *after* deducting all costs (other than attorneys' fees themselves) that will not be paid to the class, such as notice costs and litigation expenses. *See In re Nat'l Collegiate Athletic*

have made in similar cases. *See*, *e.g.*, *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15-cv-3187, slip op. at 2 (N.D. Ill. Oct. 11, 2022), ECF No. 526 (Ex. 9) (awarding 27.5% of $105 million settlement); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-cv-5893, slip op. at 1 (N.D. Ill. Nov. 11, 2016), ECF No. 2265 (Ex. 10) (awarding 24.68% of $1.575 billion settlement); *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *1 (N.D. Ill. May 7, 2012) (awarding 27.5% of $200 million settlement), *aff'd*, 739 F.3d 956 (7th Cir. 2013); *In re Bank One Sec. Litig. First Chicago S'holder Claims*, No. 00-cv-0767, slip op. at 3 (N.D. Ill. Aug. 26, 2005), ECF No. 351 (Ex. 11) (awarding 22.5% of $120 million settlement); *In re Waste Mgmt., Inc. Sec. Litig.*, 1999 WL 967012, at *3 (N.D. Ill. Oct. 18, 1999) (awarding 20% of $220 million settlement).

The 20% fee is also within the range of fees typically awarded in settlements of comparable size in securities class actions in other Circuits. *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 2022 WL 17248115, at *1-2 (N.D. Cal. Nov. 21, 2022) (22.5% of $809.5 million); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) (20% of $480 million), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *In re Pfizer Sec. Litig.*, No. 04-cv-09866, slip op. at 2 (S.D.N.Y. Dec. 21, 2016), ECF No. 727 (Ex. 12) (28% of $486 million); *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, No. 05-cv-02367, slip op. at 10-11 (D.N.J. June 28, 2016), ECF No. 1039 (Ex. 13) (20% of $1.062 billion); *New Jersey Carpenters Health Fund v. Residential Cap. LLC*, No. 08-cv-08781, slip op. at 2 (S.D.N.Y. July 31, 2015), ECF No. 353 (Ex. 14) (20.75% of $335 million); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 & n.354 (S.D.N.Y. 2009) (29% of $586 million); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,

---

*Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 221, 226 (N.D. Ill. 2019), *aff'd*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019). In applying that analysis here, the requested fee of $90 million (plus interest) represents approximately 20.2% of the expected Settlement Amount net of expenses ($445,129,568.17)—*i.e.*, the Settlement Amount less $2,770,431.93 in Litigation Expenses and an estimated $2,100,000 in Notice and Administration Costs. Such a fee award is also fair and reasonable and consistent with fees approved within the Seventh Circuit in analogous cases.

2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (21.4% of $455 million), *aff'd*, 272 F. App'x 9 (2d Cir. 2008); *Ohio Pub. Emps. Ret. Sys. v. Freddie Mac*, 2006 U.S. Dist. LEXIS 98380, at *4 (S.D.N.Y. Oct. 26, 2006) (21% of $410 million); *In re Williams Sec. Litig.*, No. 02-cv-00072, slip op. at 2 (N.D. Okla. Feb. 12, 2007), ECF No. 1638 (Ex. 15) (25% of $311 million); *In re DaimlerChrysler AG Sec. Litig.*, No. 00-cv-0993, slip op. at 1 (D. Del. Feb. 5, 2004), ECF No. 973 (Ex. 16) (22.5% of $300 million); *In re Oxford Health Plans, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26795, at *13 (S.D.N.Y. June 12, 2003) (28% of $300 million).

In sum, the 20% fee requested here is well within the range of fees awarded on a percentage basis in comparable cases.

### 3. The Requested Fee Award Is Reasonable Under the Lodestar Method

While use of the lodestar/multiplier method as a cross-check is not required, *see Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011); *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *5 (S.D. Ind. Sept. 4, 2019), that analysis nevertheless confirms the appropriateness of the fee requested here.

The lodestar/multiplier method entails multiplying the number of hours each attorney or other professional expended on the case by his or her hourly rate to derive the lodestar figure. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Courts then typically adjust the lodestar, by applying a multiplier, to take into account the various factors in the litigation that affect the reasonableness of the requested fee, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id*. Courts must also consider the risk taken by class counsel that they will recover nothing for their time and expenses. *See Americana Art China Co.*, 743 F.3d at 247. In complex contingent litigation such as this Action, courts in the Seventh Circuit regularly apply risk multipliers between 1.0 and 4.0. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991).

As detailed in the Joint Declaration, Plaintiffs' Counsel devoted 112,835 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through May 2, 2023. ¶ 175. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate,[5] is $52,985,816.50. *Id.* Accordingly, the requested fee of 20% of the Settlement Fund—$90 million (before interest)—represents a multiplier of approximately 1.7 on counsel's lodestar. *Id.*

A 1.7 multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See, e.g.*, *Pension Tr. Fund for Operating Engineers v. DeVry Educ. Grp., Inc.*, No. 16-cv-5198, slip op. at 2-3 (N.D. Ill. Dec. 6, 2019), ECF No. 162 (awarding 2.1 multiplier) (Ex. 17); *Household*, No. 02-C-5893, slip op. at 1 (Ex. 10) and *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-CV-5893, Fee Brief at 25 (N.D. Ill. Aug. 29, 2016), ECF No. 2222 (Ex. 18) (awarding 5.4 multiplier); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579, at *1 (N.D. Ill. Apr. 30, 2014) and *Wong v. Accretive Health, Inc.*, No. 12-cv-03102, Decl. at 22 (N.D. Ill. Dec. 13, 2013), ECF No. 73 (Ex. 19) (awarding 4.7 multiplier); *Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010) (awarding 5.85 multiplier), *aff'd*, 658 F.3d 629 (7th Cir. 2011).

In sum, Lead Counsel's requested fee award is reasonable under both the percentage method and lodestar cross-check.

---

[5]     The Supreme Court and the Seventh Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflationary losses, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) ("A court may elect to use . . . current rates . . . as acceptable compensation for the delay in payment of fees."). Plaintiff's Counsel's Fee and Expense Declarations filed herewith include a description of the legal background and experience of Plaintiffs' Counsel, which supports the hourly rates submitted. *See* Exs. 6A-4, 6B-3.

### 4. The Contingent Nature of the Litigation and the Risk of Nonpayment Supports the Fee Request

As noted by the Seventh Circuit in *Synthroid*, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Thus, "[w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *Dairy Farmers*, 80 F. Supp. 3d at 847-48.

While Lead Counsel believe that Plaintiffs' claims are meritorious, Lead Counsel recognized that there were significant hurdles in this case from the outset that Plaintiffs would have to overcome to prevail in this complex securities fraud litigation. Plaintiffs' claims against Defendants involved more than 100 alleged false or misleading statements relating to, among other things, Defendants' public statements that (i) they were engaged in disciplined and targeted cost cutting at Kraft Heinz, (ii) they were reinvesting these savings in Kraft Heinz's brands, (iii) Kraft Heinz's accounting for its goodwill and intangible assets complied with GAAP throughout the Class Period, and (iv) the expense reductions and EBITDA growth achieved after the merger of Kraft and Heinz was a product of these sustainable cost-cutting initiatives. Plaintiffs alleged that, in truth, Defendants had indiscriminately cut costs throughout Kraft Heinz's sprawling business that had the effect of temporarily boosting EBITDA and margins but caused the permanent erosion of Kraft Heinz's brands, which, in turn, ultimately resulted in a $15 billion impairment charge and a return of pre-merger EBITDA performance. ¶¶ 132-34.

As discussed in the Joint Declaration, Plaintiffs faced significant risks in proving these claims that could have resulted in no recovery for the Settlement Class (and no compensation for

counsel). Plaintiffs' Counsel would have to present to a jury a massive amount of factual evidence across all of Kraft Heinz's businesses to establish the cost cutting and failure to reinvest in brands, vendors, and customers, and the impact of these policies on Kraft Heinz's brands and businesses. ¶¶ 135-37. Counsel would have to establish that Defendants *knew* that their policies were driving a decline in the value and sustainability of Kraft Heinz's brands and businesses and failed to take these declines into account when making their public statements. ¶ 139. This would prove very challenging.

In addition, Plaintiffs would need to convince a fact finder that Defendants—who owned or controlled 50% of the equity of Kraft Heinz—would take actions that arguably would adversely impact the value of their own investment. While one of Plaintiffs' principal counterarguments in this regard was that 3G Capital sold over $1 billion in Kraft Heinz stock during the Class Period, thus profiting from the short-term increase in the stock price, Defendants had strong arguments in response, including that 3G Capital's substantial sale was undertaken to fulfill redemption requests from its outside limited partners and thus, 3G Capital did not directly profit from that sale. ¶ 141.

Further, the large number of false statements at issue—over a hundred statements concerning multiple global brands and business areas, spanning four years—together with the nature of the corrective disclosures, which involved numerous separate pieces of negative news about Kraft Heinz's operations (both fraud- and non-fraud-related), created particular risks to establishing loss causation and the Settlement Class's full amount of damages. ¶¶ 142-52. This risk would have been particularly exacerbated if not all alleged misstatements could be established at trial, because proving what portion of stock declines related the sustained misstatements (rather than other disclosures) would be particularly challenging. ¶ 143.

These very significant litigation risks—among others—support the reasonableness of the

requested fee. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1036-37 (N.D. Ill. 2011); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002).

### 5. The Quality of Legal Services Rendered Supports the Fee Request

In evaluating a fee request, this Circuit has held that courts may consider the "quality of legal services rendered" by plaintiffs' counsel. *Taubenfeld*, 415 F.3d. at 600; *Synthroid*, 264 F.3d at 721. From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class. This case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised by Defendants. Lead Counsel practice extensively in the challenging field of complex class action litigation and have skillfully litigated these types of actions in courts across the country. *See* ¶ 177 and Exs. 6A-4 and 6B-3. In this case, Lead Counsel conducted an expansive investigation, which included reviewing a huge quantity of public material and conducting interviews with 320 former employees of Kraft Heinz; researched and briefed their opposition to Defendants' motions to dismiss; consulted with several experts; engaged in substantial discovery, including reviewing a substantial portion of the more than 15 million pages of documents obtained; and marshalled the extensive evidence and legal arguments into persuasive mediation briefs. ¶ 172. Lead Counsel respectfully submit that the quality of Plaintiffs' Counsel's efforts in the litigation and their substantial experience in complex class actions provided them with the leverage necessary to negotiate the Settlement.

The quality of opposing counsel is also an important factor in evaluating the work performed by Lead Counsel. *See Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Lead Counsel were opposed in this case by several preeminent national law firms—Paul, Weiss, Rifkind, Wharton & Garrison LLP, Jenner & Block LLP, and Kirkland & Ellis LLP—all

11

of which spared no effort in their zealous defense of the Action. ¶ 178. Notwithstanding this skilled opposition, Lead Counsel presented a strong case and demonstrated their willingness to continue to vigorously prosecute the claims asserted in the Action. The ability of Lead Counsel to obtain a highly favorable result for the Settlement Class while litigating against these extremely capable firms weighs in favor of granting the attorneys' fees sought.

6.     **The Reaction of Plaintiffs and the Settlement Class to Date**

Plaintiffs, which were actively involved in the prosecution and settlement of the Action and have actively supervised the work of counsel, have approved the requested fee. *See* Ex. 1, ¶ 9; Ex. 2, ¶ 9; Ex. 3, ¶ 9. This endorsement of the fee by Plaintiffs as fair and reasonable supports its approval. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*16 (S.D.N.Y. Dec. 23, 2009) ("public policy considerations support fee awards where, as here, large public pension funds, serving as lead plaintiffs, conscientiously supervised the work of lead counsel, and gave their endorsement to lead counsel's fee request").

In addition, in accordance with the Preliminary Approval Order, more than 1.6 million copies of the Postcard Notice have been mailed to potential Settlement Class Members and their nominees through August 7, 2023, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See* Ex. 5, at ¶¶ 11, 12. The notices advise potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in the amount of 20% of the Settlement Fund and for Litigation Expenses (including the reasonable costs and expenses of Plaintiffs) in an amount not to exceed $3.2 million. *See id.* Ex. 1, and Ex. 2 at p. 3 & ¶ 47.  The fees and expenses sought by Lead Counsel are within the amounts set forth in the notices. While the time to object does not expire until August 22, 2023, to date, just one objection to the request for attorneys' fees has been received, submitted by Larry D. Killion. ECF No. 479.

Mr. Killion's objection (together with any other objections that may be received) will be discussed in greater detail in Lead Counsel's reply papers, to be filed on September 5, 2023. Mr. Killion's boilerplate objection asserts that the 20% fee requested is excessive and unreasonable, but does not address any of the specific facts of this case. Mr. Killion's objection is virtually identical to series of other objections that he has submitted in unrelated, factually distinct cases—Mr. Killion has filed at least five objections since June 2022—all of which have been rejected (to the extent his objections have been ruled upon).[6] As discussed above, Lead Counsel respectfully suggest that a 20% fee requested is well within the range that courts have found reasonable in comparable cases and is well supported by the result achieved, the risks Lead Counsel assumed, and the quality and quantity of Lead Counsel's work.

### B. The Request for Payment of Litigation Expenses Should Be Approved

In addition to attorneys' fees, Plaintiffs' Counsel also seek payment for the Litigation Expenses they incurred in the Action. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses . . . ." *Bell*, 2019 WL 4193376, at *6. Plaintiffs' Counsel incurred a total of $2,656,091.93 in Litigation Expenses in connection with the prosecution and settlement of the Action. ¶ 187.

The expenses for which Plaintiffs' Counsel seek payment are all reasonable, necessarily

---

[6] *See, e.g.*, *La. Sheriffs Pension & Relief Fund v. Cardinal Health, Inc.*, No. 19-cv-03347 (S.D. Ohio July 11, 2023), ECF No. 113 (Ex. 20) (Killion submitted virtually identical objection to 30% fee request; not yet ruled upon); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, No. 20-cv-10041, slip op. at 3 (S.D.N.Y. July 19, 2023), ECF No. 181 (Ex. 21) ("The Court has considered the objection to the fee application filed by Larry D. Killion . . . and finds it to be without merit. The objection is overruled in its entirety."); *Reynolds v. FCA US LLC*, No. 19-cv-11745, slip op. at 4 (E.D. Mich. June 27, 2023), ECF No. 106 (Ex. 22) ("The Killion Objection's challenge to the contingent nature of the requested attorneys' fees is not well taken and inconsistent with the law of this Circuit."); *In re Nielsen Holdings PLC Sec. Litig.*, No. 18-cv-7143, Hearing Tr. at 10 (S.D.N.Y. July 20, 2022), ECF No. 159 (Ex. 23) ("I find that the one objection from Mr. Killion is flawed both as a matter of law and a matter of fact . . . .").

incurred, and directly related to the prosecution of the Action. These expenses include, among others, charges for experts, mediation fees, online research, copying costs, and postage and delivery expenses. All of these expenses are of the sort that would typically be charged to paying clients in the marketplace. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (reimbursable expenses included "expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation.").

As part of their request for Litigation Expenses, Lead Counsel also seek $114,340.00 in costs incurred by Plaintiffs directly related to their representation of the Settlement Class, as permitted by the PSLRA. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Plaintiffs took active roles in the litigation and have been fully committed to pursuing the Settlement Class's claims. *See* Ex. 1, ¶¶ 3-7; Ex. 2, ¶¶ 3-7; Ex. 3, ¶¶ 3-7. These efforts, which included reviewing pleadings and briefs filed in the Action, communicating regularly with Lead Counsel regarding case strategy and developments, gathering and producing extensive document discovery which included searches across their electronically stored documents, preparing for and sitting for depositions, attending the mediation, consulting with Lead Counsel regarding settlement negotiations, and evaluating and approving the Settlement, required Plaintiffs and their employees to dedicate time to the Action they otherwise would have devoted to their regular duties for Plaintiffs. *See* Ex. 1, ¶¶ 7, 13-15; Ex. 2, ¶¶ 7, 13-15; Ex. 3, ¶¶ 7, 14-15. The amounts requested by Plaintiffs are based on the number of hours Plaintiffs committed to the Action, multiplied by a reasonable hourly rate for each employee, and are supported by declarations that provide the name and title of each employee and breakdown of their hours by category of work.

The amounts requested, $12,780 for AP7, $73,950 for Union, and $27,610 for Booker, are reasonable and justified under the PSLRA, and Courts have routinely granted such awards to plaintiffs in similar cases. *See Walgreen Co.*, No. 15-cv-3187, slip op. at 3 (Ex. 9) (awarding $32,960 to lead plaintiff); *Pub. Emps.' Ret. Sys. of Miss. v. Treehouse Foods, Inc.*, No. 16-cv-10632, slip op. at 3 (N.D. Ill. Nov. 18, 2021), ECF No. 190 (Ex. 24) (awarding $47,935 to lead plaintiff); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 772 F.3d 125, 132-33 (2d Cir. 2014) (affirming a total of $453,000 in PSLRA awards to plaintiffs for time spent by their employees); *see generally In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where, as here, "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

The notices inform potential Settlement Class Members that Lead Counsel would apply for Litigation Expenses in an amount not to exceed $3.2 million, which may include reimbursement of Plaintiffs' costs. The total amount requested—$2,770,431.93, including $2,656,091.93 in Plaintiffs' Counsel's expenses and $114,340 in costs incurred by Plaintiffs—is substantially below the amount set forth in the notices. To date, there has been no objection to this request. ¶ 187.[7]

## III. CONCLUSION

Lead Counsel respectfully request that the Court: (i) award attorneys' fees in the amount of 20% of the Settlement Fund; (ii) award $2,656,091.93 for Plaintiffs' Counsel's reasonable Litigation Expenses; and (iii) award a total of $114,340 to Plaintiffs for their costs related to their representation of the Settlement Class.

---

[7]     Mr. Killion's objection is addressed only to the attorneys' fee request and does not object to the Litigation Expense request.

Dated:  August 8, 2023

Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul
Richard A. Russo, Jr.
Joshua A. Materese
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: snirmul@ktmc.com
        rrusso@ktmc.com
        jmaterese@ktmc.com

Jennifer L. Joost
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: jjoost@ktmc.com

*Counsel for Lead Plaintiff Sjunde AP-*
*Fonden and additional named Plaintiff*
*Booker Enterprises Pty Ltd. and co-Lead*
*Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
Katherine M. Sinderson
Jesse L. Jensen
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
Email: katiem@blbglaw.com
        salvatore@blbglaw.com
        jesse.jensen@blbglaw.com

*Counsel for Lead Plaintiff Union Asset*
*Management Holding AG and co-Lead*

16

*Counsel for the Settlement Class*