**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NEUROGRAFIX, a California corporation; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC., a California corporation; and IMAGE-BASED SURGICENTER CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> BRAINLAB, INC., a Delaware corporation; BRAINLAB AG, a German corporation; BRAINLAB MEDIZINISHE COMPUTERSYSTEME GMBH, a German corporation, <br><br> Defendants. | Civil Action No. 12-cv-6075 <br><br> Hon. Matthew F. Kennelly, Presiding <br><br> Magistrate Judge Jeffrey Cole <br><br> **2nd CORRECTED** <br><br> **REPLY TO BRAINLAB'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CLAIM CONSTRUCTIONS FROM OTHER CASES THAT ARE INCONSISTENT WITH CURRENT CLAIM CONSTRUCTION IN THIS CASE** <br><br> **ORAL ARGUMENT REQUESTED** |

<u>**REPLY TO BRAINLAB'S OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE
CLAIM CONSTRUCTIONS FROM OTHER CASES THAT ARE INCONSISTENT
WITH CURRENT CLAIM CONSTRUCTION IN THIS CASE**</u>

**I. Brainlab's Claim Of A Good Faith Belief Must Have A Factual Basis Allowing of Proof As Of 2004 Or At Least As Of 2009** ........................................................................................ **2**

**II. Jury Confusion Is What Has Drawn Brainlab To This Retroactive Effort To Turn Bad Faith Into An Unsupportable Allegation Of Good Faith** ........................................................ **5**

**III. Brainlab's Case For "Good Faith Belief" Is Counter To A Specific Ruling By The United States Supreme Court** ......................................................................................................... **7**

**IV. Judicial Estoppel As To Invalidity Contentions** ...................................................................... **9**

**V. Conclusion** ............................................................................................................................... **10**

**Reply to Opposition – MTE Claim Constructions from Other Cases -** 1

## I. BRAINLAB'S CLAIM OF A GOOD FAITH BELIEF MUST HAVE A FACTUAL BASIS ALLOWING OF PROOF AS OF 2004 OR AT LEAST AS OF 2009

In Brainlab's argument it is presumed that if it can be shown post-hoc that they might have had a good faith belief of non-infringement, then they are entitled to it. However, there is a factual evidence-based inquiry that is required here.

The evidence is clear – Brainlab believed that it was not infringing because it did not manufacture MRI scanners:

Brainlab believes that this litigation is wholly frivolous.

When this case was brought against Brainlab, the basis for the case was your erroneous assumption that Brainlab sold MRI scanners

Thus, we demand that you obtain and preserve any documents, including those in your former counsel's possession, relating to: 1) any pre-suit investigation conducted before suing Brainlab; and 2) any investigation of NeuroGrafix's decision to maintain this case after NeuroGrafix determined that Brainlab neither sells MRIs nor controls their operation. We also demand that you maintain any documents relating to the withdrawal of Russ, August & Kabat as counsel for NeuroGrafix.

Letter of May 8, 2017 from Campbell to Filler MDL Dkt. #396-2, page 1.

The proposed pleading contains allegations that both Dr. Filler and his previous counsel know to be false—namely that Brainlab sells MRI hardware/devices.

Letter of June 14, 2017 from Ryland to Rajwani MDL Dkt. #437-5, page 1, last paragraph.

Unfortunately, these statements did not deter Plaintiffs from dragging the Court and Brainlab through costly litigation based on alleged sales of MRI devices.

Letter of June 14, 2017 from Ryland to Rajwani MDL Dkt. #437-5, page 3, 3rd paragraph.

This is exactly a bad faith argument because there was never an assertion that Brainlab sold infringing MRI scanners. Brainlab demands that NeuroGrafix dismiss the case or face

**Reply to Opposition – MTE Claim Constructions from Other Cases -** 2

Rule 11 sanctions because Brainlab does not manufacture MRI scanners.

Filler made clear what the issue was in 2010:

There is no question that you perform tractrography and Fractional anisotropy analysis. This is the purpose of the advertisement from 2005 attached and it is the purpose of the product advertised on your web site last week (see attached).

The key features list on the attached current web page leaves nothing to doubt or imagination.

In order for your advice to be convincing to us, you would need to show us arguments that explain either why you have prior art showing that our patent is invalid or responding to the detail of claims 36, 39, 50 and a number of others showing what it is about your practice of DTI that is somehow not covered in the full detail provided in the specification and claims of US 5,560,360.

Email from Filler to Vilsmeier of January 8, 2010 ND-IL Dkt. #97-2. This was an effort, which Brainlab rejected, to trigger an additional review. NeuroGrafix had sent an email to Brainlab on May 8, 2009, but never received a reply. Brainlab claims that it mailed the following letter – which it provided electronically to NeuroGrafix in response to the further inquiry in January of 2010:

Feldkirchen, 20.05.2009

**US Patent 5,560,360: Image Neurography And Diffusion Anisotropy Imaging"**

Dear Dr. Filler,

thank you for your email from May 8, 2009 and your license offer. We carefully evaluated the '360' patent and came to the conclusion that we are not interested in taking a license. The patent claims MRI systems and special MRI measurement methods, which are not part of our business.

Sincerely,

J. Weiß

Dr. Jurij Weiß
IP Manager

Letter of May 20, 2009 from Brainlab to NeuroGrafix MDL Dkt. #464-1.

Brainlab asserts it was completely unaware of this patent until May 9, 2009, but was rapidly certain – within 10 days – that it was not infringing. However, it is clear that there

**Reply to Opposition – MTE Claim Constructions from Other Cases - 3**

was no reliance on the vector/tensor argument until many years later. If the belief that eigenvectors are tensors is the implausible basis of their decision to ignore the patent – they would certainly have said so in this letter. It is demonstrably a post-hoc idea and cannot dislodge the plain evidence that they did not have a good faith reliance on a tensor/vector difference. This is particularly the case since tensors are vectors and vectors are tensors. This argument is only effective in retrospect, in bad faith, relying only on jury confusion.

In response to the NeuroGrafix email of January 8, 2010 – after the elapse of seven months, Brainlab still does not mention the alleged tensor vector "good faith" rejection basis:

**From:** Jurij Weiss <jurij.weiss@brainlab.com>
**Date:** Fri, 8 Jan 2010 15:34:49 +0100
**To:** Aaron Filler <afiller@earthlink.net>
**Subject:** FW: Cessation of DTI tractography by BrainLab and its customers

Dear Mr. Filler,

our GM forwarded to me your last email regarding your license offer for the US Patent 5,560,360 ("Image Neurography and Diffusion Anisotropy Imaging"). Please be informed that I already sent you a response by mail in May 2009 (see attachment). We carefully evaluated the '360' patent and came to the conclusion that we are not interested in taking a license. The patent claims MRI systems and special MRI measurement methods, which are not part of our business.

Best regards
Jurij Weiß

----------------------------------

Dr. Jurij Weiß
IP Manager

BrainLAB AG
Legal Department

T: +49 89 99 15 68 – 481
F: +49 89 99 15 68 – 497
www.brainlab.com <http://www.brainlab.com>

Kapellenstr.12, 85622 Feldkirchen, Germany
Sitz d. Gesellschaft: Kirchheim b. München, • Handelsregister: München HRB 135 401
Vorstand: Stefan Vilsmeier (Vorsitz), Rainer Birkenbach, Joseph Doyle, Stephan Holl • Vorsitzender d.
Aufsichtsrates: Dietrich von Buttlar

Email from Jurij Weiss of January 8, 2010, ND-IL Dkt. #150-2, p2/4.

**Reply to Opposition – MTE Claim Constructions from Other Cases** - 4

It is clear that the assertion that Brainlab based its decision not to license on a bad faith irrelevant assertion that Brainlab did not sell MRI systems and did not use special measurement methods. Two wholly irrelevant reasons, but clearly set forth.

For Brainlab to exculpate itself as it is now trying to do – it would have to show proof that the reason they didn't license was that it was their belief that eigenvector processing did not constitute vector processing. However, they did not develop that theory until after 2017 – well after the infringement period.

As made clear recently, there must be some sign that the opinion was developed before the countervailing ruling (here the Claim Construction of the MDL Court in this matter and there must be some credible argument that there was some basis that Brainlab would have been surprised by this, see *BookIt Oy v. Bank of America Corp.*, Case 19-2142 *8, (Fed.Cir. 2020).

## II. JURY CONFUSION IS WHAT HAS DRAWN BRAINLAB TO THIS RETROACTIVE EFFORT TO TURN BAD FAITH INTO AN UNSUPPORTABLE ALLEGATION OF GOOD FAITH

Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

The technical definitions of eigenvectors "vectors" and "tensors" have already been addressed by the MDL Court at length. Allowing Brainlab to introduce evidence muddling the technical definitions of eigenvectors and tensors, implying that these scientific terms are mutually exclusive, would unquestionably, unnecessarily, and detrimentally confuse the jury.

**Reply to Opposition – MTE Claim Constructions from Other Cases - 5**

Eigenvectors ("vectors") are first order tensors ("tensors"). *See: Three Visual Methods: Envisioning Tensors Creating Eigenvalue-Eigenvector Glyphs,(Exh. A)*. Brainlab does not present any evidence and cannot present a single qualified witness to testify that Eigenvectors cannot be vectors and also first order tensors. This is not a question of fact or law, but an established scientific principle that should not be misrepresented to a jury as if there is dispute as to these terms amongst the scientific community. To allow Brainlab to erroneously present its argument that vectors cannot be tensors – end of case – would allow Brainlab to create unnecessary sideshows and mini-trials on issues that are already settled, and of little relevance. Brainlab only presented this argument at trial because it knew that should it attempt to misrepresent that vectors could not be tensors to this Court, that the Court would be able to review numerous scientific sources by NeuroGrafix that clearly controvert that erroneous argument, and would move for a *motion in limine* barring it for the very reason of jury confusion. Indeed, if Brainlab's genuinely believed that vectors could not be tensors and therefore, Brainlab could not possibly infringe the 360' patent, it would have contended so in its unrelenting yet consistently denied motions to dismiss and motions for Rule 11 sanctions. Any motions by Brainlab advocating for this fallacious concept have ultimately been denied in the MDL Court and Brainlab sought only to present this position at trial in order to cause jury confusion and surprise to NeuroGrafix.

Brainlab has provided no foundation to support its definition that vectors cannot be tensors; it has provided no expert evidence regarding its scientific correctness or probative value. There is certainly no evidence that Brainlab held this mistaken belief on the morning of May 10, 2009. Introducing vectors under a misrepresented definition [that it cannot be a tensor] would create too high a risk of jury confusion as to one of the basic key terms that will be used throughout the trial and prejudicially create a distracting mini-trial on the issue of whether a vector can be a tensor. *Martin v. City of Chicago*, No. 15-cv-04576, 2017 WL 56633, at 5 (N.D. Ill. Jan 5, 2017). While Brainlab argues that it seeks to use the evidence that vectors cannot be

**Reply to Opposition – MTE Claim Constructions from Other Cases** - 6

tensors to rebut NeuroGrafix's contention that Brainlab infringes the patent, and the evidence is probative for this purpose, the evidence itself, that vectors cannot be tensors, is inadmissible. Brainlab has provided no evidence that vectors cannot also be tensors, and merely points to the lack of the word "tensor analysis" in Claim 36 as its basis that it did not have the requisite intent to induce infringement of the patent.

Brainlab does not provide any indication of how its contention that eigenvectors cannot be tensors is reliable and therefore probative. Resultantly, Brainlab has provided no basis to conclude that it could not infringe on the basis of this misrepresentation that vectors are not tensors and the confusion would be highly prejudicial to the jury with no real probative purpose. The issues sought to be explained to the jury are technical enough, coupled with the time constrains to explain said technical information; there is no time or probative value to lead the jury on a wild goose chase by confusing well-established technical terms just because it benefits Brainlab to do so. See *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 909 (7th Cir. 2016) (citing a Third Circuit case for the proposition that "because government presented no evidence of particular dog's training and accuracy there was no record basis for concluding that the drug dog's alert bolsters the government's case").

We do have evidence of Brainlab's contemporary thinking on the issue of potential infringement and it is clear that this did not include the vector/tensor excuse.

## III. BRAINLAB'S CASE FOR "GOOD FAITH BELIEF" IS COUNTER TO A SPECIFIC RULING BY THE UNITED STATES SUPREME COURT

Specifically, the **United States Supreme Court**, looking at the exact same case that Brainlab cites to this Court, **established the opposite of what Brainlab wants** this Court to allow:

> Holding: The Supreme Court, Justice Kennedy, addressing an issue of first impression, held that a defendant's belief regarding patent validity is not a defense to a claim of induced infringement.

**Reply to Opposition – MTE Claim Constructions from Other Cases -** 7

> The court saw "no principled distinction between a good-faith belief of invalidity and a good-faith belief of non-infringement for the purpose of whether a defendant possessed the specific intent to induce infringement of a patent."

*Commil USA LLC v. Cisco Systems* 135 SCt. 1920,1925 (US 2015) referring to the similarity of

the preliminary investigation by citing the 2013 Court of Appeals case.

> There are also practical reasons not to create a defense based on a good-faith belief in invalidity. First and foremost, accused inducers who believe a patent is invalid have various proper ways to obtain a ruling to that effect. They can file a declaratory judgment action asking a federal court to declare the patent invalid. See *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). They can seek inter partes review at the Patent Trial and Appeal Board and receive a decision as to validity within 12 to 18 months. See § 316. Or they can, as Cisco did here, seek ex parte reexamination of the patent by the Patent and Trademark Office. § 302. And, of course, any accused infringer who believes the patent in suit is invalid may raise the affirmative defense of invalidity. § 282(b)(2). If the defendant is successful, he will be immune from liability.

*Ibid at* 1930. In short, there are multiple acceptable methods to establish the good faith belief.

Brainlab might have written it down somewhere, that they could now point to. They might have

obtained an opinion of counsel. They might even have asserted the issue with vigor before five

years into this case had elapsed. Brainlab did none of those things, nor did it take any of the steps

recommended at Commil 1930 above in the Supreme Court opinion.

The result of these holdings is that the good-faith belief of non-infringement must stand

on specific factual evidence in support of the good-faith belief. The issue was whether good faith

belief in invalidity was exculpatory just as good faith belief in non-infringement might be. For

instance, if Brainlab believed it was infringing but, in bad faith proposed a post-hoc justification

after it was sued, then the belief asserted now, being different from the original statement – is in

bad faith.  If Brainlab had a good faith belief it was not infringing – in light of the specific

warning in the January 2010 email from NeuroGrafix, then its remedies are exactly as the

Supreme Court set forth – filing a declaratory judgment action (as GE did in a similar case in

relation to the '360 patent, seek a review by the Patent Trial and Appeal Board (as Philips did in

**Reply to Opposition – MTE Claim Constructions from Other Cases -** 8

a similar case in relation to the '360 patent).

## IV. JUDICIAL ESTOPPEL AS TO INVALIDITY CONTENTIONS

Brainlab's principal prior citation to the vector/tensor issue was to reply to assert a defense of invalidity, where NeuroGrafix asserted -

> In performing this post-processing, *the software performs vector processing* when it performs a diagonalization algorithm on the acquired data. The result of this diagonalization algorithm is a set of *eigenvectors* and eigenvalues that are data representative of the anisotropic diffusion exhibited by the structures in the regions being imaged

MDL Dkt. #93-1 p13-15/83 – NeuroGrafix Infringement Contentions

Brainlab responds in its Invalidity Contentions:

> Plaintiffs contend that each Defendant satisfies this limitation because the software performs a diagonalization algorithm on the acquired data. *Douek teaches tensor analysis*, including the use of a diagonalization algorithm. Thus, at least under Plaintiffs' interpretation, this limitation is present in Douek. Further, vector processing (at least as interpreted by Plaintiffs in their infringement contentions) was well known to one of ordinary skill of the art at the time of the claimed invention, and one of ordinary skill in the art would understand, reading *Douek, that vector processing* would be used to generate data representative of anisotropic diffusion exhibited by said selected structure

MDL Dkt. #110 p80/1183 – Brainlab Invalidity Contentions. If Douek's (ND-IL Dkt. #193-21) tensor analysis anticipates the '360 patent's Claim 36d vector processing, then Brainlab has mentioned the issue once before, but there oppositely asserts invalidity of vector processing by the use of tensor analysis.

In this situation, because a final judgment of dismissal with prejudice of Brainlab's Invalidity Counter Claim was a result of the same litigation, Brainlab cannot now argue oppositely that Douek's tensor analysis is not vector processing.

**Reply to Opposition – MTE Claim Constructions from Other Cases -** 9

## V. CONCLUSION

For the reasons set forth above and in the December 16, 2020 Memorandum in Support

of this Motion, the Court should exclude the conflicting claim construction. The entire reason for

the Markman Claim Construction process is to settle these technical language issues early in the

case, before discovery. Introducing the issue as a surprise maneuver to attack and discredit the

inventors at trial is to rely specifically on confusion about a highly technical mathematics and

physics issue which the MDL Court resolved on a painstakingly detailed basis previously. The

grounds for confusion is obvious. Brainlab has provided no argument as to why processing of

eignenvectors is not vector processing because there is no valid argument it can make. It can

only rely on confusion and should not be allowed to deploy this as an FRE 403 violation. The

probative value is essentially absent and the confusion will be severe.

Date: January 14, 2021

/S/ Aaron G. Filler
Aaron G. Filler, Esq.


Aaron G. Filler, Esq. (PHV, CA No. 302956)
(afiller@tensorlaw.com)
Alex R. Straus, Esq.
(PHV, CA No. 321366, MA No.677434)
(astraus@tensorlaw.com)
Chanel Katiraie, Esq. (PHV, CA No. 315825)
(ckatiraie@tensorlaw.com)
**Tensor Law P.C.**
900 Wilshire Blvd., Ste. 314
Santa Monica, CA 90401
Tel: (310) 450-9689
Christine S. Kim, Esq.,  (IL ARDC 6327157)
(ckim@tensorlaw.com)
**Tensor Law P.C.**
55 E. Monroe St.
Chicago, IL 60603

*Attorneys for Plaintiffs Neurography*
*Institute Medical Associates, Inc., NeuroGrafix,*
*Image-Based Surgicenter Corporation, and*
*Aaron G. Filler*

**Reply to Opposition – MTE Claim Constructions from Other Cases -** 10

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document 2nd **CORRECTED - REPLY TO BRANLAB'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CLAIM CONSTRUCTIONS FROM OTHER CASES** was served on January 14, 2021 as follows:

*Via Filing Via this Court's CM-ECF System, which caused a copy to be served on all registered users by E-mail:*

Jay R. Campbell, Esq. (admitted pro hac vice)
David A. Bernstein, Esq. (admitted pro hac vice)
Kelsey A. Ewing, Esq. (admitted pro hac vice)
**TUCKER ELLIS LLP**
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5009
E-mail: jay.campbell@tuckerellis.com


James William Mizgala, Esq.
Illinois State Bar No. 6271760
**Tucker Ellis LLP**
233 South Wacker Drive
Suite 6950
Chicago, IL 60606
(312) 624-6307
Email: james.mizgala@tuckerellis.com


*Counsel for Defendants:*
*Brainlab AG;*
*Brainlab, Inc.*

Date: January 14, 2021                     */S/ Aaron G. Filler*
                                           Aaron G. Filler, Esq.