**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | C.A. No. 1:19-cv-01339<br><br>Honorable Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I. BACKGROUND ....................................................................................................2

II. CLAIMS ADMINISTRATION..............................................................................3

    A. Disputed Claims........................................................................................4

    B. Late Claims and Final Cut-Off Date .........................................................6

III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ..............................7

IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .....................8

    A. Initial Distribution of the Net Settlement Fund ........................................8

    B. Additional Distribution(s) of the Net Settlement Fund...........................10

V. RELEASE OF CLAIMS.......................................................................................12

VI. CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*In re Baxter International, Inc. Sec. Litig.*,
  No. 1:19-cv-07786 (N.D. Ill. August 5, 2022), ECF No. 80 ...................................................12

*Boutchard v. Gandhi*,
  No. 1:18-cv-07041 (N.D. Ill. April 18, 2024), ECF No. 163 ...................................................13

*Perkins v. Am. Nat'l Ins. Co.*,
  2012 WL 2839788 (M.D. Ga. July 10, 2012)...........................................................................12

*Pierrelouis v. Gogo Inc.*
  No.1:18-cv-04473 (N.D. Ill. June 20, 2024), ECF No.175.......................................................13

*Shah v. Zimmer Biomet Holdings, Inc.*,
  2020 WL 7392796 (N.D. Ind. Dec. 14, 2020) ..........................................................................14

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633
  (9th Cir. Nov. 7, 2016)..............................................................................................................12

*In re Stericycle, Inc. Sec. Litig.*,
  No. 1:16-cv-07145 (N.D. Ill. August 27, 2024), ECF No. 188 ................................................12

**OTHER AUTHORITIES**

Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for
  Approval of Distribution Plan, *In re Baxter International, Inc. Sec. Litig.*, No.
  1:19-cv-07786 (N.D. Ill. July 7, 2022), ECF No. 77 ...............................................................12

Memorandum of Law in Support of Lead Plaintiffs' Motion for Approval of
  Distribution Plan, *In re Stericycle, Inc. Sec. Litig.*, No. 1:16-cv-07145 (N.D.
  Ill. December 15, 2023), ECF No. 185 ....................................................................................12

Court-appointed Lead Plaintiffs Sjunde AP-Fonden and Union Asset Management Holding AG, and additional named plaintiff Booker Enterprises Pty Ltd. (collectively, "Plaintiffs"), respectfully move for entry of the [Proposed] Order Approving Distribution Plan ("Class Distribution Order") for the net proceeds of the Settlement in the above-captioned securities class action ("Action"). The proposed Distribution Plan is included in the accompanying Declaration of Luiggy Segura ("Segura Declaration" or "Segura Decl."), submitted on behalf of the Court-authorized Claims Administrator, JND Legal Administration ("JND").[1]

Plaintiffs agreed to settle the Action in exchange for a cash payment of $450,000,000 for the benefit of the Settlement Class, which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. The Claims Administrator has completed processing the Claims received for the Settlement and, through their current Motion, Plaintiffs seek the Court's approval to distribute the Net Settlement Fund to Settlement Class Members who submitted eligible Claims.

The Class Distribution Order will, upon being entered by the Court, permit JND to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order will: (i) approve JND's administrative determinations accepting and rejecting the Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by JND as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise following the Initial Distribution; and

---

[1] Unless otherwise indicated in this Memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Segura Declaration or the Stipulation and Agreement of Settlement dated as of May 2, 2023 (ECF No. 475-3) ("Stipulation").

(iii) approve JND's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

As discussed below, there are five Claimants with outstanding requests for Court review of JND's administrative determination to reject their Claims ("Disputed Claims"). Upon the filing of the Motion, Lead Counsel will send each Claimant with a Disputed Claim a copy of the Motion, this Memorandum, the Segura Declaration, Exhibit D to the Segura Declaration, the supporting documentation that relates to the Claimant's Disputed Claim, and the proposed Class Distribution Order. Lead Counsel will inform these Claimants that they do not need to take any further action to have the Court consider their dispute; however, if these Claimants wish to make an additional submission, they should direct it to the Court's attention with a copy to Lead Counsel postmarked no later than February 11, 2025. If any such submission is made, Lead Counsel will submit a reply by February 18, 2025 addressing such submission.

Pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 19, 23, 25; *see also* Notice ¶ 40. Nonetheless, Lead Counsel have conferred with Defendants' Counsel and Defendants state that they take no position on the Motion.

**I.        BACKGROUND**

On September 12, 2023, the Court entered the Judgment Approving Class Action Settlement (ECF No. 490) approving the $450 million all-cash Settlement of this Action and entered an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 491) approving the plan for allocating the Net Settlement Fund to the Settlement Class. The Settlement's "Effective Date" under paragraph 33 of the Stipulation has now occurred, and accordingly the Net

2

Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 28 of the Stipulation, Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the proposed Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 478) ("Preliminary Approval Order"), JND mailed the Postcard Notice and/or the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Segura Decl. ¶ 2. In total, JND has disseminated 1,665,281 Postcard Notices and 5,611 Notice Packets to potential Settlement Class Members, brokers, and other nominees. *Id*. ¶ 4. The notices informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than October 10, 2023. *Id*. ¶ 7.

## II.     CLAIMS ADMINISTRATION

As set forth in the Segura Declaration, through January 16, 2025, JND received and processed 592,618 Claims. Segura Decl. ¶ 7. All Claims received through January 16, 2025, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id*.), and JND has worked with Claimants to help them perfect their Claims in order to be eligible to receive a payment from the Settlement. *See id*. ¶¶ 19-32. Many of the Claims received were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by JND. *Id*. ¶¶ 19, 22.

3

If JND determined a Claim to be defective or ineligible, JND sent a letter (if the Claimant or filer submitted a paper Claim or a Claim via the Settlement Website) or an email (if the Claimant or filer submitted an Electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or JND would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Example Deficiency Notices are attached as Exhibits A, B, and C to the Segura Declaration.

Of the 592,618 Claims that are the subject of Plaintiffs' Motion, JND has determined that 280,309 Claims are acceptable in whole or in part, and that 312,309 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund, largely because their trading patterns did not calculate to a Recognized Claim under the Court-approved Plan of Allocation. Segura Decl. ¶¶ 39-42. Plaintiffs respectfully request that the Court approve JND's administrative determinations accepting and rejecting the Claims as set forth in the Segura Declaration.

### A. Disputed Claims

JND carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph 26(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of their right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of their Claim and request Court review of JND's administrative determination of the Claim. *Id*. ¶¶ 20, 23, and Exhibits A and B.

4

With respect to the fully processed Claims, JND received thirty-two (32) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, JND contacted the Claimants requesting Court review and attempted to answer all questions, to explain JND's administrative determination with respect to their Claim, and to facilitate the submission of missing information or documentation where applicable. *Id.* ¶ 32. As a result of these efforts, twenty (20) of these Claimants resolved their deficiencies, withdrew their requests for Court review, and their Claims are recommended for approval. *Id*. Seven (7) more of these Claimants withdrew their requests for Court review after receiving further explanation of the reasons for JND's determination. *Id*. Currently five (5) Claims remain disputed and are being submitted to the Court for resolution (i.e., the Disputed Claims). *Id*.

Exhibit D of the Segura Declaration contains a copy of each Disputed Claim with its supporting documentation and sets forth the reasons for JND's rejection of each Disputed Claim. *Id*. For privacy reasons, the documents included in Exhibit D have been redacted to remove personal information such as street addresses, email addresses, telephone numbers, account numbers, Taxpayer ID, Social Security, or Social Insurance Numbers, and all financial and transaction information not related to the Claimants' transactions in Kraft Heinz common stock or options purchased/acquired/sold during the Class Period.

JND recommends the five (5) Disputed Claims for rejection. *Id*. Specifically, Disputed Claim Nos. 1 and 2 (Exhibits D-1 and D-2) are recommended for rejection because the Claimants sold all of the shares of Kraft Heinz common stock they purchased during the Class Period before the first alleged corrective disclosure on November 2, 2018, and thus were not damaged by the alleged fraud. According to the Plan of Allocation, for shares of common stock sold prior to November 2, 2018, the "Recognized Loss Amount will be $0.00." *See* Notice ¶¶ 70, 72(A).

5

Disputed Claim No. 3 (Exhibit D-3) is recommended for rejection because the Claimant purchased and sold their shares of Kraft Heinz common stock between February 22, 2019 and March 13, 2019, during a period between two consecutive alleged corrective disclosure dates (from February 22, 2019 through August 7, 2019) when the alleged artificial inflation in the stock remained constant. According to the Plan of Allocation, in order to have a Recognized Loss Amount the Claimant must have "held Kraft Heinz common stock…over at least one of the days when corrective information was released to the market…"; therefore, the Claim does not calculate to a Recognized Loss. *See* Notice ¶¶ 70, 72(B), Table A.

Disputed Claim Nos. 4 and 5 (Exhibits D-4 and D-5) are recommended for rejection because the Claimant who submitted both of these Claims failed to provide documentation of any purchase of Kraft Heinz common stock or call options, or sale of Kraft Heinz put option contracts during the Class Period, which is needed to calculate a Recognized Loss Amount/Recognized Claim. *See* Notice ¶ 71.

The Segura Declaration explains in detail the calculations JND conducted that demonstrate the Disputed Claims do not calculate to a Recognized Claim. *Id*. Lead Counsel have reviewed the Disputed Claims and JND's determinations and concur that the Disputed Claims should be rejected for the reasons set forth in the Segura Declaration.

### B. Late Claims and Final Cut-Off Date

The 592,618 Claims received through January 16, 2025 include 23,958 Claims that were postmarked or received after October 10, 2023, the Court-approved Claim submission deadline. *Id*. ¶¶ 33, 41. These late Claims have been fully processed, and 8,862 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 8,862 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the

amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 33. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; Notice ¶ 41. Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Plaintiffs respectfully request that the Court order that any ***new*** late Claims (and any requested adjustments to previously submitted Claims that would result in an increased Recognized Claim) received after January 16, 2025, shall be barred (*see also* Segura Decl. ¶45(f)) – subject to the proviso that if Lead Counsel later determine that an additional distribution is not cost-effective (*see* Segura Decl. ¶45(e)), then any post-January 16, 2025 Claimants may, at the discretion of Lead Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

### III.  FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, JND, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Segura Decl. ¶ 2. JND's fees and

7

expenses for its work performed through December 31, 2024, are $2,308,151.69, and its estimated fees and expenses for the work to be performed in connection with the Initial Distribution are $169,798.81, which together total $2,477,950.50. *Id*. ¶ 44.[2] The brokerage firms and nominees charged JND another $676,841.94 for their work providing names and addresses of potential Settlement Class Members and forwarding notices to their clients. *Id*. To date, JND has received payment in the amount of $2,124,462.99 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $1,030,329.45 payable to JND, which amount includes the estimated fees and expenses to be incurred by JND in connection with the Initial Distribution. *Id*. Lead Counsel reviewed JND's invoices and respectfully request on behalf of Plaintiffs that the Court approve all of JND's fees and expenses.

## IV.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.     Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, JND will distribute 90% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this Motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Segura Decl. ¶ 45(a). In the Initial Distribution, JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 45(a)(1). JND will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. JND will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these

---

[2] Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distributions to Authorized Claimants. *Id*.

Claimants will not receive any payment from the Net Settlement Fund and will be so notified by JND. *Id*. ¶ 45(a)(2). JND will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 45(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 45(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 90% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 45(a)(5). The remaining 10% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise following the Initial Distribution. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 45(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 45(b) of the Segura Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 45(c).

9

B.  **Additional Distribution(s) of the Net Settlement Fund**

After JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, JND will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 45(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with JND, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after January 16, 2025, JND will process the Claims. *Id.* ¶ 45(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after January 16, 2025, may be paid in accordance with paragraph 45(f) of the Segura Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel propose that such remaining funds (if there are any) be contributed to the National Consumer Law Center ("NCLC"). Typically, distribution of residual funds has been found to be no longer "cost-effective" where residual funds are $30,000 or less, and in most cases *cy pres* distributions in other comparable cases have been even smaller (under $10,000).

Lead Counsel propose that the NCLC be designated as the "non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Lead Counsel" referenced in the Court-approved Plan of Allocation. *See* Notice ¶ 90.

NCLC is a private, non-partisan, non-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See Financials*, National Consumer Law Center, https://nclc.org/about-us/financials/ (last visited Jan. 23, 2025). For over 50 years, NCLC has worked to build and strengthen a legal network to provide legal services addressed to two main goals: improving access to the legal system for all people and enabling advocates to seek remedies for low-income people where needed. *See History*, National Consumer Law Center, https://nclc.org/about-us/history/ (last visited Jan. 23, 2025). NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See Mission,* National Consumer Law Center, https://nclc.org/about-us/mission/ (last visited Jan. 23, 2025). "NCLC uses its unmatched expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy." *See About Us*, National Consumer Law Center, https://nclc.org/about-us/ (last visited Jan. 23, 2025). NCLC has received "the highest ratings from charity watchdogs" and "welcomes *cy pres* designations of unclaimed settlement funds from class action lawsuits, which are used to support [its] consumer rights work advancing the core interests of underlying class members." *See History*, National Consumer Law Center, https://nclc.org/about-us/history/ (last visited Jan. 23, 2025); *Cy Pres*, National Consumer Law Center, https://nclc.org/get-involved/ways-to-give/cy-pres/ (last visited Jan. 23, 2025). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g.*, Memorandum of Law in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan, *In re Stericycle, Inc. Sec. Litig.*, No. 1:16-cv-07145 (N.D. Ill. December 15, 2023), ECF No. 185 & Order Approving

11

Distribution Plan, *In re Stericycle, Inc. Sec. Litig.*, No. 1:16-cv-07145 (N.D. Ill. August 27, 2024), ECF No. 188, attached hereto as Exhibit 1; Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Approval of Distribution Plan, *In re Baxter International, Inc. Sec. Litig.*, No. 1:19-cv-07786 (N.D. Ill. July 7, 2022), ECF No. 77 & Order Approving Distribution Plan, *In re Baxter International, Inc. Sec. Litig.*, No. 1:19-cv-07786 (N.D. Ill. August 5, 2022), ECF No. 80, attached hereto as Exhibit 2; *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633 (9th Cir. Nov. 7, 2016); *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 30. Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims

Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, Class Distribution Order at 9, *Pierrelouis v. Gogo Inc.*, No.1:18-cv-04473 (N.D. Ill. June 20, 2024), ECF No.175, attached hereto as Exhibit 3 ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund, Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiff or Plaintiff's Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and this Order."); Order Approving Distribution of Net Settlement Fund at 4, *Boutchard v. Gandhi,* No. 1:18-cv-07041 (N.D. Ill. April 18, 2024), ECF No. 163, attached hereto as Exhibit 4 (approving substantially similar language in order authorizing distribution of settlement proceeds); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 7392796, at *2 (N.D. Ind. Dec. 14, 2020) (same).

13

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: January 27, 2025

Respectfully submitted,

**KESSLER TOPAZ
   MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul
Richard A. Russo, Jr.
Joshua A. Materese
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: snirmul@ktmc.com
           rrusso@ktmc.com
           jmaterese@ktmc.com

Jennifer L. Joost
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: jjoost@ktmc.com

*Counsel for Lead Plaintiff Sjunde AP-Fonden and additional named Plaintiff Booker Enterprises Pty Ltd. and co-Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano
Katherine M. Sinderson
Jesse L. Jensen
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

14

Facsimile: (212) 554-1444
Email: salvatore@blbglaw.com
katiem@blbglaw.com
jesse.jensen@blbglaw.com

*Counsel for Lead Plaintiff Union Asset Management Holding AG and co-Lead Counsel for the Settlement Class*