**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | C.A. No. 1:19-cv-01339<br><br>Honorable Jorge L. Alonso |

**DECLARATION OF LUIGGY SEGURA IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

I, LUIGGY SEGURA, hereby declare under penalty of perjury as follows:

1.     I am the Vice President of Securities Class Actions at JND Legal Administration ("JND"). I am over 21 years of age and am not a party to the above-captioned action ("Action").[1] I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2.     Pursuant to the Court's May 11, 2023 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 478) ("Preliminary Approval Order"), JND was retained by Lead Counsel to serve as the Claims Administrator in connection with the Settlement of the Action. As Claims Administrator, JND has, among other things: (i) mailed the Postcard Notice and/or the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and together with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees; (ii) created and continues to maintain a toll-free telephone helpline for inquiries during the course of the administration; (iii) created and continues

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of May 2, 2023 (ECF No. 475-3) ("Stipulation"). The Settlement is contained in the Stipulation.

to maintain a website for the Settlement ("Settlement Website") and posted case-specific documents on it; (iv) caused the Summary Notice to be published; (v) provided, upon request, additional copies of the Notice Packet to potential Settlement Class Members, brokers, and other nominees; and (vi) received and processed each Claim Form received by the Claims Administrator (a "Claim").

3.      On September 12, 2023, the Court granted final approval of the Settlement in its Judgment Approving Class Action Settlement (ECF No. 490) and entered the Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 491). JND has completed processing all Claims received through January 16, 2025, in accordance with the terms of the Stipulation and the Court-approved Plan of Allocation set forth in the Notice, and hereby submits its administrative determinations accepting and rejecting the Claims in preparation for a distribution of the Net Settlement Fund to Authorized Claimants. JND also presents this declaration in support of Plaintiffs' Motion for Approval of Distribution Plan.

## DISSEMINATION OF NOTICE

4.      As more fully described in the Declaration of Luiggy Segura Regarding: (A) Dissemination of Postcard Notice and Notice Packet; (B) Publication of the Summary Notice; (C) Establishment of Call Center Services and Settlement Website; and (D) Report on Requests for Exclusion Received to Date (ECF No. 484-5) ("Mailing Decl.") and the Supplemental Declaration of Luiggy Segura Regarding: (A) Continued Dissemination of Notice; (B) Update on Call Center Services and Settlement Website; and (C) Report on Requests for Exclusion Received (ECF No. 488-1) ("Supp. Mailing Decl."), as of September 1, 2023, JND had mailed a total of 1,665,136 Postcard Notices and 5,611 Notice Packets to potential Settlement Class Members and nominees. Supp. Mailing Decl. ¶ 3. Since that date, 145 additional Postcard Notices have been disseminated.

In total, JND has disseminated 1,665,281 Postcard Notices and 5,611 Notice Packets to potential Settlement Class Members, brokers, and other nominees.

5.     JND established and continues to maintain the Settlement Website (www.KraftHeinzSecuritiesLitigation.com) and a toll-free telephone helpline (844-798-0760) to assist potential Settlement Class Members. The Settlement Website, which provides access to important documents relevant to the Settlement, and the telephone helpline enable Settlement Class Members to obtain information about the Settlement. In connection with establishing and maintaining the Settlement Website and toll-free telephone helpline, JND, among other things, formulated a system to ensure that proper responses were provided to all telephone and electronic inquiries. That work included training telephone agents to respond to inquiries specific to the Settlement; developing a series of common questions and the answers thereto known as Frequently Asked Questions or "FAQs"; loading key documents onto the Settlement Website; and programming the Settlement Website to permit the viewing and downloading of those documents.

6.     In accordance with paragraph 7(d) of the Preliminary Approval Order, on June 22, 2023, JND caused the Summary Notice to be published in *The Wall Street Journal* and released via *PR Newswire*. Mailing Decl. ¶ 12.

## **PROCEDURES FOLLOWED IN PROCESSING CLAIMS**

7.     Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Settlement Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to JND a properly executed Claim Form postmarked (if mailed) or online no later than October 10, 2023, together with adequate supporting documentation for the transactions and holdings reported in the Claim Form. Through January 16, 2025, JND has received and fully processed 592,618 Claims ("Presented Claims").

8.     In preparation for receiving and processing Claims, JND: (i) conferred with Lead Counsel to define the guidelines for processing Claims; (ii) created a unique database to store Claim details, images of Claims, and supporting documentation ("Settlement Database"); (iii) trained staff in the specifics of the Settlement so that Claims would be properly processed; (iv) formulated a system so that telephone and email inquiries would be properly responded to; (v) developed various computer programs and screens for entry of Settlement Class Members' identifying information and their transactional information; and (vi) developed a proprietary "calculation module" to calculate Recognized Claims pursuant to the Court-approved Plan of Allocation for the Net Settlement Fund set forth in the Notice.

9.     Settlement Class Members seeking to share in the Net Settlement Fund were directed in the Notice to submit their Claims to a post office box address specifically designated for the Settlement or to submit their Claims online through the Settlement Website. Notices returned by the United States Postal Service as undeliverable were reviewed for updated addresses and, where available, updated addresses were entered into the Settlement Database and notices were mailed to the updated addresses. Any correspondence received at the post office box was reviewed and, when necessary, appropriate responses were provided to the senders.

### PROCESSING CLAIMS

### A.     Paper Claims and Claims Submitted Via the Settlement Website

10.     Of the 592,618 Presented Claims, 25,433 Claims were submitted on paper (10,879) or via the online filing component of the Settlement Website provided for individual investors (14,554). Once received, paper Claims were opened and prepared for scanning. This process included unfolding documents, removing staples, copying nonconforming-sized documents, and sorting documents. This manual task of preparing the paper Claims is very laborious and time intensive. Once prepared, paper Claims were scanned into the Settlement Database together with

4

all submitted documentation. Subsequently, each Claim was assigned a unique Claim number. Once scanned, the information from each Claim Form, including the Claimant's name, address, and account number/information from the supporting documentation, and the Claimant's purchase/acquisition transactions, sale transactions, and holdings listed on the Claim Form, was entered into the Settlement Database. Once entered into the Settlement Database, each Claim was reviewed to verify that all required information had been provided. The documentation provided by the Claimant in support of the Claim was reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition transactions, sale transactions, and holdings listed on the Claim Form.

11.     To process the transactions detailed in the Claims, JND utilized internal messages to identify and classify deficiency or ineligibility conditions existing within those Claims. Appropriate messages were assigned to the Claims as they were processed. For example, where a Claim was submitted by a Claimant who did not have any eligible transactions in Kraft Heinz securities during the Class Period (e.g., the Claimant purchased Kraft Heinz securities only before or after the Class Period or the Claimant had no sale transactions in put options during the Class Period), that Claim would receive a "Claim-level" message that denoted ineligibility. Similar Claim-level ineligible messages were used to denote other ineligible conditions, such as duplicate Claims. These messages would indicate to JND that the Claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that Claim unless the deficiency was cured in its entirety. Examples of Claim-level messages are as follows:

- Inadequate Documentation Submitted for Entire Claim
- No Supporting Documentation Submitted for Entire Claim
- No Purchase Transaction in the Class Period

12. Because a Claim may be deficient only in part, but otherwise acceptable, JND utilized messages that were applied only to specific transactions within a Claim. For example, if a Claimant submitted a Claim with supporting documentation for all but one purchase transaction, that one transaction would receive a "transaction-level" message. The message indicated that although the transaction was deficient, the Claim was otherwise eligible for payment if other transactions in the Claim calculated to a Recognized Claim pursuant to the Court-approved Plan of Allocation. Thus, even if the transaction-level deficiency was never cured, the Claim could still be partially accepted. Examples of transaction-level messages are as follows:

- No Supporting Documentation for Specific Transaction/Position
- Inadequate Documentation for Specific Transaction/Position
- Illegible Documentation for Specific Transaction/Position

**B. Electronic Claims**

13. Of the 592,618 Presented Claims, 567,185 Claims were submitted electronically ("Electronic Claims"). Electronic Claims are typically submitted by institutional investors who may have hundreds or thousands of transactions during the Class Period or by filers submitting Claims on behalf of multiple beneficial owners ("Electronic Claim Filers" or "E-Claim Filers"). Rather than provide reams of paper requiring data entry, the E-Claim Filers either mail a computer disc or electronically submit a file to JND so that JND can upload all transactions to the Settlement Database.

14. JND maintains an electronic filing operations team ("Electronic Filing Team") to coordinate and supervise the receipt and handling of all Electronic Claims. In this case, the Electronic Filing Team reviewed and analyzed each electronic file received to ensure that it was formatted in accordance with JND's required format and to identify any potential data issues or inconsistencies within the file. If any issues or inconsistencies arose, JND notified the E-Claim

Filer. If the electronic file was deemed to be in an acceptable format, it was then loaded into the Settlement Database.

15.     Once each electronic file was loaded, the Electronic Claims were coded with messages to denote any deficient or ineligible conditions that existed within them. These messages are similar to those applied to paper Claims. In lieu of manually applying messages, the Electronic Filing Team performed programmatic reviews on Electronic Claims to identify deficient and ineligible conditions (such as, but not limited to, price out-of-range issues, out-of-balance conditions, transactions outside the Class Period, etc.). The output was thoroughly verified and confirmed as accurate.

16.     The review process also included message coding any Electronic Claims that were not accompanied by a signed Claim Form, which serves as a "Master Proof of Claim Form" for all Claims referenced on the electronic file submitted. This process was reviewed by JND's Electronic Filing Team and, when appropriate, JND contacted the E-Claim Filers whose submissions were missing information. This ensured that only fully completed Electronic Claims, submitted by properly authorized representatives of the Claimants, were considered eligible to participate in the Settlement.

17.     Finally, at the end of the process, JND performed various targeted reviews of the Electronic Claims. Specifically, JND used criteria such as the calculated Recognized Claim amounts and other identified criteria to message code and reach out to a selection of E-Claim Filers to request that various sample purchases, sales, and holdings selected by JND be documented by providing confirmation slips or other transaction-specific supporting documentation. These targeted reviews help to ensure that the electronic data supplied by Claimants does not contain inaccurate information.

7

## EXCLUDED PERSONS

18.     JND also reviewed all Claims to ensure that they were not submitted by or on behalf of "Excluded Persons" to the extent that the identities of such persons or entities were known to JND through the list of Defendants and other excluded persons and entities set forth in the Stipulation and the Notice and from the Claimants' certifications on the Claim Forms. JND also reviewed all Claims against the list of thirty-seven (37) persons and entities who were excluded from the Settlement Class pursuant to request. *See* ECF No. 490, Ex. 1.

## THE DEFICIENCY PROCESS

### A.     Paper Claims and Online Claims

19.     Approximately 36.2% of the paper and online Claims, i.e., 9,207 of the 25,433 Claims submitted either on paper or via the Settlement Website, were incomplete or had one or more defects or conditions of ineligibility, such as the Claim not being signed, not being properly documented, or indicating no eligible transactions in Kraft Heinz securities during the Class Period. The "Deficiency Process," which primarily involved mailing letters to Claimants and responding to communications from Claimants by email and/or telephone, was intended to assist Claimants in properly completing their otherwise deficient submissions so that they could be eligible to participate in the Settlement.

20.     If a paper or online Claim was determined to be defective, a Notice of Deficient/Ineligible Claim Submission ("Deficiency Letter") was sent to the Claimant describing the defect(s) in the Claim and what steps, if any, were necessary to cure the defect(s) in the Claim. The Deficiency Letter advised the Claimant that submission of appropriate information and/or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Letter or the Claim would be recommended for rejection to the extent that the deficiency or condition of ineligibility was not cured. The Deficiency Letter also advised the

Claimant of their right to contest JND's administrative determination(s) with respect to their Claim, and that if they wished to contest the administrative determination(s), they were required to submit a written statement to JND requesting Court review of the Claim and setting forth the basis for such request. During this administration, JND sent a total of 9,209 Deficiency Letters to Claimants who submitted paper or online Claims that JND determined to be defective.[2] Attached hereto as Exhibit A is an example of a Deficiency Letter.

21.     Claimants' responses to Deficiency Letters were scanned into the Settlement Database and associated with the corresponding Claims. The responses were then carefully reviewed and evaluated by JND's team of processors. If a Claimant's response corrected the defect(s) in a Claim, JND manually updated the Settlement Database to reflect the changes in the status of the Claim.

**B.     Electronic Claims**

22.     For Electronic Claims, JND used the following process to contact the banks, brokers, nominees, and other E-Claim Filers to confirm receipt of their submissions and to notify the Electronic Claim Filers of any deficiencies or Electronic Claims that were ineligible. Each E-Claim Filer was sent an email to the email address included with the Claim Form(s) ("Deficiency Email") with an attached report containing detailed information associated with the Electronic Claim(s) and indicating which Electronic Claim(s) within the filing were deficient and/or rejected ("Deficiency Spreadsheet").

23.     The Deficiency Email sent to the email address of record provided with the Claim Form:

---

[2] Certain Claimants were sent more than one Deficiency Letter. For this reason, the number of Deficiency Letters referenced in paragraph 20 exceeds the number of deficient Claims discussed in paragraph 19.

(a)    Notified the filer that any Electronic Claims with deficiencies not corrected within twenty (20) days from the date of the Deficiency Email may be rejected;

(b)    Advised the filer of the right to contest the rejection of the Electronic Claim(s) and request this Court's review of JND's administrative determination(s) within twenty (20) days from the date of the Deficiency Email; and

(c)    Provided the filer with instructions for how to submit corrections.

24.    The Deficiency Spreadsheet attached to the Deficiency Email identified each of the individual Electronic Claims that were found to be deficient or ineligible and the basis for that deficiency or condition of ineligibility.

25.    JND sent 77 emails, attaching a Deficiency Email and a Deficiency Spreadsheet to 71 unique E-Claim Filers representing 326,163 Electronic Claims. Examples of a Deficiency Email and Deficiency Spreadsheet are attached hereto as Exhibits B and C, respectively.

26.    The E-Claim Filers' responses were reviewed by the Electronic Filing Team, scanned and/or loaded into the Settlement Database, and associated with the corresponding Electronic Claims. If a response corrected the defect(s) or affected an Electronic Claim's status, JND manually and/or programmatically updated the Settlement Database to reflect such change in the status of the Electronic Claim.

**C.    Calling Campaign to Claimants Who Did Not Cure Deficiencies**

27.    After responses to the Deficiency Letters and Deficiency Emails were received and evaluated, and the Settlement Database updated, JND called Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims.

28.     During this calling campaign, JND's agents explained to contacted Claimants that their Claims remained deficient, advised Claimants of the steps required to cure the deficiencies, and provided assistance to Claimants where possible, depending on the nature of the deficiency. For example, if a Claimant needed additional supporting documentation, JND explained the types of documentation that would render the Claim eligible and how the Claimant could obtain the necessary documentation. Where appropriate, JND also provided Claimants with direct phone numbers and email addresses so that Claimants could receive continued personalized attention and assistance.

29.     If JND could not reach a Claimant to speak one-on-one, JND left a voice message, when possible, requesting a return call. JND explained in the voice message that it was calling to assist the Claimant in remedying outstanding deficiencies in their Claim. JND also reached out to Claimants via email if a valid email address was provided in their Claim submission.

30.     If, in response to a telephone call or email, a Claimant cured the deficiency in their Claim by providing the appropriate information and/or supporting documentation, JND updated the Settlement Database to reflect the change in the status of the Claim.

**<u>DISPUTED CLAIMS</u>**

31.     As noted above, Claimants were advised that they had the right to contest JND's administrative determination of deficiencies or ineligibility within twenty (20) days from the date of notification and that they could request that their dispute be submitted to the Court for review. More specifically, Claimants were advised in the Deficiency Letter or Deficiency Email that, if they disputed JND's determination, they had to provide a statement of reasons indicating the grounds for contesting the determination, along with supporting documentation, and if the dispute concerning the Claim could not otherwise be resolved, Lead Counsel would thereafter present the request for review to the Court for a final determination.

32. During this administration, JND received thirty-two (32) requests for Court review. To resolve these disputes without necessitating the Court's intervention, JND reached out to each Claimant requesting Court review and attempted to answer all questions, fully explain JND's administrative determination with respect to their Claim, and facilitate the submission of missing information or documentation where applicable. As a result of these efforts, twenty (20) Claimants resolved their deficiencies and their Claims are recommended for approval, and seven (7) Claimants withdrew their requests for Court review after receiving further explanation of the reasons for JND's determination. Five (5) requests for Court review remain outstanding. Attached hereto as Exhibit D are the pending requests for Court review. These Claims are recommended for rejection for the reasons set forth in the chart included at the beginning of Exhibit D and summarized below:[3]

(a) **Claimant Sold All Shares Before the Initial Corrective Disclosure**. Claim Nos. P52MVHL9GE and PB3AVWE6S2 (Exhibits D-1 and D-2) are recommended for rejection because the Claimants sold their shares of Kraft Heinz common stock on April 12, 2018, September 4, 2018, and September 26, 2018, prior to the First Corrective Disclosure on November 2, 2018. According to the Court-approved Plan of Allocation, for shares of common stock sold prior to November 2, 2018, the "Recognized Loss Amount will be $0.00." *See* Notice ¶¶ 70, 72 (A).

(b) **Claimant Purchased and Sold All Shares Within the Same Disclosure Period**. Claim No. PG6S4BQ9KT (Exhibit D-3) is recommended for

---

[3] Exhibit D also provides the Claims, supporting documentation, and relevant correspondence (with all personal information redacted).

rejection because the Claimant purchased and sold their shares of Kraft Heinz common stock between February 22, 2019 and March 13, 2019, during the same Estimated Artificial Inflation Period of February 22, 2019 through August 7, 2019. According to the Court-approved Plan of Allocation, in order to have a Recognized Loss Amount the Claimant must have "held Kraft Heinz common stock…over at least one of the days when corrective information was released to the market…" therefore the Claim does not calculate to a Recognized Loss. *See* Notice ¶¶ 70, 72 (B), Table A.

(c) **Claimant Did Not Confirm Purchases/Acquisitions of Kraft Heinz Securities During the Class Period**. Claim Nos. DKGDT5REZF and D63DUSXMGV (Exhibits D-4 and D-5) are recommended for rejection because the Claims do not calculate to a Recognized Claim under the Court-approved Plan of Allocation. The single Claimant associated with Claim Nos. DKGDT5REZF and D63DUSXMGV failed to provide documentation of any purchase of Kraft Heinz common stock or call options, or sale of Kraft Heinz put option contracts during the Class Period, which is needed to calculate a Recognized Loss Amount/Recognized Claim. *See* Notice ¶ 71.

## LATE BUT OTHERWISE ELIGIBLE CLAIMS

33. Of the 592,618 Presented Claims, 23,958 Claims were received or postmarked after October 10, 2023, the Claim submission deadline established by the Court. JND processed all late Claims received through January 16, 2025, and 8,862 of these Claims have been found to be otherwise eligible in whole or in part ("Late But Otherwise Eligible Claims"). JND has not rejected

13

any Claim received through January 16, 2025, solely based on its late submission, and JND believes no delay has resulted from the provisional acceptance of these Late But Otherwise Eligible Claims. To the extent these Claims are eligible but for the fact that they were late, they are recommended for payment.

34.　　However, there must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional allocation of the Net Settlement Fund and the distribution may be accomplished. Acceptance of additional Claims or responses received during the finalization of the administration and the preparation of this declaration would necessarily require a delay in the distribution. Accordingly, JND respectfully requests that this Court order that no Claim received after January 16, 2025, or Claim cured or adjusted after January 16, 2025, be eligible for payment for any reason whatsoever subject only to the provision of paragraph 45(f) of the proposed distribution plan discussed below. If the Court adopts the proposed distribution plan, then, after Lead Counsel have determined that further distributions are not cost-effective and before any contribution of the residual funds to charity, if sufficient funds remain to warrant the processing of Claims received after January 16, 2025, these Claims will be processed and, if any would have been eligible if timely received, the Claimants may be paid their distribution amounts, to the extent permitted by the amount of remaining funds, on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks. *See* ¶ 45(f) below. With respect to previously submitted Claims that are cured or adjusted after January 16, 2025, such Claims will be reevaluated upon receipt of the adjustment and, to the extent that they are found eligible for a distribution or additional distribution, they will be treated in the same manner as Claims received after January 16, 2025. However, should an adjustment

result in a lower Recognized Claim amount, the Recognized Claim amount will be reduced accordingly prior to a distribution to that Claimant.

## QUALITY ASSURANCE

35.     An integral part of the claims administration process is the Quality Assurance review. Throughout the administration process, JND's Quality Assurance personnel worked to verify that Claims were processed properly by ensuring that information was entered correctly into the Settlement Database, deficiency and/or rejection message codes were assigned accurately, and Deficiency Letters and Deficiency Emails were sent appropriately. After all Claims were processed, Deficiency Letters and Deficiency Emails were sent, and Claimants' responses to Deficiency Letters and Deficiency Emails were reviewed and processed, JND's Quality Assurance personnel performed additional Quality Assurance reviews. These final Quality Assurance reviews further ensured the correctness and completeness of all Claims processed prior to preparing this declaration and all JND's final documents in support of distribution of the Net Settlement Fund. As part of the Quality Assurance reviews, JND:

      (a)     Verified that Claim Forms had signatures of authorized individuals;

      (b)     Verified that true duplicate Claims were identified, verified, and rejected;

      (c)     Verified that persons and entities excluded from the Settlement Class did not file Claims or their Claims were rejected upon review;

      (d)     Performed a final Quality Assurance audit of Claims and all supporting documentation to ensure completeness of Claims;

      (e)     Determined that Claimants requiring Deficiency Letters and Deficiency Emails were sent such notification;

      (f)     Performed an audit of deficient Claims;

(g)     Performed additional review of Claims with high Recognized Claim amounts;

(h)     Audited Claims that were designated invalid;

(i)     Audited Claims with a Recognized Claim amount equal to zero;

(j)     Performed other auditing based on Claim completion requirements and the approved calculation specifications based on the Court-approved Plan of Allocation; and

(k)     Re-tested the accuracy of the Recognized Claim amount calculation program.

36.     In support of the work described above, JND's computer staff designed and implemented, and the project team tested, the following programs for this administration: (i) data entry screens that store Claim information, including all transactional data included on each Claim, and attach messages and, where necessary, text to denote conditions existing within the Claim; (ii) programs to load and analyze transactional data submitted electronically for all Electronic Claims; (iii) a program to compare the claimed transaction prices against the reported market prices to confirm that the claimed transactions were within an acceptable range of the reported market prices; (iv) a calculation program to analyze the transactional data for all Claims, and calculate each Claimant's Recognized Claim pursuant to the Court-approved Plan of Allocation; and (v) programs to generate various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Claims.

37.     JND also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent Claims. Duplicate Claim searches, high value reviews, spot

reviews, and other standard audit reports that examined the information in a variety of ways were used during the Claim review process.

38.     As part of its due diligence in processing Claims, JND reviewed and compared the entire Settlement Database against the "watch list" of known questionable filers that JND has developed throughout its years of experience as a claims administrator. JND has worked closely with law enforcement to update the watch list with the latest information available. JND performs searches based on names, aliases, addresses, and city/zip codes. In addition, JND's claim processors are trained to identify any potentially inauthentic documentation when processing claims, including claims submitted by claimants not previously captured in the "watch list." Processors are instructed to apply internal message codes to any claim that matches to a record on the "watch list" and escalate them to management for review. During this administration, JND's Fraud Protection procedures identified four (4) potentially fraudulent Claims that were identified as having been submitted by someone on the "watch list." After being identified, these Claims were reviewed by management to consider the documentation submitted with each Claim in conjunction with other factors, including a review of the Claimant's website registration, address, and registration with the SEC or asset management organizations, and were determined to be potentially fraudulent. JND sent these Claimants Deficiency Letters and/or Deficiency Emails notifying the Claimants that additional documentation was required for the Claims to be eligible to participate in the Settlement. No additional documentation has been received supporting these potentially fraudulent Claims and all four (4) potentially fraudulent Claims are being recommended for rejection for failure to cure their conditions of inadequate documentation.

## **RECOMMENDATIONS FOR APPROVAL AND REJECTION**

39.     As noted above, the number of Presented Claims is 592,618.

## A. Timely Submitted and Valid Claims

40.    A total of 568,660 Claims were received or postmarked on or before October 10, 2023, the Court-approved Claim submission deadline, of which 271,447 were determined by JND to be eligible to participate in the Settlement and are recommended for approval ("Timely Eligible Claims"). The total Recognized Claim amount for these Timely Eligible Claims is $3,126,811,170.32, of which $3,107,994,565.41 represents common stock losses and $18,816,604.91 represents option losses.

## B. Late But Otherwise Eligible Claims

41.    A total of 23,958 Claims were received or postmarked after October 10, 2023, but received on or before January 16, 2025. Of those 23,958 late Claims, 8,862 were determined by JND to be otherwise eligible and are recommended for approval (i.e., the Late But Otherwise Eligible Claims). The total Recognized Claim amount for the Late But Otherwise Eligible Claims is $170,745,794.63, of which $170,689,793.63 represents common stock losses and $56,001.00 represents option losses.

## C. Rejected Claims

42.    After the responses to Deficiency Letters and Deficiency Emails were processed, a total of 312,309 Claims (including the Disputed Claims discussed above) remain recommended for rejection ("Rejected Claims") for the following reasons:

(a)    185,488 Claims Did Not Result in a Recognized Claim Pursuant to the Court-Approved Plan of Allocation;

(b)    46,508 Claims Did Not Fit the Definition of the Settlement Class;

(c)    79,098 Claims Were Deficient and Never Cured;

(d)    1,105 Claims Were Duplicates of Other Submitted Claims; and

(e)    110 Claims Were Withdrawn.

**D.    Lists of All Presented Claims.**

43.    Attached hereto as Exhibits D through G are listings of all the Presented Claims:

(a)    Exhibit D lists the five (5) Disputed Claims recommended for rejection for failure to calculate to a Recognized Claim pursuant to the Court-approved Plan of Allocation;

(b)    Exhibit E lists the Timely Eligible Claims and shows each Claimant's Recognized Claim;

(c)    Exhibit F lists the Late But Otherwise Eligible Claims and shows each Claimant's Recognized Claim; and

(d)    Exhibit G lists the Rejected Claims and the reasons for rejection.

## FEES AND DISBURSEMENTS

44.    JND agreed to be the Claims Administrator in exchange for payment of its fees and out-of-pocket expenses. Lead Counsel received reports on and invoices for the work JND performed with respect to the provision of notice and administration of the Settlement. Attached hereto as Exhibit H are copies of JND's invoices for its work performed on behalf of the Settlement Class as well as an estimate for the work that will be performed and the costs that will be incurred in connection with the initial distribution of the Net Settlement Fund. Should the estimate of fees and expenses to conduct the initial distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distributions to Authorized Claimants. As set forth in the attached invoices, JND's total fees and expenses for this matter through December 31, 2024, are $2,308,151.69. The brokerage firms and nominees charged JND another $676,841.94 for their work providing names and addresses of potential Settlement Class Members and forwarding notices to their clients. JND estimates that it will incur $169,798.81 for the initial distribution of the Net Settlement Fund. To date JND has

been reimbursed $2,124,462.99. Accordingly, there is an outstanding balance of $1,030,329.45 payable to JND from the Settlement Fund, which includes the estimate for completing the initial distribution.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

45.    Should the Court concur with JND's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, JND recommends the following distribution plan ("Distribution Plan"):

(a)    JND will conduct an initial distribution ("Initial Distribution") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 10% reserve to address any tax liability and claims administration-related contingencies that may arise following the Initial Distribution, as follows:

(1)    JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. In accordance with the Court-approved Plan of Allocation, JND will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See Notice* ¶ 87.

(2)    JND will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00. *See Notice* ¶ 89. These

Claimants will not receive any payment from the Net Settlement Fund and will be so notified by JND.

(3)  After eliminating Claimants who would have received less than $10.00, JND will recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more. A "Distribution Amount" will be calculated for each of these Authorized Claimants, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more, multiplied by the total amount in the Net Settlement Fund.

(4)  Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will receive no additional funds in subsequent distributions.

(5)  After deducting the payments to the Claims Paid in Full, 90% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. The remaining 10% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise following the Initial Distribution. To the extent the Reserve is not depleted, the remainder will be included in the "Second Distribution" described in subparagraph (d) below.

(b)     To encourage Authorized Claimants to deposit their payments promptly, all distribution checks will bear a notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." For Authorized Claimants whose checks are returned as undeliverable, JND will endeavor to locate new addresses through reasonable methods. Where a new address is located, JND will update the Settlement Database accordingly and reissue a distribution check to the Authorized Claimant at the new address. In the event a distribution check is lost or damaged or otherwise requires reissuance, JND will issue replacements. Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, JND will void the initial payment prior to reissuing a payment. In order not to delay further distributions to Authorized Claimants who have timely cashed their checks, JND's outreach program shall end thirty (30) days after the initial void date. Authorized Claimants will be informed that, if they do not cash their Initial Distribution checks within ninety (90) days of the mail date, or they do not cash check reissues within thirty (30) days of the mailing of such reissued check, their check will lapse, their entitlement to recovery will be irrevocably forfeited, and the funds will be reallocated to other Authorized Claimants. Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the

22

reissue is received no later than forty-five (45) days prior to the next planned distribution. Requests for reissued checks in connection with any subsequent distributions (should such distributions occur) will be handled in the same manner.

(c)     Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth above will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available for distribution to other Authorized Claimants in the Second Distribution. Similarly, Authorized Claimants who do not cash their second or subsequent distribution checks, should such distributions occur, within the time allotted or on the conditions set forth above will irrevocably forfeit any further recovery from the Net Settlement Fund.

(d)     Consistent with the Court-approved Plan of Allocation, after JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, which efforts shall consist of the follow-up efforts described above, but not earlier than seven (7) months after the Initial Distribution, JND will, after consulting with Lead Counsel, conduct a second distribution of the Net Settlement Fund ("Second Distribution"). *See Notice* ¶ 90. Any amounts remaining in the Net Settlement Fund after the Initial Distribution, including from the Reserve and the funds allocated for all void stale-dated checks, after deducting JND's unpaid fees and expenses incurred in connection with

23

Case: 1:19-cv-01339 Document #: 498 Filed: 01/27/25 Page 24 of 26 PageID #:20070

administering the Settlement, including JND's estimated costs of the Second Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, any escrow fees, and appropriate reserves, will be distributed to all Authorized Claimants in the Initial Distribution (other than Claims Paid in Full) who cashed their distribution checks and who would receive at least $10.00 in the Second Distribution based on their *pro rata* share of the remaining funds. *See id*. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter at six-month intervals until Lead Counsel, in consultation with JND, determine that further distribution is not cost-effective. *See id*.

(e)     At such time as Lead Counsel, in consultation with JND, determine that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after January 16, 2025, those Claims will be processed, and any otherwise valid Claims received after January 16, 2025, as well as any earlier-received Claims for which an adjustment was received after January 16, 2025, that resulted in an increased Recognized Claim, will be paid in accordance with subparagraph (f) below. If any funds remain in the Net Settlement Fund after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Settlement and after the payment of any estimated taxes, the costs of

preparing appropriate tax returns, and any escrow fees, will be contributed to the National Consumer Law Center ("NCLC"), a non-sectarian, not-for-profit 501(c)(3) organization. *See id*.

(f)     No new Claims may be accepted after January 16, 2025, and no further adjustments to Claims received on or before January 16, 2025, that would result in an increased Recognized Claim may be made for any reason after January 16, 2025, subject to the following exception. If Claims are received or modified after January 16, 2025, that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then at the time that Lead Counsel, in consultation with JND, determine that an additional distribution is not cost-effective as provided in subparagraph (e) above, and after payment of any unpaid fees or expenses incurred in connection with administering the Settlement and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

(g)     Unless otherwise ordered by the Court, JND may destroy the paper copies of the Claims and all supporting documentation one (1) year after the Initial Distribution, and one (1) year after all funds have been distributed may destroy the electronic copies of the same.

## **CONCLUSION**

46.     JND respectfully requests that the Court enter the Class Distribution Order approving its administrative determinations accepting and rejecting the Claims submitted herein and approving the proposed Distribution Plan. JND further respectfully submits that its unpaid fees and expenses and its fees and expenses expected to be incurred in connection with the Initial Distribution, as reflected on the invoices attached hereto as Exhibit H, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on January 27, 2025

_____
LUIGGY SEGURA

26